# United States Court of Appeals for the First Circuit

SOUTHBRIDGE RE, LLC,
Plaintiff - Appellant,

v.

KIAVI FUNDING, INC.; CHRISTIANA TRUST, a Division of
Wilmington Savings Fund Society, FSB, not in its individual capacity but as
Trustee for Victoria Capital Trust,
Defendants - Appellees.

On Appeal from a Judgment of the United States District Court
for the District of Massachusetts / Civil Action No. 21-CV-30061-KAR
Magistrate Judge Katherine A. Robertson

## BRIEF FOR DEFENDANTS - APPELLEES KIAVI FUNDING, INC. AND CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE FOR VICTORIA CAPITAL TRUST

Brian C. Linehan – CA1 #1171891
Reneau J. Longoria – CA1 #1075496
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, Massachusetts 01915
(978) 921-2670
bl@dgandl.com

Date: December 7, 2023

## CORPORATE DISCLOSURE STATEMENT
## PURSUANT TO FED. R. APP. P. 26.1

Pursuant to Fed. R. App. P. 26.1 and to enable this Court to evaluate possible disqualifications or recusal, the Appellees state the following:

1.     Kiavi Funding, Inc. ("Kiavi") is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 2 Allegheny Center, Nova Tower 2, Suite 200, Pittsburgh, PA 15212.

2.     Kiavi is a wholly owned operating subsidiary of Kiavi, Inc.

3.     There are no publicly traded companies that own 10% or more of Kiavi, Inc.'s stock.

4.     Christiana Trust Company of Delaware, d/b/a Christiana Trust ("Christiana Trust"),[1] is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 500 Delaware Avenue, Wilmington, DE 19801.

5.     Christiana Trust is a wholly owned operating subsidiary of Wilmington Savings Fund Society, a federal savings bank organized and existing under the laws of the United States of America with its principal place of business located at 500 Delaware Avenue, Wilmington, DE 19801.

---

[1] Kiavi and Christiana Trust are hereinafter collectively referred to as the "Defendants."

6.     Christiana Trust is acting in its capacity as Trustee for the Victoria

Capital Trust.

/s/ *Brian C. Linehan*
Brian C. Linehan – CA1 #1171891
Reneau J. Longoria – CA1 #1075496
DOONAN, GRAVES & LONGORIA, LLC
100 Cummings Center, Suite 303C
Beverly, Massachusetts 01915
(978) 921-2670
bl@dgandl.com

Date: December 7, 2023

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................. i

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHORITIES .............................................................................. v

STATEMENT OF THE ISSUES ON APPEAL ...................................................... 1

STATEMENT OF THE CASE ........................................................................... 1

    A.    Nature of the Case ............................................................................ 1

    B.    Course of Proceedings ...................................................................... 2

    C.    Statement of Facts ............................................................................ 4

           1.    The Prospect Street Commercial Mortgage Loan ......................... 4

           2.    The Pleasant Street Commercial Mortgage Loan .......................... 7

           3.    The Blank Assignments of Mortgage recorded by Toorak ........... 10

SUMMARY OF THE ARGUMENT ................................................................ 12

STANDARD OF REVIEW ............................................................................ 14

ARGUMENT ............................................................................................... 14

    A.    The District Court Properly Determined that the Blank
        Assignments did not Deprive Christiana Trust of its Standing
        to Foreclose .................................................................................. 14

           1.    Christiana Trust sufficiently demonstrated its standing
                to foreclose the Pleasant Street and Prospect Street
                Commercial Mortgage Loans ...................................................... 15

           2.    The Blank Assignments are void *ab initio* ................................. 17

3.  The Blank Assignments are void regardless of the Section 5B Affidavits ..................................................... 23

4.  Kiavi's collection notes do not indicate that Toorak is the holder or owner of the Pleasant Street and Prospect Street Commercial Mortgage Loans .............................................. 25

5.  The recorded Blank Assignments did not provide notice of any alleged transfer of the Pleasant Street and Prospect Street Commercial Mortgage Loans ............................... 28

B.  The District Court Properly Determined that Christiana Trust was not Required to Identify the Blank Assignments in its Notices of Sale .......................................................................... 29

C.  The District Court Properly Determined that Christiana Trust's Foreclosure Sale of the Pleasant Street Property was Conducted in Strict Compliance with the Statutory Power of Sale .................................................................................... 31

D.  The District Court Properly Determined that Christiana Trust's Foreclosure Sale of the Prospect Street Property was Conducted in Strict Compliance with the Statutory Power of Sale .................................................................................... 33

CONCLUSION ..................................................................................... 35

CERTIFICATE OF COMPLIANCE WITH FED. R. A. P. 32(g)(1) ..................... 37

CERTIFICATE OF SERVICE ................................................................. 38

ADDENDUM

# TABLE OF AUTHORITIES

CASES:

Allen v. Allen,
  86 Mass.App.Ct. 295, 16 N.E.3d 1078 (2014) ..................................................... 28

Allis v. Billings,
  47 Mass. 415 (1843)........................................................................................... 23

Bank of America, N.A. v. Casey,
  474 Mass. 556, 52 N.E.3d 1030 (2016) ..................................................... 13, 24, 29

Bevilacqua v. Rodriguez,
  460 Mass. 762, 955 N.E.2d 884 (2011) ............................................. 23, 24, 25, 29

Donahue v. Federal National Mortgage Association,
  971 F.3d 1 (1st Cir. 2020) ................................................................................ 24, 25

Dyer v. Wells Fargo Bank, N.A.,
  956 F.3d 62 (1st Cir. 2020) ..................................................................................... 15

Eaton v. Fed. Nat'l Mortg. Ass'n,
  462 Mass. 569, 969 N.E.2d 1118 (2012) ..................................... 15, 31, 33-34, 35

Fed. Nat'l Mortg. Ass'n v. Carr,
  2012 Mass.App.Div. 223, 2012 WL 6021306 ...................................................... 22

Frankowich v. Szcuka,
  321 Mass. 75, 71 N.E.2d 761 (1947) ........................................... 17, 21, 23, 24, 29

Germano v. U.S. Bank Nat'l Ass'n,
  No. 17 SBQ 36138-12-001 (HPS), 2018 WL 986065
  (Mass. Land Ct. Jan. 2, 2018) ............................................................................. 30

Jones v. Bank of New York as Tr.,
  542 F.Supp.3d 44 (D.Mass. 2021) ....................................................................... 15

Malanowski v. Wells Fargo Bank N.A. Tr.,
  --- F.Supp.3d ---, 2023 WL 1451929 (D.Mass. Feb. 1, 2023)............................. 15

O'Brien v. Wilmington Trust Nat'l Ass'n as Tr.,
   506 F.Supp.3d 82 (D.Mass. 2020) ........................................ 17, 18, 23, 24, 28, 30

S & H Petrol. Corp., Inc. v. Register of Deeds,
   46 Mass.App.Ct. 535, 707 N.E.2d 843 (1999) ................................................... 28

Sampson v. U.S. Bank Nat'l Ass'n,
   --- F.Supp.3d ---, 2023 WL 6050356 (D.Mass. Sept. 15, 2023).................... 29-30

Segal v. Genitrix, LLC,
   478 Mass. 551, 87 N.E.3d 560 (2017) ........................................................... 26, 27

Strawbridge v. Bank of New York Mellon,
   91 Mass.App.Ct. 827, 79 N.E.3d 1103 (2017) ....................................... 15, 31, 34

Sullivan v. Hudgins,
   303 Mass. 442, 22 N.E.2d 43 (1939) ......................................... 17, 20, 22, 23, 29

Travers v. Flight Servs. & Sys., Inc.,
   737 F.3d 144 (1st Cir. 2013) ................................................................................ 14

Triangle Trading Co., Inc. v. Robroy Indus., Inc.,
   200 F.3d 1 (1st Cir. 1999) ....................................................................... 14, 26, 28

U.S. Bank Nat'l Ass'n v. Ibanez,
   58 Mass. 941 N.E.2d 40 (2011) ........................................2, 15-24, , 28, 31, 33-35

Wilmington Sav. Fund Soc., FSB v. Umana,
   98 Mass.App.Ct. 1111, 155 N.E.3d 761 (2020) ........................................... 15-16

Wilson v. HSBC Mortg. Servs., Inc.,
   744 F.3d 1 (1st Cir. 2014) ........................................................................ 23, 24, 25

**STATUTES:**

G.L. c. 183, § 5B ............................................................................ 12, 13, 23-25, 29
G.L. c. 244, § 14...............................................5, 6, 9, 13, 16, 23, 29, 30, 32-35
G.L. c. 244, § 17B ................................................................................... 6, 9, 32, 34
G.L. c. 244, § 35C .......................................................................................... 31, 33

**RULES:**

Fed. R. App. P. 26.1 ................................................................................. i

Fed. R. App. P. 30 ................................................................................ 19

Fed. R. Civ. P. 56 ................................................................................ 14

Fed. R. Evid. 801, 802 ......................................................................... 25

**REGULATIONS:**

209 CMR 18.21A ...................................................................5, 8, 16, 30

209 CMR 18.24 ..........................................................................5, 16

# STATEMENT OF THE ISSUES ON APPEAL

1. Whether the U.S. District Court for the District of Massachusetts ("District Court") erred in determining that the Assignments of Mortgage recorded by Toorak Capital Partners, LLC ("Toorak") are void.

2. Whether the District Court erred in determining that the Assignments of Mortgage recorded by Toorak did not deprive Christiana Trust of its standing to foreclose the Pleasant Street and Prospect Street Commercial Mortgage Loans.

3. Whether the District Court erred in determining that Christiana Trust's foreclosure sale of the Pleasant Street Property was conducted in strict compliance with the statutory power of sale.

4. Whether the District Court erred in determining that Christiana Trust's foreclosure sale of the Prospect Street Property was conducted in strict compliance with the statutory power of sale.

# STATEMENT OF THE CASE

## A.  Nature of the Case

This is an appeal from a grant of Summary Judgment by the District Court in favor of the Defendants, Kiavi and Christiana Trust, and against the Plaintiff, Southbridge RE, LLC ("Southbridge"). Addendum ("Add.") at 36. Southbridge commenced the instant action seeking to invalidate Christiana Trust's foreclosure of two commercial mortgage loans secured by the properties located at 25 Pleasant Street,

Westfield, MA (the "Pleasant Street Property") and 103 Prospect Street, Springfield, MA (the "Prospect Street Property"). Record Appendix ("R.A.") at 10. Southbridge's claim is premised upon Assignments of the foreclosed Commercial Mortgages at issue that Kiavi initially provided to Toorak in blank – meaning that the Assignments did not identify the assignee. Supplemental Record Appendix ("Supp.R.A.") at 372, 374. Toorak completed and recorded the Assignments of Mortgage prior to the foreclosure sales of the Pleasant Street and Prospect Street Properties without obtaining Kiavi or Christiana Trust's authorization to do so. Supp.R.A. at 401-402, Affidavit of Kiavi Funding, Inc. ("Kiavi Affidavit") at ¶¶ 44-46; Supp.R.A. at 412-413, Affidavit of Toorak Capital Partners, LLC ("Toorak Affidavit") at ¶¶ 10-13. Because the Assignments of Mortgage that Toorak recorded were executed in blank and never effectively delivered, the District Court properly concluded that the Assignments were void *ab initio* and had no impact on the validity of Christiana Trust's foreclosure sales of the Pleasant Street and Prospect Street Properties. See U.S. Bank Nat'l Ass'n v. Ibanez, 58 Mass. 637, 941 N.E.2d 40, 53 (2011).

**B.      Course of Proceedings**

Christiana Trust conducted its foreclosure sales of the Pleasant Street and Prospect Street Properties on December 22, 2020, and January 21, 2021, respectively. Supp.R.A. at 193, 361, 367. On May 24, 2021, thereafter, Southbridge commenced the action from which this appeal arises in the District Court seeking a

Judgment declaring that Christiana Trust's foreclosure sales of the Pleasant Street and Prospect Street Properties were void as a result of the Assignments of Mortgage recorded by Toorak. R.A. at 2. On April 4, 2022, the Parties filed their Cross-Motions for Summary Judgment, which the District Court heard on June 15, 2022. R.A. at 4-5. On March 29, 2023, the District Court issued its decision denying Southbridge's Motion for Summary Judgment, granting the Defendants' Cross-Motion for Summary Judgment as to counts II-IV, VII and VIII of their counterclaims for a Declaratory Judgment as to the validity of Christiana Trust's foreclosure sale of the Prospect Street Property, a Declaratory Judgment as to the validity of Christiana Trust's foreclosure sale of the Pleasant Street Property, Breach of Contract, a Deficiency Judgment and for Possession of the Pleasant Street Property, and denying the Defendants' Cross-Motion as to Counts I, V and VI of their counterclaims for Slander of Title, Unjust Enrichment and Promissory Estoppel. Add. at 1.

Following the Court's Order on their Cross-Motions for Summary Judgment, the Parties entered into a Stipulation as to the entry of final judgment whereby the Defendants agreed to dismiss their counterclaims for Slander of Title, Unjust Enrichment and Promissory Estoppel for the purposes of expediting the final judgment and Southbridge's anticipated appeal of the same. Supp.R.A. at 1. Thereafter, the District Court entered its final judgment in favor of the Defendants

as to each of the claims and counterclaims that had not been dismissed pursuant to the Parties' Stipulation. Add. at 36.

## C.   Statement of Facts

### 1.   The Prospect Street Commercial Mortgage Loan.

On September 5, 2018, Southbridge executed and delivered a Promissory Note to LendingHome Funding Corporation[2] in the amount of $155,700.00 ("Prospect Street Note"). Supp.R.A. at 11. To secure the debt evidenced by the Prospect Street Note, Southbridge gave a Commercial Mortgage on the Prospect Street Property to Lendinghome Funding Corporation dated September 5, 2018, and recorded with the Hampden County Registry of Deeds in Book 22357, Page 427 ("Prospect Street Commercial Mortgage"). R.A. at 86.

Southbridge defaulted under the terms of the Prospect Street Commercial Mortgage Loan Contract as a result of its failure to make the September 1, 2019 payment and all subsequent payments due thereunder. Supp.R.A. at 396, Kiavi Affidavit at ¶ 7. Further, the Prospect Street Commercial Mortgage Loan matured as of October 1, 2019. Supp.R.A. at 11.

---

[2] Lending Home Funding Corporation is now known as Kiavi Funding Corporation. Supp.R.A. at 8.

The Prospect Street Commercial Mortgage was assigned to Christiana Trust by virtue of an Assignment of Mortgage dated December 13, 2019 and recorded with the Hampden County Registry of Deeds in Book 22999, Page 307. R.A. at 116.

On October 14, 2023, Kiavi executed a Certification Pursuant to Massachusetts 209 CMR 18.21A(2)(c)[3] indicating that Christiana Trust is the holder/owner of the Prospect Street Note. Supp.R.A. at 60. Further, on October 21, 2020, Kiavi caused to be recorded an Affidavit Regarding Note Secured by a Mortgage to be Foreclosed with the Hampden County Registry of Deeds in Book 23487, Page 114 ("Pre-Foreclosure Noteholder Affidavit"), which also confirms that Christiana Trust is the holder/owner of the Prospect Street Note. Supp.R.A. at 61.

As a result of Southbridge's default, on November 2, 2020, Kiavi caused it to be served with a Notice of Default and Election to Sell Property. Supp.R.A. at 64. Southbridge failed to cure its default prior to the expiration of the Notice of Default, and, as a result, Christiana Trust scheduled a foreclosure sale of the Prospect Street Property to be held on December 17, 2020. Supp.R.A. at 397, Kiavi Affidavit at ¶ 14.

Pursuant to G.L. c. 244, § 14, Christiana Trust caused to be published a Notice of Mortgagee's Sale of Real Estate in the Republican for three consecutive weeks

---

[3] The provisions of 209 CMR 18.21A(2)(c) are now found at 209 CMR 18.24(2)(c) as of July 1, 2021.

on November 17, 2020, November 24, 2020, and December 1, 2020 ("Notice of Sale"). Supp.R.A. at 88. Pursuant to G.L. c. 244, §§ 14 & 17B, on November 23, 2020, Christiana Trust caused Southbridge to be mailed a Notice of Intention to Foreclose and Intent to Pursue Deficiency after Foreclosure, as well as copies of the Notice of Sale and Noteholder Certification. Supp.R.A. at 89, 134. On November 23, 2023, Matthew Kelly of Doonan, Graves & Longoria, LLC, executed an Affidavit pursuant to G.L. c. 244, § 17B providing that the Notices of Intention to Foreclose and Intent to Pursue Deficiency after Foreclosure were mailed on November 23, 2020. Supp.R.A. at 89.

The foreclosure sale of the Prospect Street Property was postponed by public proclamation from December 17, 2020 to January 21, 2021. Supp.R.A. at 189. On January 21, 2021, Christiana Trust conducted its lawful non-judicial foreclosure sale of the Prospect Street Property, at which Michelle Ngila entered the highest bid. Supp.R.A. at 190. As a result of Michelle Ngila's failure to close within the time provided by the Memorandum of Sale Contract, Christiana Trust terminated the contract for the purchase and sale of the Prospect Street Property and offered the Property to Ruby Realty LLC ("Ruby Realty"), which was the second highest bidder

at the January 21, 2021 foreclosure sale. Supp.R.A. at 194. Ruby Realty entered into a contract to purchase the Prospect Street Property for $140,900.00.[4] Id.

Christiana Trust was the holder/owner of the Prospect Street Note and the true and lawful assignee of the Prospect Street Commercial Mortgage prior to the publication of its Notice of Sale on November 17, 2020, and at all times up to and including the foreclosure sale of the Prospect Street Property on January 21, 2021. Compare R.A. at 116, Supp.R.A. at 60, 61, with Supp.R.A. at 88; see Supp.R.A. at 397, Kiavi Affidavit at ¶ 17.

## 2. The Pleasant Street Commercial Mortgage Loan.

On October 11, 2018, Southbridge executed and delivered a Promissory Note to Kiavi in the amount of $175,000.00 ("Pleasant Street Note"). Supp.R.A. at 198. To secure the debt evidenced by the Pleasant Street Note, Southbridge gave a Commercial Mortgage on the Pleasant Street Property to Lendinghome Funding Corporation dated October 11, 2018, and recorded with the Hampden County Registry of Deeds in Book 22401, Page 130 ("Pleasant Street Commercial Mortgage"). R.A. at 28.

Southbridge defaulted under the terms of the Pleasant Street Commercial Mortgage Loan Contract due to his failure to make the September 1, 2019 payment

---

[4] The Parties have not yet consummated the sale of the Property to Ruby Realty due to the pending litigation. Supp.R.A. at 398, Kiaivi Affidavit at ¶ 20.

and all subsequent payments due thereunder. Supp.R.A. at 398-399, Kiavi Affidavit at ¶ 24. Further, the Pleasant Street Commercial Mortgage Loan matured as of November 1, 2019. Supp.R.A. at 198.

The Pleasant Street Commercial Mortgage was assigned to Christiana Trust by virtue of an Assignment of Mortgage dated December 16, 2019 and recorded with the Hampden County Registry of Deeds in Book 23033, Page 26. R.A. at 62.

On February 11, 2020, Kiavi caused to be recorded a Pre-Foreclosure Noteholder Affidavit with the Hampden County Registry of Deeds in Book 23082, Page 517, which certifies that Christiana Trust is the holder/owner of the Pleasant Street Note. Supp.R.A. at 241. On October 7, 2020, Kiavi executed a Certification Pursuant to Massachusetts 209 CMR 18.21A(2)(c) further indicating that Christiana Trust is the holder/owner of the Pleasant Street Note. Supp.R.A. at 255. On October 22, 2020, Kiavi caused to be recorded a second Pre-Foreclosure Noteholder Affidavit with the Hampden County Registry of Deeds in Book 23489, Page 55. Supp.R.A. at 276.

As a result of Southbridge's default, on October 15, 2020, Kiavi caused it to be served with a Notice of Default and Election to Sell Property. Supp.R.A. at 256. Southbridge failed to cure its default prior to the expiration of the Notice of Default and, as a result, Christiana Trust scheduled a foreclosure sale of the Pleasant Street

Property to be held on December 17, 2020. Supp.R.A. at 399-400, Kiavi Affidavit at ¶ 32.

Pursuant to G.L. c. 244, § 14, Christiana Trust caused to be published a Notice of Sale in the Westfield News for three consecutive weeks on November 8, 2020, November 25, 2020, and December 2, 2020. R.A. at 74. Pursuant to G.L. c. 244, §§ 14 & 17B, on November 20, 2020, Christiana Trust caused Southbridge to be mailed a Notice of Intention to Foreclose and Intent to Pursue Deficiency after Foreclosure, as well as copies of the Notice of Sale and Noteholder Certification. Supp.R.A. at 280, 314. On November 20, 2020, Cailean Sheppard of Doonan, Graves & Longoria, LLC executed an Affidavit pursuant to G.L. c. 244, § 17B providing that the Notices of Intention to Foreclose and Intent to Pursue Deficiency after Foreclosure were mailed to Southbridge on November 20, 2020. Supp.R.A. at 280.

The foreclosure sale of the Pleasant Street Property was postponed by public proclamation from December 17, 2020, to December 22, 2020. Supp.R.A. at 359. On December 22, 2020, Christiana Trust conducted its lawful non-judicial foreclosure sale of the Pleasant Street Property at which Christiana Trust entered the highest bid. R.A. at 67; Supp.R.A. at 367. The Foreclosure Deed conveying title to the Pleasant Street property to Christiana Trust was recorded on March 23, 2021, with the Hampden County Registry of Deeds in Book 23780, Page 467. R.A. at 67.

On March 23, 2021, Christiana Trust caused to be recorded a Post Sale Affidavit Regarding Note with the Hampden County Registry of Deeds in Book 23780, Page 473 ("Post-Foreclosure Noteholder Affidavit"). Supp.R.A. at 370.

Christiana Trust was the holder/owner of the Pleasant Street Commercial Note and the true and lawful assignee of the Pleasant Street Commercial Mortgage prior to the publication of its Notice of Sale on November 8, 2020, and at all times up to and including the foreclosure sale of the Prospect Street Property on December 22, 2020. Compare R.A. at 63, Supp.R.A. at 241, 255, 276 and 370, with R.A. at 67, 74 and Supp.R.A. at 367; see Supp.R.A. at 400, Kiavi Affidavit at ¶ 37.

### 3.    The Blank Assignments of Mortgage recorded by Toorak.

In 2018, Kiavi provided assignments of certain mortgages, which include the Prospect Street Commercial Mortgage and the Pleasant Street Commercial Mortgage, to Toorak as security under the terms of a private funding agreement. Supp.R.A. at 401, Kiavi Affidavit at ¶ 40; Supp.R.A. at 411-412, Toorak Affidavit at ¶ 5. The Assignments of the Pleasant Street and Prospect Street Commercial Mortgages were executed in blank and did not identify Toorak or any other entity as the Assignee thereunder.[5] Supp.R.A. at 372, 374; see Supp.R.A. at 401, Kiavi Affidavit at ¶ 41; Supp.R.A. at 412, Toorak Affidavit at ¶ 8. The Blank Assignments

---

[5] The Assignments of Mortgage recorded by Toorak are hereinafter referred to as the "Blank Assignments."

of the Prospect Street and Pleasant Street Commercial Mortgages were never intended to be delivered to Toorak and recorded unless and until Kiavi defaulted under the terms of the private funding agreement, which did not occur. Supp.R.A. at 401, Kiavi Affidavit at ¶ 42; Supp.R.A. at 412, Toorak Affidavit at ¶ 9.

Due to an inadvertent oversight, Toorak filled in the Blank Assignments identifying itself as the Assignee thereunder notwithstanding the fact that it was not authorized to do so under the terms of the private funding agreement with Kiavi. Supp.R.A. at 412, Toorak Affidavit at ¶ 10. On November 30, 2020, Toorak recorded the Blank Assignments notwithstanding the fact that it was not authorized to do so under the terms of the private funding agreement with Kiavi. Supp.R.A. at 412-413, Toorak Affidavit at ¶ 11. Toorak did not seek authorization and did not otherwise inform Kiavi or Christiana Trust of its intent to complete and record the Blank Assignments. Supp.R.A. at 401-402, Kiavi Affidavit at ¶ 45; Supp.R.A. at 413, Toorak Affidavit at ¶ 12. Toorak did not seek Kiavi's or Christiana Trust's authorization to fill in the Blank Assignments identifying itself as the Assignee thereunder nor was it authorized to do so under the terms of the private funding agreement. Supp.R.A. at 402, Kiavi Affidavit at ¶ 46; Supp.R.A. at 413, Toorak Affidavit at ¶ 13. Further, the Blank Assignments provided to Toorak were unsupported by consideration. Supp.R.A. at 402, Kiavi Affidavit at ¶ 47; Supp.R.A. at 413, Toorak Affidavit at ¶ 14.

Because Toorak was not authorized to complete and record the Blank Assignments unless and until Kiavi defaulted under the terms of the private funding agreement, there was no present intent to transfer the Mortgages to Toorak. Supp.R.A. at 402, Kiavi Affidavit at ¶ 48; Supp.R.A. at 413, Toorak Affidavit at ¶ 15.

Pursuant to G.L. c. 183, § 5B, the Defendants and Toorak executed an Affidavit ("Section 5B Affidavit"), which was recorded with the Hampden County Registry of Deeds in Book 23943, Page 530, for the purpose of clarifying title to the Prospect Street Property by certifying that the Blank Assignment of the Prospect Street Commercial Mortgage recorded by Toorak is void. R.A. at 122.

The Defendants and Toorak executed a further Section 5B Affidavit, which was recorded with the Hampden County Registry of Deeds in Book 23938, Page 443, for the purpose of clarifying title to the Pleasant Street Property by certifying that the Blank Assignment of the Pleasant Street Commercial Mortgage recorded by Toorak is void. R.A. at 76.

## SUMMARY OF THE ARGUMENT

Southbridge's appeal of the District Court's Judgment is wholly premised upon a mischaracterization of the Section 5B Affidavits. Contrary to Southbridge's baseless assertions, neither Kiavi, Christiana Trust nor Toorak executed and recorded the Section 5B Affidavits for the purpose of rendering the Blank

Assignments void. As set forth more fully below, the Blank Assignments are void *ab initio* because they were executed in blank, and Toorak did not seek Kiavi or Christiana Trust's authorization before completing and recording them with the Registry of Deeds. The Section 5B Affidavits themselves have no direct effect on the validity or invalidity of the Blank Assignments but were executed and recorded for the purpose of putting the world on notice of the circumstances that rendered the Blank Assignments void. Cf. Bank of America, N.A. v. Casey, 474 Mass. 556, 52 N.E.3d 1030, 1038-39 (2016)(explaining that the purpose of an affidavit executed and recorded under G.L. c. 183, § 5B is to provide notice of facts that explain what actually occurred with respect to documents recorded on title to real estate).

Further, the summary judgment record is devoid of any evidence suggesting that Toorak ever owned the Pleasant Street Note or the Prospect Street Note. Accordingly, the District Court properly rejected Southbridge's argument that Kiavi's reference to Toorak as an "investor" somehow gave effect to the Blank Assignments.

Where, as here, the Blank Assignments are void *ab initio*, they did not deprive the Christiana Trust Assignments of their effect and Christiana Trust was not required to identify them in its Notices of Sale published under G.L. c. 244, § 14. As such, the District Court properly entered Judgment in favor of the Defendants.

For these reasons, and as set forth more fully below, this Court should affirm the District Court's grant of summary judgment in the Defendants' favor.

## STANDARD OF REVIEW

The Court of Appeals reviews the District Court's grant of summary judgment *de novo*. Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013). "A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id., quoting Fed. R. Civ. P. 56(a). A dispute is genuine "if 'a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party . . . Conclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact.'" Id., quoting Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999).

## ARGUMENT

**A. The District Court Properly Determined that the Blank Assignments did not Deprive Christiana Trust of its Standing to Foreclose.**

Contrary to Southbridge's baseless assertions, the record on appeal is sufficient to demonstrate that Christiana Trust had standing to foreclose the Pleasant Street and Prospect Street Commercial Mortgage Loans where, as here, the Blank Assignments were void and ineffective at the time that they were recorded.

1. **Christiana Trust sufficiently demonstrated its standing to foreclose the Pleasant Street and Prospect Street Commercial Mortgage Loans.**

To establish its standing to foreclose, the mortgagee must establish that it is the holder of the mortgage, Ibanez, 941 N.E.2d at 53, and the holder/owner of the note secured thereby or the authorized agent acting on behalf of the noteholder, Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 969 N.E.2d 1118, 1129-1131 (2012). In that respect, it is well-settled that a mortgagee may establish its interest in a promissory note for the purpose of foreclosure by recording an Affidavit with the appropriate Registry of Deeds. See id. at 1133 n. 28; Strawbridge v. Bank of New York Mellon, 91 Mass.App.Ct. 827, 79 N.E.3d 1103, 1105 (2017); Jones v. Bank of New York as Tr., 542 F.Supp.3d 44, 54 (D.Mass. 2021); Malanowski v. Wells Fargo Bank N.A. Tr., --- F.Supp.3d ---, 2023 WL 1451929, at *2 (D.Mass. Feb. 1, 2023); see also Dyer v. Wells Fargo Bank, N.A., 956 F.3d 62, 66 n. 3 (1st Cir. 2020).

Here, the record on appeal includes the Pre-Foreclosure Noteholder Affidavits, Supp.R.A. at 61, 241, 276, and Noteholder Certifications, Supp.R.A. at 60, 255, which are sufficient to establish that Christiana Trust was the holder/owner of the Pleasant Street and Prospect Street Notes at the time of its foreclosure sales of the Properties pledged as security for the same. See Eaton, 969 N.E.2d at 1133 n. 28; Strawbridge, 79 N.E.3d at 1105; Jones, 542 F.Supp.3d at 54; Malanowski, 2023 WL 1451929, at *2; see also Dyer, 956 F.3d at 66 n. 3; Wilmington Sav. Fund Soc., FSB

v. <u>Umana</u>, 98 Mass.App.Ct. 1111, 155 N.E.3d 761, at *2 (2020)(unpublished)(relying on the noteholder certification required by 209 CMR 18.21A(2), the provisions of which are now found at 209 CMR 18.24(2)(c), as additional evidence of the mortgagee's interest in the note for the purpose of foreclosure). Accordingly, the record is sufficient to demonstrate that Christiana Trust was the holder and owner of the Pleasant Street and Prospect Street Notes at the time of its foreclosure sales.

Further, as set forth more fully below, because the Blank Assignments are void, the Christiana Trust Assignments are valid, R.A. at 63, 116. The Christiana Trust Assignments were executed and recorded prior to the publication of Christiana Trust's Notices of Sale under G.L. c. 244, § 14. <u>Compare</u> R.A. at 63 and 116, <u>with</u> R.A. 74 and Supp.R.A. at 88. As a result, the Christiana Trust Assignments are sufficient to establish Christiana Trust's standing to foreclose as the assignee of record of the Pleasant Street and Prospect Street Commercial Mortgages. <u>See</u> <u>Ibanez</u>, 941 N.E.2d at 53.

Where, as here, Christiana Trust sufficiently demonstrated that it was the assignee of record of the Pleasant Street and Prospect Street Commercial Mortgages and the holder/owner of the Pleasant Street and Prospect Street Notes, prior to the publication of its Notices of Sale under G.L. c. 244, § 14, the District Court properly

determined that Christiana Trust had standing to foreclose the Pleasant Street and Prospect Street Commercial Mortgage Loans.

### 2. The Blank Assignments are void *ab initio*.

The District Court properly determined that the Blank Assignments have no effect on Christiana Trust's standing to foreclose. In Massachusetts, an assignment of mortgage represents a conveyance of an interest in land. See Ibanez, 941 N.E.2d at 51. An assignment of mortgage is ineffective unless it is delivered to the assignee. See Sullivan v. Hudgins, 303 Mass. 442, 22 N.E.2d 43, 46 (1939); see also Frankowich v. Szcuka, 321 Mass. 75, 71 N.E.2d 761, 762 (1947)("The factors essential to delivery are that the grantor intend the deed to effect a present transfer of the property and that the grantee by his conduct assents to the conveyance."). The recording of an assignment of mortgage in and of itself is not sufficient to demonstrate that the assignment was delivered to the assignee. See Sullivan, 22 N.E.2d at 46; Frankowich, 71 N.E.2d at 762. Rather, delivery of an assignment of mortgage is dependent upon the purpose of the grantor to treat the assignment as delivered. See Frankowich, 71 N.E.2d at 762. In that respect, an assignment of mortgage that is executed in blank – meaning the assignment does not identify the assignee – is insufficient to convey legal title to the mortgaged premises. See Ibanez, 941 N.E.2d at 53; O'Brien v. Wilmington Trust Nat'l Ass'n as Tr., 506 F.Supp.3d 82, 94 n. 3 (D.Mass. 2020)(recognizing that an assignment of mortgage that is

executed in blank is void *ab initio*). In Ibanez, the Supreme Judicial Court ("SJC") was tasked with determining the effect of an assignment of mortgage that was executed in blank and held that "a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; we do not regard an assignment of land in blank as giving legal title to the bearer of the assignment." See Ibanez, 941 N.E.2d at 53.

Here, the appellate record is sufficient to establish that in 2018, Kiavi provided assignments of certain mortgages, which included the Prospect Street and Pleasant Street Commercial Mortgages, to Toorak as security under the terms of a private funding agreement. Supp.R.A. at 372, 374. At the time that Kiavi provided the Assignments of the Pleasant Street and Prospect Street Commercial Mortgages to Toorak they were executed in blank without identifying the assignee. Supp.R.A. at 372, 374; see Supp.R.A. at 401, Kiavi Affidavit at ¶ 41; Supp.R.A. at 412, Toorak Affidavit at ¶ 8. Because the Assignments were executed in blank, they are void *ab initio* and ineffective to convey legal title to the Pleasant Street and Prospect Street Properties. Ibanez, 941 N.E.2d at 53; O'Brien, 506 F.Supp.3d 94 n. 3.

Southbridge's assertion that the Blank Assignments were not executed in blank because Toorak is identified as the assignee in the recorded instrument wholly ignores the documentary evidence and sworn, affidavit testimony in the summary judgment record. The summary judgment record includes the Blank Assignments,

as executed in blank, which, although signed by Lendinghome Funding Corporation, do not identify the assignee. Supp.R.A. at 372, 374. Kiavi, Christiana Trust and Toorak all agree that Kiavi provided the Blank Assignments to Toorak in this form without identifying the assignee. Supp.R.A. at 401, Kiavi Affidavit at ¶ 41; Supp.R.A. at 412, Toorak Affidavit at ¶ 8; see R.A. at 76, 122 (because Kiavi, Christiana Trust's loan servicer, provided the Affidavit in support of the Defendants' Motion for Summary Judgment, Christiana Trust did not file its own separate Affidavit, however, Christiana Trust joined in the Section 5B Affidavits that were recorded on title to the Pleasant Street and Prospect Street Properties). Kiavi, Christiana Trust and Toorak further agree that Toorak completed the Blank Assignments by identifying itself as the assignee and subsequently recorded the documents without seeking authorization from Kiavi or Christiana Trust to do so. Supp.R.A. at 401-402, Kiavi Affidavit at ¶¶ 43-46; Supp.R.A. at 412-413, Toorak Affidavit at ¶¶ 10-13; see Supp.R.A. at 376, 382. Although central to the issues on appeal, Southbridge omits the Blank Assignments, as executed in blank, and the Affidavits executed by Kiavi and Toorak from its Record Appendix.[6]

Southbridge relies on Ibanez in support of its argument that an assignment of mortgage that is executed in blank may be given legal effect by subsequently

---

[6] Southbridge did not confer with Kiavi and Christiana Trust regarding the contents of the Record Appendix pursuant to Fed. R. App. P. 30(b)(1) before filing the same with the Court.

identifying the assignee in the assignment prior to recording the same, however, that was not the SJC's conclusion. See Ibanez, 941 N.E.2d at 52 n. 19. In Ibanez, Rose Mortgage, Inc. executed an assignment of mortgage in blank, which, at some point thereafter, was stamped with the name of Option One Mortgage Corporation in the space identifying the assignee. Id. at 46. The SJC expressly stated "[b]ecause of the failure of U.S. Bank to document any preforeclosure sale assignment or chain of assignments by which it obtained the Ibanez mortgage from Option One, **it is unnecessary to address the validity of the assignment from Rose Mortgage to Option One.**" Id. at 52 n. 19 (emphasis added). Southbridge cannot overcome this clear and unequivocal statement by the SJC combined with the prior language of the decision holding that an assignment of mortgage in blank "conveys nothing and is void." Id. at 53. Thus, Southbridge's argument that Toorak may unilaterally give effect to the Blank Assignments by identifying itself as the assignee therein without seeking authorization from Kiavi to do so is wholly without merit as a matter of law.

Southbridge's attempt to distinguish the prohibition on assignments in blank discussed in Ibanez is unavailing. The fact that the Blank Assignments identified the assignee when they were recorded and, thus, were not being enforced by a bearer of the instrument is irrelevant. To be effective, an assignment of mortgage must be delivered. Sullivan, 22 N.E.2d at 46. Delivery requires that the grantor of the

instrument intended to affect a "**present transfer of the property**." <u>Frankowich</u>, 71 N.E.2d at 762 (emphasis added).

Here, Kiavi, Christiana Trust and Toorak all agree that Kiavi did not intend to deliver or record the Blank Assignments unless and until Kiavi defaulted under the terms of the private funding agreement, which did not occur. Supp.R.A. at 401, Kiavi Affidavit at ¶¶ 42, 47; Supp.R.A. at 412, Toorak Affidavit at ¶¶ 9, 14. Nevertheless, due to an inadvertent oversight, Toorak completed the Blank Assignments by identifying itself as the assignee thereunder and subsequently recorded the instruments with the Registry of Deeds. R.A. at 60, 113; Supp.R.A. at 412, Toorak Affidavit at ¶ 10. However, Toorak acknowledges that it did not seek Kiavi or Christiana Trust's authorization before completing and recording the Blank Assignments. Supp.R.A. at 413, Toorak Affidavit at ¶ 12; <u>see</u> Supp.R.A. at 401-402, Kiavi Affidavit at ¶¶ 45, 46. Because Kiavi did not default under the private funding agreement and Toorak never sought Kiavi's authorization before identifying itself as the assignee in the Blank Assignments and recording the same, Southbridge cannot demonstrate that Kiavi executed or delivered the Blank Assignments with the intent to affect a present transfer of legal title to the Pleasant Street and Prospect Street Properties. <u>See</u> <u>Frankowich</u>, 71 N.E.2d at 762. Thus, the Blank Assignments are void for lack of delivery.

For the same reason, the fact that the Blank Assignments were executed prior to the Christiana Trust Assignments does not deprive the Christiana Trust Assignments of their effect. Cf. Fed. Nat'l Mortg. Ass'n v. Carr, 2012 Mass.App.Div. 223, 2012 WL 6021306, at *3 (holding that an assignment of mortgage takes effect on the transfer or execution date, not the recording date). The documentary evidence in the record establishes that the Blank Assignments did not identify the assignee at the time that they were executed. Supp.R.A. 372, 374. Southbridge's reliance on Carr is misplaced as the Appellate Division's statement that an assignment of mortgage takes effect upon transfer or execution necessarily depends on the assumption that the assignment complies with the law and satisfies the requirements of delivery. See Sullivan, 22 N.E.2d at 46. The Appellate Division's conclusions regarding the point in time at which an assignment of mortgage takes effect were reached in the context of its determination that the lower court erred in holding that the effectiveness of the assignments is determined by the order in which they are recorded. See Carr, 2012 WL 6021306, at *3. There is nothing in Carr suggesting that a party can unilaterally give effect to an otherwise void assignment of mortgage, especially without seeking the grantor's authorization.

Where, as here, the Blank Assignments are void *ab initio* as a matter of law, Kiavi was the holder of the Prospect Street and Pleasant Street Commercial Mortgages at the time that it assigned them to Christiana Trust and, accordingly, the

Christiana Trust Assignments are valid. As such, the District Court properly determined that the Blank Assignments have no effect on Christiana Trust's standing to foreclose the Pleasant Street and Prospect Street Commercial Mortgage Loans.

### 3.    The Blank Assignments are void regardless of the Section 5B Affidavits.

Contrary to Southbridge's attempt to mischaracterize the nature of the documents, neither Kiavi, Christiana Trust nor Toorak has ever relied upon the Section 5B Affidavits as vehicles for voiding the Blank Assignments. As set forth *supra*, the Blank Assignments are void *ab initio* because they were executed in blank, Supp.R.A. at 372, 374; see Ibanez, 941 N.E.2d at 53; O'Brien, 506 F.Supp.3d 94 n. 3, and were never effectively delivered, Supp.R.A. at 401, Kiavi Affidavit at ¶ 48; Supp.R.A. at 413, Toorak Affidavit at ¶ 15. See Frankowich, 71 N.E.2d at 762; Sullivan, 22 N.E.2d at 46. A void instrument is "of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification." Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 9 (1st Cir. 2014), quoting Allis v. Billings, 47 Mass. 415, 417 (1843). Because the Blank Assignments are void, as opposed to merely voidable, neither Kiavi, Christiana Trust nor Toorak were required to take any action to "render" the Assignments void prior to the publication of Christiana Trust's Notice of Sale under G.L. c. 244, § 14. See id.; see also Bevilacqua v. Rodriguez, 460 Mass. 762, 955 N.E.2d 884, 892 (2011)("[T]here is nothing magical in the act

of recording an instrument with the registry that invests an otherwise meaningless document with legal effect.").

Although Kiavi, Christiana Trust and Toorak executed and recorded the Section 5B Affidavits after the foreclosure sales of the Pleasant Street and Prospect Street Properties took place, this would have no effect on Christiana Trust's standing to foreclose as the true and lawful assignee of the Pleasant Street and Prospect Street Commercial Mortgages. Cf. Ibanez, 941 N.E.2d at 53; Frankowich, 71 N.E.2d at 762; Sullivan, 22 N.E.2d at 46; O'Brien, 506 F.Supp.3d at 94 n. 3. The Section 5B Affidavits were not necessary to affect the voiding of the Blank Assignments. See Wilson, 744 F.3d at 9; Bevilacqua, 955 N.E.2d at 892. The Blank Assignments are void *ab initio* even if the Section 5B Affidavits had never been recorded or were somehow defective. See Ibanez, 941 N.E.2d at 53; O'Brien, 506 F.Supp.3d at 94 n. 3; see also Wilson, 744 F.3d at 9; Bevilacqua, 955 N.E.2d at 892. The Section 5B Affidavits were recorded simply for the purpose of clarifying title to the Pleasant Street and Prospect Street Properties by putting the world on notice of the circumstances that rendered the Blank Assignments void, R.A. at 76, 122. Cf. Bank of America, 52 N.E.3d at 1038-39.

Southbridge relies upon and quotes the decision in Donahue v. Federal National Mortgage Association in support of its argument that courts do not permit lenders to use Affidavits under G.L. c. 183, § 5B in a "now-you-see-it, now-you-

don't, now-you-see-it-again way" when exercising the statutory power of sale. See Appellant's Br. at 6, quoting Donahue, 971 F.3d 1, 5 (1st Cir. 2020), superseded by 980 F.3d 204. Southbridge's reliance on Donahue is inapposite as the quoted language does not relate to foreclosures under the statutory power of sale, but to the timing of a notice of appeal and the appellate jurisdiction derived therefrom.

Where, as here, the Blank Assignments are void *ab initio*, they never took effect, whether upon execution, recording or otherwise. See Wilson, 744 F.3d at 9; Bevilacqua, 955 N.E.2d at 892. Thus, as recognized by the District Court, see Add. at 19 n. 10, the effectiveness of the Section 5B Affidavits is immaterial with respect to the issues concerning the Blank Assignments and Christiana Trust's standing to foreclose.

**4.    Kiavi's collection notes do not indicate that Toorak is the holder or owner of the Pleasant Street and Prospect Street Commercial Mortgage Loans.**

Initially, Southbridge's argument relating to Toorak's role as an investor in Kiavi is unsupported by admissible evidence. The collection notes upon which Southbridge relies represent out-of-court statements that are offered for the truth of the assertions therein. See R.A. at 143-159. Accordingly, the collection notes constitute inadmissible hearsay evidence. See Fed. R. Evid. 801(c), 802. Although Southbridge refers to the collection notes as a "business record" it has not properly authenticated the collection notes under the business record exception or any other

recognized exception to the prohibition on hearsay evidence. Because the collection notes represent inadmissible hearsay, Southbridge failed to present facts "in suitable evidentiary form" sufficient to demonstrate a genuine issue of material fact, Triangle Trading Co., 200 F.3d at 2, with respect to whether Toorak was the holder of the Pleasant Street and Prospect Street Commercial Mortgages at the time of its foreclosure sales.

Although the District Court did not address Kiavi and Christiana Trust's argument regarding the inadmissibility of the collection notes under the prohibition on hearsay evidence, the Court's reasoning in rejecting Southbridge's argument is sound. The record is sufficient to demonstrate that, in 2018, Toorak entered into an agreement to provide Kiavi with private funding. Supp.R.A. at 401, Kiavi Affidavit at ¶ 40; Supp.R.A. at 411-412, Toorak Affidavit at ¶ 5. Pursuant to that agreement, Kiavi pledged certain mortgage loans as collateral for the loan it obtained from Toorak. Supp.R.A. at 401, Kiavi Affidavit at ¶ 40; Supp.R.A. at 411-412, Toorak Affidavit at ¶ 5. Logically, by investing funds in Kiavi, Toorak would be considered an investor under the private funding agreement. See, e.g., Segal v. Genitrix, LLC, 478 Mass. 551, 87 N.E.3d 560, 569-571 (2017)(discussing the role of an investor, generally). It is reasonable to presume that Toorak would be permitted to provide input and object with respect to decisions that may affect the pool of mortgage loans pledged as security for the loan to Kiavi so as to provide Toorak with an opportunity

to protect and preserve its interest in the collateral. See id. at 570 (Investors act on their own behalf and "invariably exercise some control over the businesses they invest in.").

Southbridge has not and cannot identify any evidence in the record that would be sufficient to suggest that Toorak ever purchased or otherwise acquired the Prospect Street and Pleasant Street Commercial Mortgage Loans from Kiavi or Christiana Trust nor has Toorak ever claimed to be the owner of the Prospect Street and Pleasant Street Notes. Cf. Supp.R.A. at 401-402, Kiavi Affidavit at ¶¶ 42, 45, 46, 48; Supp.R.A. 412-413, Toorak Affidavit at ¶¶ 9, 12, 13, 15 (establishing that Kiavi and Toorak did not intend for the Assignments of Mortgage to be delivered to Toorak unless Kiavi defaulted under the private funding agreement). Rather, Toorak only obtained a mere security interest in the pool of loans pledged as collateral under the private funding agreement. Supp.R.A. at 401, Kiavi Affidavit at ¶ 40; Supp.R.A. at 411-412, Toorak Affidavit at ¶ 5. In contrast, the record sufficiently demonstrates that Christiana Trust is the true and lawful holder and owner of the Prospect Street and Pleasant Street Notes. Supp.R.A. at 60, 61, 241, 255, 276.

Southbridge's self-serving, conclusory allegations with respect to Toorak's alleged ownership interest in the Prospect Street and Pleasant Street Commercial Mortgage Loans represent nothing but pure speculation and, as a result, are wholly insufficient to demonstrate a genuine issue of material fact with respect to Christiana

Trust's standing to foreclose as the holder/owner of the Pleasant Street and Prospect Street Notes. Triangle Trading Co., 200 F.3d at 2 ("[C]onclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact.")(internal quotations omitted). As such, the District Court properly rejected Southbridge's attempt to defeat summary judgment based upon references to Toorak as an "investor" in Kiavi's collection notes.

5. **The recorded Blank Assignments did not provide notice of any alleged transfer of the Pleasant Street and Prospect Street Commercial Mortgages.**

The fact that the Blank Assignments were recorded on title to the Pleasant Street and Prospect Street Properties is immaterial. "The function of a registry of deeds is to record documents," which is "essentially a ministerial function . . ." S & H Petrol. Corp., Inc. v. Register of Deeds, 46 Mass.App.Ct. 535, 707 N.E.2d 843, 845 (1999). It is well-settled that simply recording an instrument with the Registry of Deeds does not give legal effect to an otherwise void instrument. See Bevilacqua, 955 N.E.2d at 892. If an instrument recorded on title to real estate is ineffective, the instrument cannot serve to place the world on constructive notice of the same. See Allen v. Allen, 86 Mass.App.Ct. 295, 16 N.E.3d 1078, 1084 (2014).

As set forth *supra*, the Blank Assignments are void *ab initio*, and, as a result, did not affect a conveyance of legal title to the Prospect Street and Pleasant Street Properties. See Ibanez, 941 N.E.2d at 53; O'Brien, 506 F.Supp.3d 94 n. 3;

Frankowich, 71 N.E.2d at 762; Sullivan, 22 N.E.2d at 46. Accordingly, the Blank

Assignments cannot serve as constructive notice of a transfer of legal title to the

Prospect Street and Pleasant Street Properties that predates the Christiana Trust

Assignments. See Bank of America, 52 N.E.3d at 1040 (a defective instrument does

not provide constructive notice even if it is accepted for recording at the Registry of

Deeds); Bevilacqua, 955 N.E.2d at 892. As such, the District Court properly rejected

Southbridge's attempt to give effect to the Blank Assignments on the basis that the

state of title to the Pleasant Street and Prospect Street Properties may not be clear to

members of the general public reviewing the land records. This very argument is the

reason that Kiavi, Christiana Trust and Toorak executed and recorded the Section

5B Affidavits.

**B.    The District Court Properly Determined that Christiana Trust was not Required to identify the Blank Assignments in its Notices of Sale.**

Pursuant to G.L. c. 244, § 14, to foreclose by exercise of the statutory power

of sale, the mortgagee must publish a notice of sale for three consecutive weeks in a

newspaper of general circulation in the town in which the mortgaged premises are

located. Section 14 further requires that the mortgagee's Notice of Sale must disclose

the recording information for any assignments of the mortgage to be foreclosed.

Nevertheless, a mortgagee is not required to disclose the recording information for

any void assignments of mortgage in its Notice of Sale. Cf. Sampson v. U.S. Bank

Nat'l Ass'n, --- F.Supp.3d ---, 2023 WL 6050356, at *3 (D.Mass. Sept. 15,

2023)(Gorton, J.)(holding that the mortgagee was not required to disclose an ineffective assignment of mortgage in its Certification under 209 CMR § 18.21A(2)(c), which, like G.L. c. 244, § 14, requires the mortgagee to identify the recorded assignments of mortgage); O'Brien, 506 F.Supp.3d at 100; Germano v. U.S. Bank Nat'l Ass'n, No. 17 SBQ 36138-12-001 (HPS), 2018 WL 986065, at *2 (Mass. Land Ct. Jan. 2, 2018)(Speicher, J.). This is because a void assignment of mortgage does not affect a conveyance of legal title and, as a result, is not included in the chain of title to the mortgage. Sampson, 2023 WL 6050356, at *3; O'Brien, 506 F.Supp.3d at 100; Germano, 2018 WL 986065, at *2.

Here, as set forth *supra*, the Blank Assignments are void and do not affect a conveyance of legal title to the Pleasant Street and Prospect Street Properties. Accordingly, Christiana Trust was not required to identify the Blank Assignments in its Notices of Sale served under G.L. c. 244, § 14. Cf. Sampson, 2023 WL 6050356, at *3; O'Brien, 506 F.Supp.3d at 100; Germano, 2018 WL 986065, at *2. As such, the District Court properly rejected Southbridge's argument that Christiana Trust's foreclosure sales of the Pleasant Street and Prospect Street Properties are void for want of any reference to the recorded Blank Assignments in the Notices of Sale.

**C.**     **The District Court Properly Determined that Christiana Trust's Foreclosure Sale of the Pleasant Street Property was Conducted in Strict Compliance with the Statutory Power of Sale.**

The record on appeal is sufficient to demonstrate that Christiana Trust had standing to foreclose and, further, that its foreclosure sale of the Pleasant Street Property was conducted in strict compliance with the statutory power of sale. As set forth in Section A(1), *supra*, Christiana Trust was the true and lawful holder of record of the Pleasant Street Commercial Mortgage as of December 16, 2019. R.A. at 60. Further, the Noteholder Affidavits, Supp.R.A. at 241, 276, and Noteholder Certification, Supp.R.A. at 255, are sufficient to establish that Christiana Trust is the holder/owner of the Pleasant Street Note. See G.L. c. 244, § 35C; Eaton, 969 N.E.2d at 1133 n. 28; Strawbridge, 79 N.E.3d at 1105-1106. The Christiana Trust Assignment, the Noteholder Certification and the Pre-Foreclosure Noteholder Affidavit were executed and, where applicable, recorded prior to the publication of Christiana Trust's Notice of Sale on November 8, 2020. Compare R.A. at 60, Supp.R.A. at 241, 276, and 255, with R.A. at 74. Accordingly, the record is sufficient to demonstrate that Christiana Trust had standing to foreclose the Pleasant Street Commercial Mortgage Loan. See Ibanez, 941 N.E.2d at 53; Eaton, 969 N.E.2d at 1129-1131; see also Strawbridge, 79 N.E.3d at 1105-1106.

Southbridge defaulted under the terms of the Pleasant Street Commercial Mortgage Loan Contract as a result of its failure to satisfy its payment obligations

thereunder. Supp.R.A. at 398, Kiavi Affidavit at ¶ 24. Although not required under the terms of the Pleasant Street Commercial Mortgage Contract, on October 15, 2020, Kiavi caused Southbridge to be served with a Notice of Default and Election to Sell Property. Supp.R.A. at 256. Southbridge failed to cure his default and, as a result, Christiana Trust scheduled a foreclosure sale of the Pleasant Street Property to take place on December 17, 2020. Supp.R.A. at 399-400, Kiavi Affidavit at ¶ 32. Pursuant to G.L. c. 244, § 14, Christiana Trust commenced its foreclosure by publishing a Notice of Sale for three consecutive weeks beginning on November 8, 2020. R.A. at 74. Pursuant to G.L. c. 244, §§ 14 and 17B, Christiana Trust caused Southbridge to be served with a Notice of Intention to Foreclose and Intent to Pursue Deficiency after Foreclosure, as well as copies of the Notice of Sale, the Noteholder Certification, the Note and the Christiana Trust Assignment. Supp.R.A. at 280, 314. The foreclosure sale of the Pleasant Street Property was postponed by public proclamation from December 17, 2020, to December 22, 2020. Supp.R.A. at 359. Christiana Trust conducted its lawful foreclosure sale of the Pleasant Street Property on December 22, 2020, at which Christiana Trust entered the highest bid. R.A. at 67, Supp.R.A. at 367. The Foreclosure Deed conveying title to the Pleasant Street Property to Christiana Trust was recorded on March 23, 2021, with the Hampden County Registry of Deeds in Book 23780, Page 467. R.A. at 67. On March 23, 2021, Christiana Trust caused to be recorded a Post Sale Affidavit Regarding Note

indicating that Christiana Trust was the holder/owner of the Pleasant Street Note prior to the publication of its Notice of Sale and at all times up to and including its foreclosure sale of the Pleasant Street Property. Supp.R.A. at 370. Based on the foregoing, Christiana Trust satisfied the essential elements to affect a valid foreclosure sale of the Pleasant Street Property. See, e.g., G.L. c. 244, § 14; Ibanez, 941 N.E.2d at 53; Eaton, 969 N.E.2d at 1129-1131.

Where, as here, Christiana Trust had standing to foreclose and satisfied the applicable statutory and contractual requirements, the District Court properly determined that Christiana Trust conducted its foreclosure sale of the Pleasant Street Property in strict compliance with the statutory power of sale.

**D. The District Court Properly Determined that Christiana Trust's Foreclosure Sale of the Prospect Street Property was Conducted in Strict Compliance with the Statutory Power of Sale.**

The record on appeal is sufficient to demonstrate that Christiana Trust had standing to foreclose and, further, that its foreclosure sale of the Prospect Street Property was conducted in strict compliance with the statutory power of sale. As set forth in Section A(1), *supra*, Christiana Trust was the true and lawful holder of record of the Prospect Street Commercial Mortgage as of December 13, 2019. R.A. at 116. Further, the Noteholder Affidavit, Supp.R.A. at 61, and Noteholder Certification, Supp.R.A. at 60, are sufficient to establish that Christiana Trust is the holder/owner of the Prospect Street Note. See G.L. c. 244, § 35C; Eaton, 969 N.E.2d

at 1133 n. 28; Strawbridge, 79 N.E.3d at 1105-1106. The Christiana Trust Assignment, the Noteholder Certification and the Pre-Foreclosure Noteholder Affidavit were executed and, where applicable, recorded prior to the publication of Christiana Trust's Notice of Sale on November 17, 2020. Compare R.A. at 116, Supp.R.A. at 60 and 61, with Supp.R.A. at 88. Accordingly, Christiana Trust sufficiently established that it had standing to foreclose the Prospect Street Commercial Mortgage Loan. See Ibanez, 941 N.E.2d at 53; Eaton, 969 N.E.2d at 1129-1131; see also Strawbridge, 79 N.E.3d at 1105-1106.

Southbridge defaulted under the terms of the Prospect Street Commercial Mortgage Loan Contract as a result of its failure to satisfy the payment obligations thereunder. Supp.R.A. at 396, Kiavi Affidavit at ¶ 7. Although not required under the terms of the Prospect Street Commercial Mortgage Contract, on November 2, 2020, Kiavi caused Southbridge to be served with a Notice of Default and Election to Sell Property. Supp.R.A. at 64. Southbridge failed to cure his default and, as a result, Christiana Trust scheduled a foreclosure sale of the Prospect Street Property to take place on December 17, 2020. Supp.R.A. at 397, Kiavi Affidavit at ¶ 14. Pursuant to G.L. c. 244, § 14, Christiana Trust published a Notice of Sale for three consecutive weeks beginning on November 17, 2020. Supp.R.A. at 88. Pursuant to G.L. c. 244, §§ 14 and 17B, Christiana Trust caused Southbridge to be served with a Notice of Intention to Foreclose and Intent to Pursue Deficiency after Foreclosure,

as well as copies of the Notice of Sale, the Noteholder Certification, the Note and the Christiana Trust Assignment. Supp.R.A. at 89, 134. The foreclosure sale of the Prospect Street Property was postponed by public proclamation from December 17, 2020, to January 21, 2021. Supp.R.A. at 189. Christiana Trust conducted its lawful foreclosure sale of the Prospect Street Property on January 21, 2021, at which Michelle Ngila ("Ngila") entered the highest bid. Supp.R.A. at 190. Ngila failed to consummate the sale of the Prospect Street Property and, accordingly, Christiana Trust entered into a Memorandum of Sale Contract with the second highest bidder, Ruby Realty. Supp.R.A. at 194. Based on the foregoing, Christiana Trust satisfied the essential elements to affect a valid foreclosure sale of the Prospect Street Property. See, e.g., G.L. c. 244, § 14; Ibanez, 941 N.E.2d at 53; Eaton, 969 N.E.2d at 1129-1131.

Where, as here, Christiana Trust had standing to foreclose and satisfied the applicable statutory and contractual requirements, the District Court properly determined that Christiana Trust conducted its foreclosure sale of the Prospect Street Property in strict compliance with the statutory power of sale.

## CONCLUSION

WHEREFORE Kiavi and Christiana Trust respectfully request that this Court affirm the District Court's grant of Summary Judgment in their favor and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Kiavi Funding, Inc. and
Christiana Trust, a division of Wilmington
Savings Fund Society, FSB, not in its individual
capacity but as Trustee for Victoria Capital Trust
By its attorneys,

/s/ *Brian C. Linehan*

Brian C. Linehan – CA1 #1171891
Reneau J. Longoria – CA1 #1075496
DOONAN, GRAVES & LONGORIA, LLC
100 Cummings Center, Suite 303C
Beverly, Massachusetts 01915
(978) 921-2670
bl@dgandl.com

Date: December 7, 2023

## CERTIFICATE OF COMPLIANCE
## Pursuant to Rule 32(g)(1) of the
## Federal Rules of Appellate Procedure

I, Brian C. Linehan, hereby certify that the foregoing brief complies with the type-volume limit of Fed. R. App. P. 28(a) and 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this document contains 8,376 words.

I further certify that the foregoing brief complies with the applicable typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in times new roman 14-point font.

*/s/ Brian C. Linehan*
Brian C. Linehan – CA1 #1171891
Reneau J. Longoria – CA1 #1075496
DOONAN, GRAVES & LONGORIA, LLC
100 Cummings Center, Suite 303C
Beverly, Massachusetts 01915
(978) 921-2670
bl@dgandl.com

Date: December 7, 2023

# CERTIFICATE OF SERVICE

I, Brian C. Linehan, Esq., hereby certify, under the penalties of perjury, that on December 7, 2023, I have made service of this Brief upon the attorney of record for each party, or if the party has no attorney then I made service directly to the self-represented party, by priority mail, postage prepaid on:

**SERVICE LIST**

Todd S. Dion, Esq.
15 Cottage Avenue, Suite 202
Quincy, MA 02169

/s/ *Brian C. Linehan*

Brian C. Linehan – CA1 #1171891
Reneau J. Longoria – CA1 #1075496
DOONAN, GRAVES & LONGORIA, LLC
100 Cummings Center, Suite 303C
Beverly, Massachusetts 01915
(978) 921-2670
bl@dgandl.com

# ADDENDUM

# ADDENDUM
# TABLE OF CONTENTS

Order on the Parties' Cross-Motions for Summary Judgment ........................Add. 1

Judgment ..............................................................................................Add. 36

Malanoski v. Wells Fargo Bank, N.A., as Trustee, --- F.Supp.3d
    ---, 2023 WL 1451929 (D.Mass. Feb. 1, 2023)....................................Add. 38

Wilmington Savings Fund Society v. Umana, 98 Mass.App.Ct.
    1111, 155 N.E.3d 761 (Sept. 24, 2020) .................................................Add. 46

Federal National Mortgage Association v. Carr, 2012
    Mass.App.Div. 223, 2012 WL 6021306 (Nov. 29, 2012)....................Add. 49

Sampson v. U.S. Bank National Association, as Trustee, ---
    F.Supp.3d ---, 2023 WL 6050356 (D.Mass. Sept. 15,
    2023) ......................................................................................................Add. 53

Germano v. U.S. Bank National Association, as Trustee, No. 17
    SBQ 36138-12-001 (HPS), 2018 WL 986065 (Mass. Land
    Ct. Jan. 2, 2018).....................................................................................Add. 61

G.L. c. 183, § 5B ...............................................................................Add. 64

G.L. c. 244, § 14.................................................................................Add. 65

G.L. c. 244, § 17B...............................................................................Add. 68

G.L. c. 244, § 35C ..............................................................................Add. 70

209 CMR 18.24...................................................................................Add. 73

i

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SOUTHBRIDGE RE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-30061-KAR |
| | ) | |
| KIAVI FUNDING INC. & CHRISTIANA | ) | |
| TRUST, A DIVISION OF WILMINGTON | ) | |
| SAVINGS FUND SOCIETY, FSB, NOT IN | ) | |
| ITS INDIVIDUAL CAPACITY BUT AS | ) | |
| TRUSTEE FOR VICTORIA CAPITAL | ) | |
| TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM AND ORDER ON PLAINTIFF'S CROSS MOTION FOR
SUMMARY JUDGMENT & DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT</u>
(Dkt. Nos. 28 & 32)

ROBERTSON, U.S.M.J.

This case arises out of foreclosure proceedings on two commercial properties purchased

by Southbridge RE, LLC (Plaintiff) in 2018.  Plaintiff obtained loans from Defendant

LendingHome Funding Corporation (LendingHome) now known as Kiavi Funding (Kiavi), to

purchase the real estate at 103 Prospect Street in Springfield (Springfield Property) and 25

Pleasant Street in Westfield (Westfield Property).[1]  The loans were secured by mortgages on the

properties in favor of LendingHome.  Plaintiff contends that LendingHome's assignments of the

mortgages to Defendant Christiana Trust, a division of Wilmington Savings Fund, FSB, not in its

individual capacity but as trustee for Victoria Capital Trust (Christiana Trust), which foreclosed

---

[1] LendingHome Funding Corporation generally will be referred to as LendingHome because it
had not changed its name to Kiavi Funding when the events giving rise to this case occurred
(Dkt. No. 35-1 at 1-3).

1

on the properties, were not valid because LendingHome had previously assigned the mortgages

to Toorak Capital Partners (Toorak).  Before the court are the parties' cross-motions for summary

judgment (Dkt. Nos. 28 & 32).  The parties have consented to this court's jurisdiction (Dkt. No.

11).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons set forth below, the court denies

Plaintiff's cross-motion for summary judgment and grants in part and denies in part Defendants'

summary judgment motion.

     I.     BACKGROUND[2]

     A.     103 Prospect Street, Springfield, Massachusetts

Plaintiff acquired the deed to the Springfield Property on September 7, 2018 (PSOF ¶ 10;

Def. Resp. ¶ 10).  On September 5, 2018, Plaintiff executed a promissory note in the amount of

$155,700 to LendingHome for the purchase of the Springfield Property (Springfield Note)

(DASOF ¶ 2; Pl. Resp. ¶ 2).  Plaintiff secured the note by granting LendingHome a commercial

mortgage on the Springfield property (Springfield Mortgage) (DASOF ¶ 3; Pl. Resp. ¶ 3).  On

September 14, 2018, the Springfield Mortgage was recorded in the Hampden County Registry of

Deeds in book 22357, at page 427 (PSOF ¶ 11; Def. Resp. ¶ 11; DASOF ¶ 3; Pl. Resp. ¶ 3).

On September 19, 2018, a LendingHome closing team leader appeared before a notary

public and executed an Assignment of Deed of Trust on the Springfield Property in blank,

meaning that the document did not identify an assignee, as security for a private funding

---

[2] Unless another source is cited, the facts are drawn from Plaintiff's Statement of Undisputed
Material Facts in Support of its Motion for Summary Judgment (PSOF) (Dkt. No. 31);
Defendant's Response to Plaintiff's Statement of Undisputed Material Facts in Support of its
Motion for Summary Judgment (Def. Resp.) (Dkt. No. 43); Defendants' Amended Statement of
Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (DASOF)
(Dkt. No. 45); and Plaintiff's Statement of Disputed Facts in Support of Plaintiff's Opposition to
Defendants' Motion for Summary Judgment (Pl. Resp.) (Dkt. No. 37).

agreement between LendingHome and Toorak (DASOF ¶ 52; Pl. Resp. ¶ 52; Dkt. No. 35-5 at 32).

Plaintiff defaulted under the terms of the Springfield Mortgage by failing to make the September 1, 2019 payment and all subsequent payments (DASOF ¶ 4; Pl. Resp. ¶ 4).

On December 13, 2019, LendingHome executed an assignment of the Springfield Mortgage to Christiana Trust (DASOF ¶ 6; Dkt. No. 35-1 at 51-52).  The assignment was recorded in the Hampden County Registry of Deeds on December 13, 2019 in book 22999, at page 307 (Dkt. No. 35-1 at 51-52).

Although Plaintiff disputes that Christiana Trust held the Springfield Note and the Springfield Mortgage on that date, on October 14, 2020, James Missell, a LendingHome portfolio manager, representing LendingHome as the servicer of the Springfield Mortgage, executed a Certification Pursuant to Massachusetts 209 CMR § 18.21A(2)(c)[3] and an Affidavit Regarding Note Secured by a Mortgage to be Foreclosed stating that LendingHome assigned the mortgage to Christiana Trust and that Christiana Trust held the Springfield Note (DASOF ¶¶ 9, 10; Pl. Resp. ¶¶ 9, 10, 20, 21; Dkt. No. 35-1 at 53-56).

On November 2, 2020, LendingHome caused Plaintiff to be served with a Notice of Default and Election to Sell Property pursuant to paragraph 4.3(a) of the Springfield Mortgage

---

[3] The pertinent clause of the regulation, 209 C.M.R. § 18.21A(2)(c), provided:

> A third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the right to foreclose, including but not limited to, certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon. The third party loan servicer shall provide such certification to the borrower with the notice of foreclosure, provided pursuant to [Mass. Gen. Laws ch.] 244, § 14 and shall also include a copy of the note with all required endorsements.

(DASOF ¶ 11).  Section 5 of the promissory note contained a waiver of notices of default (Dkt. No. 35-1 at 8).  Section 7 of the Springfield Note indicated the means by which notices should be delivered to Plaintiff at 47 Harvard Street, Worcester, Massachusetts (Dkt. No. 35-1 at 8). Section 6.31.3(c) of the Springfield Mortgage, the provision that was specific to Massachusetts, stated that section 4.3(a) of the mortgage, entitled "Declaration and Notice of Default," was deleted in its entirety and replaced with the following:  "Lender shall have the right to cause the Property to be sold under the power of sale contained in this Mortgage in any manner permitted by applicable law" (Dkt. No. 35-1 at 49).  The Notice of Default and Election to Sell Property was sent by certified mail, return receipt requested, to Plaintiff, c/o Hunter Foote[4] at 103 Prospect Street, Springfield, MA; 14 Main Street, Wales, MA; 25 Pleasant Street, Westfield, MA; 47 Harvard Street, Suite 200, Worcester, MA;[5,6] and 9 Central Street, Southbridge, MA. The notice was also sent to Plaintiff, c/o Hunter Foote, 119 Forest Street, Worcester, MA (Dkt. No. 35-1 at 57-80). [7]

---

[4] Foote was listed as the manager and registered agent of Plaintiff on the Certificate of Organization that was filed with the Massachusetts Secretary of the Commonwealth on March 12, 2014 (Dkt. No. 35-3 at 1-3).  The certificate showed Plaintiff's address as 9 Central Street, Southbridge, MA (Dkt. No. 35-3 at 1-2).

[5] The address on the cover letter read "47 Harvard Street, Suite 220, Worcester, MA" (Dkt. No. 35-1 at 73).

[6] On August 2, 2017, Plaintiff filed a Statement of Change of Resident Office Address with the Massachusetts Secretary of the Commonwealth.  The statement identified Hunter T. Foote as Plaintiff's resident agent with an office address of 47 Harvard Street, Suite 220, Worcester, MA 01609 (DASOF ¶ 1; Pl. Resp. ¶ 1).

[7] The cover letter was addressed to Southbridge RE, LLC's resident agent and address that was on record with the Secretary of the Commonwealth as of March 20, 2020: "Plaintiff, c/o Marcanthony Salce, 119 Forest Street, Worcester, MA" (Dkt. No. 35-1 at 61; Dkt. No. 35-5 at 60-62).

When Plaintiff failed to cure its default by November 9, 2020, the date stated in the notice, Christiana Trust scheduled a foreclosure sale of the Springfield Property on December 17, 2020 (DASOF ¶ 12; Pl. Resp. ¶ 12).  Christiana Trust published a Notice of Mortgagee's Sale of Real Estate (Notice of Sale) in the Springfield Republican for three consecutive weeks on November 17, November 24, and December 1, 2020.  The notice indicated that LendingHome had assigned the mortgage to Christiana Trust on December 13, 2019 (Dkt. No. 35-1 at 81; Dkt. No. 35-5 at 48-49 ¶ 7).

On November 23, 2020, Christiana Trust mailed Plaintiff a Notice of Intention to Foreclose Mortgage and Intent to Pursue Deficiency after Foreclosure along with the Notice of Sale and Certification Pursuant to Massachusetts 209 C.M.R. § 18.21A(2)(c) (DASOF ¶ 14; Pl. Resp. ¶ 14).  On that date, Defendants' attorney executed an affidavit certifying that the Notice of Intention to Foreclose Mortgage and Intent to Pursue Deficiency were mailed to Plaintiff and others, postage prepaid, by registered mail with return receipt requested within twenty-one days of the sale (DASOF ¶ 15; Pl. Resp. ¶ 15).

Meanwhile, at some point not disclosed in the record, Toorak filled in its name and address as the assignee on the September 19, 2018 assignment in blank, and added the number assigned to the Springfield Mortgage by the Hampden County Registry of deeds, the book and page numbers of the recorded mortgage, and the recording date (Dkt. No. 35-5 at 31-32 and at 55 ¶ 10).  The assignment to Toorak was recorded in the Hampden County Registry of Deeds on November 30, 2020 in book 23560, at page 35 (PSOF ¶ 12; Def. Resp. ¶ 12; DASOF ¶ 56; Pl. Resp. ¶ 56; Dkt. No. 35-5 at 31-32).

On December 11, 2020, Plaintiff caused a Notice of Lease on the Springfield property to be recorded in the Hampden County Registry of Deeds in book 23584, at page 439 (DASOF ¶

16; Pl. Resp. ¶ 16).  The notice stated that Plaintiff entered into a six-year lease with Cia

Recovery Services, LLC, on December 1, 2020.  Cia Recovery Services, LLC, was owned and

operated by Michelle Ngila, who was involved in a relationship with Foote, the former manager

and registered agent for Plaintiff who executed the Springfield Note and Mortgage (DASOF ¶¶

17, 18; Pl. Resp. ¶¶ 17, 18; Dkt. No. 35-2 at 95).

     The foreclosure sale of the Springfield Property was postponed by public proclamation

from December 17, 2020 to January 21, 2021 after Foote made a down payment on an approved

short sale of the property (Dkt. No. 39 at 1-2 ¶¶ 3, 4).  On January 21, Ngila entered the highest

bid of $141,000.  Because Ngila failed to close within the time provided by the Memorandum of

Sale Contract, Christiana Trust terminated the purchase and sale contract and offered the

Springfield Property to Ruby Realty, the second highest bidder at the foreclosure sale.  Ruby

Realty contracted to purchase the Springfield property for $140,900 but has not closed on the

sale due to the title dispute.  Plaintiff owes a total of $266,811.10 under the terms of the

Springfield Mortgage (DASOF ¶¶ 19, 20, 22-25; Pl. Resp. ¶¶ 19, 20, 22-25).

     On June 1, 2021, representatives of LendingHome, Toorak, and Christiana Trust

executed an affidavit under Mass. Gen. Laws ch. 183, § 5B (5B Affidavit) explaining the reasons

why the mortgage assignment in which Toorak appeared as the assignee was invalid and stating

that the affiants elected to void this assignment (Dkt. No. 30-9).  This affidavit was recorded in

the Hampden County Registry of Deeds in book 23943, at page 530 (PSOF ¶ 14; Def. Resp. ¶

14; Dkt. No. 35-5 at 19-24).

     B.     25 Pleasant Street, Westfield, Massachusetts

     Plaintiff purchased the Westfield Property on October 4, 2018 (PSOF ¶ 1; Def. Resp. ¶

1).  On October 11, 2018, Plaintiff executed a promissory note to LendingHome in the amount of

$175,000 to finance the purchase of the Westfield Property (Westfield note) (DASOF ¶ 26; Pl. Resp. ¶ 26).  Plaintiff secured the note by granting LendingHome a commercial mortgage on the Westfield Property in the amount of $175,000 (Westfield Mortgage) (DASOF ¶ 27; Pl. Resp. ¶ 27).  On October 11, 2018, the Westfield Mortgage was recorded in the Hampden County Registry of Deeds in book 22401, at page 130 (DASOF ¶ 27; Pl. Resp. ¶ 27).

On October 16, 2018, a LendingHome representative executed an assignment of the Westfield Mortgage before a notary public.  Like LendingHome's September 19, 2018 assignment of the Springfield Mortgage, the assignment of the Westfield Mortgage was in blank, meaning that, again, no assignee was identified in the document at the time of execution.  This assignment also allegedly provided security for LendingHome's private funding agreement with Toorak.

Plaintiff defaulted under the terms of the Westfield Mortgage due to its failure to make the September 1, 2019 payment and all subsequent payments (DASOF ¶ 28; Pl. Resp. ¶ 28).

LendingHome executed an assignment of the Westfield Mortgage to Christiana Trust on December 16, 2019.  On January 6, 2020, the assignment was recorded in the Hampden County Registry of Deeds in book 23033, at page 26 (DASOF ¶ 30; Pl. Resp. ¶ 30; Dkt. No. 35-3 at 53-55).  On February 4, 2020, a LendingHome foreclosure manager executed an Affidavit Regarding Note Secured by a Mortgage to be Foreclosed and certified that Christiana Trust held the Westfield note and that the requirements of Mass. Gen. Laws ch. 244, § 35B did not apply to the Westfield mortgage that secured the note.  The affidavit was recorded on February 11, 2020 (DASOF ¶ 32; Pl. Resp. ¶ 32; Dkt. No. 35-3 at 56-69).  On October 7, 2020, Missell, a portfolio manager for LendingHome, the mortgage servicer, executed a second Affidavit Regarding Note Secured by a Mortgage to be Foreclosed.  Based upon Missell's review of LendingHome's

correspondence file, notes of conversations of Plaintiff and its representatives, and loan history, he certified that Mass. Gen. Laws ch. 244, § 35B did not apply to the Westfield Mortgage. The affidavit was recorded in the Hampden County Registry of Deeds on October 22, 2020 (Dkt. No. 35-4 at 1-3). Missell also executed a certification Pursuant to Massachusetts 209 C.M.R. § 18.21A(2)(c) indicating that Christiana Trust owned the Westfield Note and Mortgage (DASOF ¶ 33; Pl. Resp. ¶ 33; Dkt. No. 35-3 at 70).

On October 15, 2020, Lending Home served Plaintiff with a Notice of Default and Election to Sell Property (DASOF ¶ 34; Pl. Resp. ¶ 34). The notices were mailed to Plaintiff, c/o Foote at 25 Pleasant Street, Westfield, MA; 9 Central Street, Southbridge, MA; 47 Harvard Street, Suite 220, Worcester, MA; and 14 Main Street, Wales, MA. The notice was also mailed to Plaintiff, c/o Marcanthony Salce, 119 Forest Street, Worcester, MA (Dkt. No. 35-3 at 71-90).

Plaintiff failed to cure its default prior to the date stated in the Notice of Default. Christiana Trust then scheduled a foreclosure sale of the Westfield Property on December 17, 2020 (DASOF ¶ 36; Pl. Resp. ¶ 36). Christiana Trust caused a Notice of Mortgagee's Sale of Real Estate (Notice of Sale) to be published in the Westfield News for three consecutive weeks on November 18, November 25, and December 2, 2020 (PSOF ¶ 8; Def. Resp. ¶ 8). The Notice of Sale indicated that the Westfield Mortgage had been assigned to Christiana Trust (Dkt. No. 35-4 at 4).

On November 20, 2020, Christiana Trust caused a Notice of Intention to Foreclose and Intention to Pursue Deficiency After Foreclosure, along with copies of the Notice of Sale and Noteholder Certification to be mailed to Plaintiff (DASOF ¶ 38; Pl. Resp. ¶ 38). On November 20 and 23, 2020, Defendants' attorneys certified that they had complied with Mass. Gen. Laws ch. 244, § 17B by mailing to Plaintiff and other parties, including the Internal Revenue Service,

the Notice of Intention to Foreclose Mortgage and Intent to Pursue Deficiency within twenty-one days of the scheduled sale (DASOF ¶¶ 39, 40; Pl. Resp. ¶¶ 39, 40).

Again, at some point not disclosed in the record, Toorak filled in its name and address as the assignee on the October 16, 2018 assignment in blank, and added the number assigned to the Westfield Mortgage by the Hampden County Registry of deeds, the book and page numbers of the recorded mortgage, and the recording date. The assignment to Toorak was recorded in the Hampden County Registry of Deeds on November 30, 2020 in book 23560, at page 8 (PSOF ¶ 4; Def. Resp. ¶ 4; Dkt. No. 35-5 at 33-34; Dkt. No. 35-5 at 55 ¶ 10).

On December 11, 2020, Plaintiff caused a Notice of Lease of the Westfield property to Cia Recovery Services to be recorded in the Hampden County Registry of Deeds. The notice was substantially similar to the notice of lease that was recorded for the Springfield Property (DASOF ¶¶ 41-43; Pl. Resp. ¶¶ 41-43).

The foreclosure sale of the Westfield Property was postponed by public proclamation from December 17 to December 22, 2020 due to a December 17, 2020 snowstorm (DASOF ¶ 44; Pl. Resp. ¶ 44; PSOF ¶ 6; Def. Resp. ¶ 6; Dkt. No. 39 at 2 ¶ 6). Christiana Trust entered the highest bid at the foreclosure sale and the foreclosure deed conveying title to Christiana Trust was recorded in the Hampden Count Registry of Deeds in book 23780, at page 467 on March 23, 2021 (DASOF ¶¶ 45, 46; Pl. Resp. ¶¶ 45, 46). Missell's February 3, 2021 affidavit, purportedly showing Defendants' compliance with Mass. Gen. Laws ch. 244, § 14, was also recorded with the Westfield foreclosure deed. However, Missell's affidavit contained the Notice of Sale dates, news publication (Springfield Republican), foreclosure sale date (January 21, 2021), purchaser (Ngila), and purchase price for the Springfield property (PSOF ¶ 7; Def. Resp. ¶ 7; Dkt. No. 30-7

at 2-3).[8]  An amended Affidavit of Sale with accurate information concerning the Westfield Property was recorded in the Hampden County Registry of Deeds on April 28, 2021 (Dkt. No. 35-3 at 10-12).  Christiana Trust also caused Missell's Post Sale Affidavit Regarding Note to be recorded.  The affidavit certified that Christiana Trust was the assignee of the Westfield Mortgage that was foreclosed and held the Westfield note that was secured by the Westfield Mortgage on the date the Notice of Sale was mailed and published and on the foreclosure date (DASOF ¶ 47; Pl. Resp. ¶ 47; Dkt. No. 35-5 at 13).  Following the foreclosure sale, Plaintiff owed $84,883.33 under the terms of the Westfield Mortgage (DASOF ¶ 49; Pl. Resp. ¶ 49).

On June 1, 2021, representatives of LendingHome, Christiana Trust, and Toorak executed an affidavit under Mass. Gen. Laws ch. 183, § 5B concerning the Westfield property that was substantially similar to the 5B Affidavit for the Springfield property.  The affidavit was recorded in the Hampden County Registry of Deeds on June 14, 2021 (Dkt. No. 35-5 at 25-30).

II.    LEGAL STANDARD

"Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Foregger v. Residential Credit Sols., Inc.,* Civil Action No. 12-11914-FDS, 2013 WL 3208596, at *3 (D. Mass. June 21, 2013) (quoting Fed. R. Civ. P. 56 (a)).  "An issue is genuine for summary judgment purposes when 'a rational factfinder could resolve it in either direction.'"  *Pegasystems Inc. v. Appian Corp.*, Civil Action No. 19-11461-PBS, 2022 WL 4630231, at *5 (D. Mass. Sept. 30, 2022) (quoting *Boudreau v. Lussier*, 901 F.3d 65, 71 (1st Cir. 2018) (cleaned up)).  A fact is material "when it

---

[8] The Notice of Sale that was published in the Westfield News was attached to the Affidavit of Sale (Dkt. No. 30 ¶¶ 9, 10).

has potential of changing a case's outcome." *Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 79 (1st Cir. 2018).  "In general, the moving party may satisfy its initial burden by 'affirmatively produc[ing] evidence that negates an essential element of the non-moving party's claim' or 'point[ing] to evidentiary materials already on file . . . that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" *Pegasystems Inc.,* 2022 WL 4630231, at *5 (alterations in original) (quoting *Carmona v. Toledo,* 215 F.3d 124, 132 (1st Cir. 2000)). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "This requires production of 'evidence that is significantly probative,' *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010) (cleaned up), and not based upon 'conclusory allegations, improbable inferences, and unsupported speculation,' *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)." *Pegasystems Inc.,* 2022 WL 4630231, at *5.  "With respect to each motion for summary judgment, the court 'view[s] the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" *Id.* (alteration in original) (quoting *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995)).

III.   ANALYSIS

A.   Plaintiff's Motion for Summary Judgment

1.   Massachusetts Law of Foreclosure

"Where a mortgage grants a mortgage holder the power of sale, as did . . . the [Springfield and Westfield] mortgages, it includes by reference the power of sale set out in G.L. c. 183, § 21, and further regulated by G.L. ch. 244, §§ 11–17C." *U.S. Bank Nat'l Ass'n v. Ibanez,* 941 N.E.2d 40, 49 (Mass. 2011).  According to the statutory scheme,

> after a mortgagor defaults in the performance of the underlying note, the
> mortgage holder may sell the property at a public auction and convey the property
> to the purchaser in fee simple, "and such sale shall forever bar the mortgagor and
> all persons claiming under him from all right and interest in the mortgaged
> premises, whether at law or in equity."

*Id.* (quoting Mass. Gen. Laws ch. 183, § 21). Due to the "substantial power that the statutory

scheme affords to a mortgage holder to foreclose without immediate judicial oversight,"

Massachusetts law requires that "'one who sells under a power [of sale] must follow strictly its

terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void.'"

*Id.* at 49–50 (alteration in original) (quoting *Moore v. Dick,* 72 N.E. 967, 968 (Mass. 1905)).

"One of the terms of the power of sale that must be strictly adhered to is the restriction on

who is entitled to foreclose." *Id.* at 50. Under Mass. Gen. Laws ch. 183, § 21, "[t]he 'statutory

power of sale' can be exercised by 'the mortgagee or his executors, administrators, successors or

assigns.'" *Id.* (quoting Mass. Gen. Laws. ch. 183, § 21). Similarly, under Mass. Gen. Laws ch.

244, § 14,

> "[t]he mortgagee or person having his estate in the land mortgaged, or a person
> authorized by the power of sale, or the attorney duly authorized by a writing
> under seal, or the legal guardian or conservator of such mortgagee or person
> acting in the name of such mortgagee or person" is empowered to exercise the
> statutory power of sale. Any effort to foreclose by a party lacking "jurisdiction
> and authority" to carry out a foreclosure under these statutes is void.

*Id.* (alteration in original) (quoting Mass. Gen. Laws ch. 244, § 14). Therefore, "only a present

holder of the mortgage is authorized to foreclose on the mortgaged property[.]" *Id.*

"A related statutory requirement that must be strictly adhered to in a foreclosure by

power of sale is the notice requirement articulated in G.L. c. 244, § 14." *Id.* That section

provides that:

> "no sale under such power shall be effectual to foreclose a mortgage, unless,
> previous to such sale," advance notice of the foreclosure sale has been provided to
> the mortgagor, to other interested parties, and by publication in a newspaper

> published in the town where the mortgaged land lies or of general circulation in
> that town.

*Id.* (quoting Mass. Gen. Laws ch. 244, § 14).  The notice of sale must identify the mortgage

holder.  *See id.*  "The key, therefore, 'is that the foreclosing entity must hold the mortgage at the

time of the notice and sale in order accurately to identify itself as the present holder in the notice

and in order to have the authority to foreclose under the power of sale . . . .'"  *Akar v. Fed. Nat.*

*Mortg. Ass'n,* 843 F. Supp. 2d 154, 167 (D. Mass. 2012) (quoting *Ibanez,* 941 N.E.2d at 53).

"[A] foreclosure carried out by an entity that does not hold the power of sale is void."  *Juárez v.*

*Select Portfolio Servicing, Inc.,* 708 F.3d 269, 278 (1st Cir. 2013) (citing *Ibanez*, 941 N.E.2d at

50, 53).

### 2.    Christiana Trust's Right to Foreclose

"Before initiating a foreclosure . . . the mortgagee must hold the mortgage pursuant to a

valid, written assignment and be able to provide proof of such."  *Deutsche Bank Nat'l Tr. Co. as*

*Tr. of Ameriquest Mortg. Secs., Inc. Asset Backed Pass Through Certificates, Series 2005-R3 v.*

*Grandberry,* 388 F. Supp. 3d 65, 69 (D. Mass. 2019) (citing *Ibanez,* 941 N.E.2d at 52-53); *see*

Mass. Gen. Laws ch. 244, § 14.  Thus, if LendingHome's 2018 blank assignments were valid,

LendingHome no longer held the mortgages when it assigned them to Christiana Trust in 2019

and the assignments to Christiana Trust were void.  If, on the other hand, the 2018 blank

assignments were void, then LendingHome's assignments to Christiana Trust were valid.  *See*

*Culhane v. Aurora Loan Servs. of Neb.,* 708 F.3d 282, 291 (1st Cir. 2013); *Butler v. Deutsche*

*Bank Tr. Co. Americas,* Civil Action No. 12-10337-DPW, 2012 WL 3518560, at *7 (D. Mass.

Aug. 14, 2012) ("Where a 'grantor has nothing to convey. . . [t]he purported conveyance is a

nullity, notwithstanding the parties' intent.'") (alterations in original) (quoting *Bongaards v.*

*Millen,* 793 N.E.2d 335, 339 (Mass. 2003)); *Midfirst Bank v. Love,* No. 13-P-1071, 2014 WL

942323, at *1 (Mass. App. Ct. Mar. 12, 2014) (unpublished) ("By reason of the prior assignment from MERS to First Horizon, at the time of the assignment from MERS to the plaintiff MERS had no interest in the mortgage to convey.").

Defendants contend that the assignments to Toorak were void because: (1) LendingHome executed the assignments in blank; (2) LendingHome did not intend to deliver and have the assignments to Toorak recorded at the time of execution because the terms of a private funding agreement between LendingHome and Toorak provided that they would be delivered and recorded only if LendingHome defaulted under the terms of the agreement and LendingHome did not default; and (3) the assignments were not supported by consideration (Dkt. No. 35-5 at 44-45 ¶¶ 40-47; 54-55 ¶¶ 5-14).  Because the court concludes that the first and second contentions must be resolved in Defendants' favor, it does not reach the third.

a.      The blank assignments.

"Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor."  *Ibanez,* 941 N.E.2d at 51 (citing Mass. Gen. Laws ch. 183, § 3; *Saint Patrick's Religious Educ. & Charitable Ass'n v. Hale*, 116 N.E. 407, 408 (Mass. 1917)); *see also Linsky v. Exch. Tr. Co.*, 156 N.E. 689, 690 (Mass. 1927) ("An agreement to give or assign a mortgage is an agreement to convey an interest in land and, to be enforceable, must be in writing.") (citing Mass. Gen. Laws ch. 259, § 1(4)).  The Massachusetts Supreme Judicial Court (SJC) stated in *Ibanez* that the Commonwealth's courts have "long held that a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; we do not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment."  *Ibanez*, 941 N.E.2d at 53 (citing *Flavin v. Morrissey*, 97 N.E.2d 643, 644 (Mass. 1951); *Macurda v. Fuller*, 114 N.E. 366, 366-67 (Mass. 1916); Mass. Gen.

Laws ch. 183, § 3).  There is no dispute that LendingHome's assignments of the mortgages on the Springfield and Westfield properties that were turned over to Toorak, although they were in writing and executed by representatives of LendingHome before a notary public, were issued in blank, that is, the assignments did not specify the name of the assignee when the assignments were executed before a notary public (Dkt. No. 35-5 at 15-18).

Plaintiff's response to the SJC's statement that an assignment in blank is void is to assert that, in the *Ibanez* decision, the SJC treated as valid an assignment issued in blank by Rose Mortgage, Inc. (Rose) where the blank space in the assignment was at some point stamped with the name of Option One Mortgage Corporation (Option One).  Plaintiff argues that here too, the court should find that LendingHome's blank assignments of the Springfield and Westfield Mortgages, to which the name of Toorak was subsequently added, were valid.  Plaintiff's argument relies on a misreading of the *Ibanez* decision.

In *Ibanez*, Antonio Ibanez obtained a $103,500 loan to buy property in Springfield.  He secured the loan with a mortgage in favor of Rose.  Several days later, Rose executed an assignment of the Ibanez mortgage in blank.  This blank assignment was, at some point, stamped with the name Option One Mortgage Corporation as the assignee and the purported assignment was recorded.  *Id.* at 46.  Among his other bases for challenging the foreclosure on his property, Ibanez challenged the validity of the Rose assignment to Option One on the basis that the assignment was executed in blank.  The SJC explained that "[b]ecause of the failure of [the foreclosing entity] to document any preforeclosure sale assignment or chain of assignments by which it obtained the Ibanez mortgage from Option One, *it [w]as unnecessary [for the SJC] to address the validity of the assignment from Rose Mortgage to Option One*."  *Id.* at 52 n.19 (emphasis added).  Thus, this court is left with the SJC's unequivocal statement that a mortgage

assignment that does not identify the assignee when it is executed is void and conveys nothing. *Id.* at 53.

To the extent Plaintiff contends that the later addition of Toorak's name to the blank assignments renders the assignments valid, Massachusetts law, while perhaps sparse, does not support that contention, particularly when, as in this case, the undisputed evidence is to the effect that the assignee *and* the assignor agree that the assignments were not intended to be effective when they were executed.  While not binding on this court, the appellate division of the Massachusetts District Court Division, Southern District, discussed the possible effect of the post-execution alteration of an assignment in blank in *Clearvue Opportunity XV, LLC v. Sheehan*, 2015 Mass. App. Div. 125, 2015 WL 5098658 (Aug. 24, 2015).  In that case, the mortgagee challenging a foreclosure argued that one of the assignments in the foreclosing entity's chain of title had been issued in blank and was, therefore, void.  *See id.* at *7.  The court agreed that if the assignment had been executed in blank, then the subsequent addition of an assignee would be "an improperly altered version of blank assignment" and its recording would be "an improper effort to resurrect a void document . . . by altering it after execution."  *Id.*  The court rejected the debtor's argument on the ground that the only evidence the debtor produced at trial to support his allegation was an unauthenticated copy of a blank assignment.  *See id.  Cf. Select Portfolio Servicing, Inc. v. Needel*, No. 14-P-1275, 2015 WL 7357635, at *1 (Mass. App. Ct. Nov. 19, 2015) (unpublished) ("In his decision, the Land Court judge noted that if the assignment [of mortgage] had been executed in blank, as the [plaintiffs] contended it had, it would be 'invalid.'").[9]

---

[9] The history of the *Needel* case is exceptionally complicated and is not relevant to the point for which the case is cited.  Accordingly, the court has not set it out here.

The court finds further support for its conclusion in the case of *In re Kursk*, 409 B.R. 259 (Bankr. D. Mass. 2009), in which the debtor was not identified as a borrower when the mortgage was executed before a notary although she had signed the mortgage on the last page of the document when it was executed in a capacity that was not apparent from the face of the document.  After the fact, the lender caused the debtor's name to be added to the first page of the mortgage, identifying her as a borrower.  *See id.* at 264.  Although there was no dispute that the debtor had signed the mortgage in some capacity on the last page and initialed each page when the mortgage was executed, the *Kursk* court held that "the alteration of the mortgage [to add the debtor's name as borrower] . . . was material and void[ed] the mortgage as to [the debtor's] interest in the property."  *Id.* at 266-67.  The court rested its holding in part on the public policy consideration that documents that constitute titles to real estate, as does an assignment of mortgage, "should not be held hostage to disputes over the parties' intention."  *Id.* at 267 (citing *Burns v. Lynde*, 88 Mass. (6 Allen) 305, 312 (1863) ("[I]t is highly useful that a class of instruments should exist, to which persons may resort with a feeling of confidence that they shall not be binding till they are formally executed and that when thus executed they shall not be liable to be varied or controlled by parol evidence. . . . The convenience which men might occasionally find in leaving blanks in sealed instruments to be filled after delivery, would be but a slight compensation for the evils which would follow the abrogation of the ancient rule of the common law.")).

In summary, as Defendants contend, the assignments executed in blank that LendingHome turned over to Toorak were void and the later addition of Toorak's name to the blank assignments could not make the assignments effective.

           b.      Delivery of the blank assignments

Furthermore, on this record, there is no dispute that LendingHome did not intend to assign its interest in the Springfield and Westfield Mortgages when it turned over the assignments in blank to Toorak.  "To constitute a delivery of an assignment of mortgage to an assignee, it is not enough that the assignment passed into his hands; it must be shown that the assignor delivered it to him with the intention of passing the property in the debt and mortgage to him." *Shurtleff v. Francis,* 118 Mass. 154, 154 (1875).  *See also Frankowich v. Szczuka,* 71 N.E.2d 761, 762 (Mass. 1947) ("The factors essential to delivery [of a deed] are that the grantor intend the deed to effect a present transfer of the property and that the grantee by his conduct assent to the conveyance.").  Here, the affidavits of Missell of LendingHome and Tyde of Toorak show an agreement between the assignee – LendingHome – and the assignor – Toorak – that Toorak was not authorized to fill in its name as the assignee, that Toorak's completions of the assignments were the result of an "inadvertent oversight," and that the assignments "were never intended to be delivered to Toorak and recorded unless and until [LendingHome] defaulted under the terms of the private funding agreement, which did not occur" (Dkt. No. 35-5 at 38-46, 54-57).

Plaintiff's reliance on LendingHome's mortgage servicing notes from January 2020 to June 2021 to show otherwise is unavailing.  Those notes show no more than that LendingHome employees referred to Toorak as an investor and sought Toorak's approval in advance of decisions affecting the value of LendingHome assets (Dkt. No. 41-3 at 3-4, 6, 9, 11-12, 14).  That LendingHome employees sought Toorak's approval for transactions related to LendingHome's assets cannot transform Toorak into a mortgagee in the absence of a valid assignment of the mortgages to Toorak.  The notes describe the assignments in blank as having been "drafted at origination" and refer to Toorak's recording of the assignments as an error (Dkt.

No. 41-3 at 19).  Nowhere in the servicing notes does LendingHome refer to Toorak as a

mortgagee or state that LendingHome intended to transfer its interest in the Springfield and

Westfield mortgages to Toorak at the time of origination.  There is nothing in the record to

contradict the representations in the Missell and Tyde affidavits.  Thus, the evidence, even

viewed in the light most favorable to the plaintiff, fails to show that LendingHome turned over

the blank assignments to Toorak with the intention of passing LendingHome's interest in the

mortgages to Toorak at that time.  *See Shurtleff,* 118 Mass. at 154.[10]

     **c.**  The Notices of Sale

Under Massachusetts law, when a foreclosing mortgagee relies on the power of sale in a

mortgage, "no sale under such power shall be effectual to foreclose a mortgage unless, previous

to such sale, notice of the sale has been published once in each of 3 successive weeks . . . in a

newspaper published in the city or town where the land lies . . . ."  Mass. Gen. Laws ch. 244, §

14.  Section 14 of Chapter 244 further provides that

> in the event a mortgagee holds a mortgage pursuant to an assignment, no notice
> under this section shall be valid unless (i) at the time such notice is mailed, an
> assignment, or a chain of assignments, evidencing the assignment of the mortgage
> to the foreclosing mortgagee has been duly recorded in the registry of deeds for
> the county or district where the land lies and (ii) the recording information for all
> recorded assignments is referenced in the notice of sale required in this section.

---

[10] Because the court holds that the blank assignments were void and ineffective and did not
invalidate the mortgage assignments to Christiana Trust, the court need not reach Plaintiff's
contention that Defendants' affidavits recorded pursuant to Mass. Gen. Laws ch. 183, § 5B were
ineffective to cure the defects in the chains of title that Plaintiff claims existed when Defendants
foreclosed.  It follows from the court's conclusions about the blank assignments that the 5B
Affidavits "are limited to facts that explain what actually occurred, and are not inconsistent with
the substantive facts contained in the original document[s]."  *Bank of Am. N.A. v. Casey,* 52
N.E.3d 1030, 1039 (Mass. 2016).

*Id.*  It is undisputed that the Defendants' notices of sale did not include the recording information for the assignments Toorak caused to be recorded on November 30, 2020.  Plaintiff contends that Section 14 required that the assignments recorded by Toorak be referenced in the third notices for the sales of the Springfield and Westfield properties and that these claimed violations of Section 14's requirements caused the notices to invalid and the subsequent sales to be ineffectual (Dkt. No. 29 at 15-16).   Again, the court disagrees.

Defendants were not required to include the assignments recorded by Toorak in their notices of sale because those assignments were issued in blank and were void.  It is well-settled that "there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect."  *Bevilacqua v. Rodriguez*, 955 N.E.2d 884, 892 (Mass. 2011) (citing *S & H Petroleum Corp. v. Register of Deeds for the Cty. of Bristol*, 707 N.E.2d 843, 845 (Mass. App. Ct. 1999)).  A recorded assignment that is void is not part of the chain of title to property and is, therefore, properly excluded from a statutory notice of sale. *Cf. O'Brien v. Wilmington Tr. Nat'l Assoc.*, 506 F. Supp. 82, 99-100 (D. Mass. 2020) (the court rejected the plaintiff's claim that the omission from a certificate of sale of three void assignments of mortgage that had been recorded invalidated the certificate of sale).

The undisputed facts establish that LendingHome properly assigned the Springfield and Westfield mortgages to Christiana Trust, which therefore had standing to foreclose on the Springfield and Westfield properties.  For the reasons set forth above, Plaintiff's motion for summary judgment is denied.

II.      Defendants' Summary Judgment Motion

A.      Slander of Title (Counterclaim Count I)

"Slander of title is a tort action for damage to real property resulting from '"interference with title to real estate by falsehoods which, although not personally defamatory, cause the plaintiff pecuniary loss through interference with . . . dominion over his property."'" *CMI Assocs., LLC v. Reg'l Fin. Co., LLC*, 775 F. Supp. 2d 281, 289 (D. Mass. 2011) (quoting *Salloom v. Lister*, No. 99-1063, 2004 WL 1836027 at *2 (Mass. Super. Ct. Aug. 10, 2004)).

> In Massachusetts, a person is liable for slander of title, *i.e.,* "injurious falsehood," if he or she (a) publishes a false statement; (b) that harms the interests of another; (c) with the intent to harm the interests of another or "either recognizes or should recognize that it is likely to do so;" and (d) knows that the statement is false "or acts in reckless disregard of its truth or falsity." *Dulgarian v. Stone,* 652 N.E.2d 603, 609 (Mass. 1995) (quoting Restatement (Second) of Torts § 623A).

*Id*.

Defendants argue that Plaintiff is liable for slander of title because it recorded invalid notices of leases for the Springfield and Westfield Properties after Christiana Trust notified Plaintiff that it intended to foreclose and pursue deficiency judgments.  There is no dispute that Plaintiff defaulted under the terms of the Springfield and Westfield Mortgages by failing to make payments on the mortgages and that Christiana Trust scheduled the foreclosure sales of the Springfield and Westfield Properties after Plaintiff failed timely to cure its defaults.  Plaintiff had the Notices of Leases for the Springfield and Westfield Properties recorded in the Hampden County Registry of Deeds, indicating that, on December 1, 2020, Plaintiff had signed six-year leases with options to renew with Cia Recovery Services, LLC (DASOF ¶¶ 16, 41; Pl. Resp. ¶¶ 16, 41).  The leases were facially invalid because they were prohibited by the terms of the mortgages on the properties.

The court assumes for purposes of this decision that Plaintiff recorded the notices to impede Defendants' efforts to sell the Springfield and Westfield Properties.  Nonetheless, title to property is different from a leasehold, which is a possessory interest.  *Cf. Pico Vidal v. Ruiz*

*Alvarado*, 377 B.R. 788, 794 (Bankr. D.P.R. 2007) (noting that the bankruptcy code enumerates the types of property interests that are included in the bankruptcy estate, including a leasehold interest, which is a possessory interest, as distinguished from a title to property, and further noting that property interests are defined by state law).  "A cloud on title 'is the semblance of a title or interest which, although in fact unfounded, nevertheless appears to be valid and casts a doubt on the validity of the record title.'"  *CMI Assocs., LLC*, 775 F. Supp. 2d at 290 (quoting 74 C.J.S. *Quieting Title* § 12).  Defendants have not pointed to any Massachusetts case – or indeed any case from any jurisdiction – holding that a six-year lease, as a possessory interest, may interfere with, or cloud, an established title to property sufficiently to constitute slander of title (Dkt. No 33 at 13-16).  "Parties who remove their cases from state court should not expect to persuade the federal court to make new state law."  *Doe v. Ground Round, Inc.*, No. CIV. 00-76-B-H, 2000 WL 761018, at *1 (D. Me. May 26, 2000) (citing *Jordan v. Hawker Dayton Corp.*, 62 F.3d 29, 32 (1st Cir. 1995); *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1349 (1st Cir. 1988)).  In particular, "[r]eal property rights are an area of recognized state court expertise," *In re Desmarais*, 33 B.R. 27, 29 (Bankr. D. Me. 1983), in which a federal trial court should tread cautiously.

Moreover, as Plaintiff contends, Defendants have failed to produce sufficient evidence to show that the Notices of Leases were "a 'direct and proximate cause' of [any injuries to Defendants] . . . ."  *CMI Assocs., LLC*, 775 F. Supp. 2d at 291.  Without that showing, Defendants cannot recover damages and are not entitled to summary judgment.  *Id.*  Defendants contend that "the recording of the Notices of Leases was harmful to the Defendants' interests in the [Springfield and Westfield] [p]roperties. . . . Defendants have incurred legal fees and costs associated with investigating the potential impact that the Notices of Leases may have on

Christiana Trust's rights in the . . . [p]roperties and developing strategy with respect to its claim for Slander of Title" (Dkt. No. 44 at 7). There is no record evidence to support these vague and general assertions. The Westfield sale occurred on December 22, 2020, eleven days after the notices were recorded, and the Springfield sale occurred about one month later, on January 21, 2021 (DASOF ¶¶ 20, 45; Pl Resp. ¶¶ 20, 45). It appears undisputed that an impending snowstorm and a potential short sale caused the sales to be postponed from the initial sale date of December 17, 2020. The Notices of Lease were "at worst, a fly speck on the [Springfield and Westfield] property title[s] that could easily have been resolved by a competent real estate attorney." *CMI Assocs., LLC*, 775 F. Supp. 2d at 291.

For the foregoing reasons, the court denies so much of Defendants' summary judgment motion as seeks judgment on the slander of title claim in Count I of Defendants' counterclaim complaint.[11]

B.     Declaratory Judgment (Counterclaim Counts II & III)

Defendants are entitled to a declaratory judgment that Christiana Trust had standing to foreclose on the Springfield and Westfield Properties and that the foreclosure sales complied with the requirements for exercising the power of sale in the mortgages and the requirements of Massachusetts law.

---

[11] Plaintiff requested in summary fashion that the court dismiss Defendants' counterclaims (Dkt. No. 36 at 2, 16), but Plaintiff limited its cross-motion for summary judgment to seeking judgment in its favor on its claims against Defendants and premised its request for dismissal on its arguments about Christiana Trust's lack of standing to foreclose and Defendants' alleged failure to comply with Massachusetts law governing a lender's exercise of the statutory power of sale (Dkt. No. 28 at 1-2). While "[a] district court can enter summary judgment even though none of the parties asks for it[,]" *Sanchez v. Triple-S Mgmt. Corp.*, 492 F.3d 1, 7 (1st Cir. 2007), the First Circuit has noted the "potential unfairness lurking in this approach[.]" *Id.* The court declines to enter judgment on this claim in Plaintiff's favor in the absence of a motion by Plaintiff without hearing further from the parties.

1.   <u>Christiana Trust had standing to foreclose</u>

An entity that holds a mortgage and that holds or acts on behalf of an entity holding the note secured by the mortgage is entitled to foreclose by sale pursuant to a power of sale in a mortgage.  *See Eaton v. Fed. Nat'l Mortg. Ass'n,* 969 N.E.2d 1118, 1121, 1131 n.26 (Mass. 2012); *see also Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 156 (1st Cir. 2017).  When, as was the case here, the foreclosing party did not originate the mortgage, it must show that it was assigned the mortgage "by a party that itself held the mortgage." *Ibanez*, 941 N.E.2d at 53.  For the reasons set forth above, the mortgage assignments from LendingHome to Christiana Trust were valid.  There is no dispute that Christiana Trust had physical possession of the notes.  *See Sullivan v. Kondaur Capital Corp.*, 7 N.E.3d 1113, 1119 (Mass. App. Ct. 2014) (the foreclosing party must "be able to demonstrate either that it holds the underlying note or acts as an authorized agent for the note holder.").  Christiana Trust had standing to carry out the foreclosure sales for the Springfield and Westfield Properties because it held the mortgages and the notes on the dates of the sales.

2.    <u>Notices of Default</u>

"[T]o effectuate a valid foreclosure sale pursuant to a power of sale, the mortgagee must 'first comply[ ] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale.'" *Pinti v. Emigrant Mortg. Co.*, 33 N.E.3d 1213, 1218 (Mass. 2015) (second alteration in original) (quoting Mass. Gen. Laws ch. 183, § 21).  Pointing to Paragraph 7 of the promissory notes and Section 4.3 of the mortgages, Plaintiff argues that the foreclosure sales were void because Christiana Trust mailed the notices of default to 47 Harvard Street, Suite 200, Worcester, MA or 47 Harvard Street, Suite 220, Worcester, MA, which were not the correct addresses (Dkt. No. 36 at 5 (# 11), at 10 (# 34)).

As to the promissory notes, Paragraph 7 stated that notices should be addressed to Plaintiff at 47 Harvard Street, Worcester, MA (*e.g.,* Dkt. No. 35-1 at 8 ¶ 7).  However, Paragraph 5 of the notes contained Plaintiff's waiver of "all . . . notices and demands in connection with . . . default under and enforcement of [the note]" (*e.g.,* Dkt. No. 35-1 at 8 ¶ 5).  Section 4.3(a) of the mortgages required Christiana Trust to deliver a "written notice of default and election to [sell] . . ." to Plaintiff (*e.g.,* Dkt. No. 35-1 at 31).  Section 6.12 required that all notices and demands by Christiana Trust to Plaintiff be addressed to Plaintiff at the "email address set forth in this Mortgage" – there was none, nor was there delivery by email – or by mail "addressed to Borrower at the address set forth in the Mortgage" (*e.g.*, Dkt. No. 35-1 at 37).  The address set forth in the mortgages was "47 Harvard St., Worcester, MA 01609" (*e.g.*, Dkt. No. 35-1 at 18).  Section 6.31.3(c) of each of the mortgages, however, which was separately endorsed by Plaintiff, deleted Section 4.3 in its entirety and replaced it with the following:  "Power of Sale.  Lender shall have the right to cause the Property to be sold under the power of sale contained in this Mortgage in any manner permitted by applicable law" (*e.g.,* Dkt. No. 35-1 at 49).  Because Defendants were not required to comply with the deleted notice provisions in the mortgages to exercise the statutory power of sale and were only required to comply with the applicable provisions of Massachusetts law, any failure to comply with the notice provisions in the mortgages did not invalidate the foreclosure sales.  *Compare Pinti,* 33 N.E.3d at 1221 (the terms of the mortgage required the mortgagee to send a notice of default as a prerequisite to exercising the mortgage's power of sale and "specifically prescribe[d] the contents of the notice of default.").

      3.     <u>Mass. Gen. Laws ch. 244, § 14</u>

The mortgages Plaintiff executed provided that, for the mortgagee (or its assignee) to exercise the power of sale, it needed to comply with the provisions of Massachusetts law, Mass. Gen. Laws ch. 183, § 21 and Mass. Gen. Laws ch. 244, §§ 11-17C, that govern foreclosure sales (*e.g.,* Dkt. No. 35-1 at 48-49, §§ 6.31.2, 6.31.3(c)).  *See, e.g., U.S. Bank Nat'l Ass'n v. Schumacher*, 5 N.E.3d 882, 888 (Mass. 2014).

When Plaintiff did not cure the defaults by the dates specified in the notices of default and elections to sell, Christiana Trust set a sale date of December 17, 2020 (DASOF ¶¶ 12, 36). Christiana Trust complied with Mass. Gen. Laws ch. 244, § 14 by publishing notices of sale in the Springfield Republican (Springfield Property) on November 17, November 24, and December 1, 2020 and in the Westfield News (Westfield Property) on November 18, November 25, and December 2, 2020, stating that the mortgages were assigned to Christiana Trust. Christiana Trust caused the notices of sale to be sent to Plaintiff by registered mail at least 14 days prior to the sale dates (DASOF ¶¶ 13, 14, 37, 38; Dkt. No. 35-1 at 81; Dkt. No. 35-4 at 4; Dkt. No. 35-5 at 48-49 ¶ 7).

Plaintiff claims that Christiana Trust's Notice of Mortgagee's Sale of Real Estate for the Springfield Property did not comply with Mass. Gen. Laws ch. 244, § 14 because it erroneously listed the dates of publication of the notices of sale for the Westfield Property in the notice that it provided to Plaintiff (Dkt. No. 36 # 13; Dkt. No. 40 ¶ 4; Dkt. No. 40-2).  The court disagrees. Section 14 of Chapter 244 requires, as to publication related to foreclosure by power of sale, that:

> no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks, the first publication of which shall be not less than 21 days before the day of sale, in a newspaper published in the city or town where the land lies . . . and notice of the sale has been sent by registered mail to the owner or owners of record of the equity of redemption as of 30 days prior to the date of sale, said notices to be mailed by registered mail at least 14 days prior to the date of sale to said owner or owners . . . to the last address of the owner or owners of

the equity of redemption appearing on the records of the holder of the mortgage . .
. .

While Plaintiff asserts that there are disputes as to publication, it does not, in fact, point to any materials in the record calling into dispute the fact that, as to the Springfield Property, Christiana Trust published the required notices of sale in the Republican, a Springfield newspaper, on November 17, November 24, and December 1, 2020 (DASOF ¶ 13; Dkt. No. 35-1 at 81; Dkt. No. 35-5 at 48-49 ¶ 7), the first publication being more than 21 days prior to the January 21, 2021 foreclosure sale of the Springfield Property.  The same is true as to the Westfield Property: the materials in the record raise no genuine dispute as to the fact that Christiana Trust published the required notices of sale in the Westfield News on November 18, November 25, and December 2, 2020, the first publication being more than 21 days before the December 22, 2020 foreclosure sale of the Westfield Property (Dkt. No. 35-4 at 4).  Errors, if any, in the subsequently recorded affidavits of sale, are not evidence of noncompliance with the mandatory publication requirements of Mass. Gen. Laws ch. 244, § 14 and would not invalidate the foreclosure sales.

The provisions of the mortgages specific to Massachusetts provided that the lender could exercise the power of sale in the mortgages in compliance with applicable law, and Mass. Gen. Laws ch. 244, § 14 requires advance notice of a foreclosure sale to the owner or owners of record of the equity of redemption in the properties on which the lender intends to foreclose.  *See* Mass. Gen. Laws ch. 244, § 14.  The undisputed evidence shows that Defendants complied with applicable law and that Plaintiff received notice of the foreclosure sales.  The notices of sale identified the book and page where the mortgages from LendingHome to Plaintiff were recorded in the Hampden County Registry of Deeds, the book and page where the assignments to Christiana Trust were recorded, the date and time of the foreclosure sales, a legal description of

the properties, and the terms of the sales (Dkt. No. 35-2 at 3-4, 25-26, 47-48; Dkt. No. 35-4 at 8-9, 24-25, 40-41).  The notices were sent by regular and certified mail to the principal and manager of Southbridge RE, LLC, which was the owner of record, at the address of the Westfield Property; the address of Southbridge RE, LLC's resident agent/resident office on file with the Massachusetts Secretary of State at the relevant time; and the address of Southbridge RE, LLC as stated in the mortgages (Dkt. No. 35-1 at 18; Dkt. No. 35-2 at 23, 45, 67; Dkt. No. 35-3 at 25; Dkt. No. 35-4 at 22, 38, 54; Dkt. No. 35-5 at 58-64; Dkt. No. 39 ¶ 2).  *See Burke v. Sun Am., Inc.*, No. CV984842, 2000 WL 1273412, at *6 (Mass. Super. Ct. Apr. 25, 2000) ("it is reasonable to interpret the statute to require the mortgagee . . . to send the prescribed notice to an address that the mortgagee has knowledge is a current address.").  Moreover, the affidavit of the Southbridge RE, LLC's principal and manager, Hunter Foote, indicates that he had actual notice of the sale dates (Dkt. No. 39 ¶¶ 5, 6).  *See Hull v. Attleboro Sav. Bank,* 596 N.E.2d 358, 362 (Mass. App. Ct. 1992) (The purpose of G.L. c. 244, § 14, was "fully achieved as to the plaintiff because he had actual notice . . . and the bank had proof of it.").  Accordingly, the court finds that Defendants complied with the requirements of Mass. Gen. Laws ch. 244, § 14 as to the notices of the sales.

### 4.   The Westfield Property Affidavit of Sale

Plaintiff's contention that Christiana Trust failed to comply with Mass. Gen. Laws ch. 244, § 15, which governs affidavits of sale, ignores the amended affidavit of sale that Christiana Trust recorded after the Westfield Property foreclosure sale (Dkt. No. 36 at 11 # 37).  Section 15(b) provides, in pertinent part, that:

> The person selling or the attorney duly authorized by a writing . . . shall, after the sale, cause a copy of the notice and an affidavit fully and particularly stating the person's acts . . . which shall be recorded in the registry of deeds for the county or district in which the land lies . . . .  If the affidavit shows that the requirements of

the power of sale and the law have been complied with in all respects, the affidavit or a certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed.

The affidavit of foreclosure sale is intended "to be recorded with the foreclosure deed and 'secure the preservation of evidence that the conditions of the power of sale named in the deed have been complied with.'" *Fed. Nat'l Mortg. Ass'n v. Hendricks,* 977 N.E.2d 552, 558 (Mass. 2012) (citation omitted).  "[A] deficient affidavit of sale does not void a foreclosure sale or the right to possession." *Id.* at 555.

It is undisputed that the first affidavit of sale, which Christiana Trust executed on February 3, 2021 and recorded in the Hampden County Registry of Deeds on March 23, 2021 along with the Westfield foreclosure deed, contained errors (Dkt. No. 35-5 at 4-9).  Rather than including the required information about the Westfield foreclosure sale, it contained information about the sale of the Springfield Property (Dkt. No. 35-5 at 7).  An amended affidavit of sale for the Westfield Property was recorded on April 28, 2021 (Dkt. No. 35-5 at 10-12).  That amended affidavit substantially tracked the language of Mass. Gen. Laws ch. 244, § 15(b) and Form 12 of the Appendix to Mass. Gen. Laws ch. 183 by referencing the previously recorded foreclosure deed that conveyed the Westfield Property to Christiana Trust, incorporating an attached copy of the notice of sale that appeared in the Westfield News for three successive weeks, certifying compliance "in all respects" with the notice requirements of Mass. Gen. Laws ch. 244, § 14, and describing the foreclosure sale of the Westfield Property (Dkt. No. 35-5 at 10).  *See Deutsche Bank Nat'l Tr. Co. v. Gabriel,* 965 N.E.2d 875, 879 & nn.14 & 15 (Mass. App. Ct. 2012) (Form 12 complies with the requirements of Mass. Gen. Laws ch. 244, § 15(b)).

The statement in the amended affidavit that the notice of sale was published on November 8, 2020 was a typographical error.  However, a copy of the actual notice of sale that

appeared in the Westfield News with the correct publication dates was appended to the amended affidavit (Dkt. No. 35-5 at 10, 12), showing publication in compliance with the requirements of Mass. Gen. Laws ch. 244, § 14.  The typographical error in the amended affidavit of sale was not material and did not affect the validity of the foreclosure sale.  *See Hammond v. JPMC Specialty Mortg. LLC*, Civil Action No. 10-11121-DPW, 2011 WL 1463632, at *12 (D. Mass. Apr. 15, 2011) ("Inaccuracies by JPMC in the affidavit of sale and notice of foreclosure filed with the registry of deeds on March 12, 2009, are not material.  The recorded documents function as evidence of the sale only, *see* Mass. Gen. Laws ch. 244, § 15 . . . . The remedy for an error in an affidavit of sale is not invalidation of that sale, but rather a petition to file an amended affidavit curing the defect."); *Lewis v. Jackson,* 43 N.E. 206, 206 (Mass. 1896) (a grammatical error in the affidavit of sale was not a material error that affected the meaning of the affidavit).

Accordingly, Defendants are entitled to declaratory judgments that they had standing to sell the Springfield and Westfield Properties and that the foreclosure sales complied with Massachusetts law.  So much of Defendants' summary judgment motion as seeks judgment on Counts II (Springfield Property) and III (Westfield Property) of their counterclaim complaint is allowed.

C.    Breach of Contract (Counterclaim Count IV) and Deficiency Judgments (Counterclaim Count VII)

"In order to state a viable breach of contract claim under Massachusetts law, [Christiana Trust] must prove that a valid, binding contract existed, the [Plaintiff] breached the terms of the contract, and [Christiana Trust] sustained damages as a result of the breach."  *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (citation omitted).  Plaintiff's opposition to this claim appears to be limited to its assertion that Christiana Trust did not hold the mortgages at the time of the foreclosure sale.  Plaintiff does not dispute that it executed the

Springfield and Westfield Mortgages that secured the Springfield and Westfield Notes.  Further, there is no dispute that Plaintiff defaulted on its contractual obligations or that Christiana Trust sustained damages in the amounts of the deficiencies in the proceeds of the foreclosure sales. Defendants have shown the elements of the breach of contract claims by undisputed facts and they are entitled to judgment on these claims.  *See Klevisha v. Provident Funding Assocs. L.P.,* 167 F. Supp. 3d 250, 255 (D. Mass. 2016).

As to Defendants' deficiency claims, "[t]he notice mandated by Mass. Gen. L[aws ch.] 244, § 17B 'has been described as "a condition precedent" to a deficiency action, having the practical effect . . . of treating a foreclosure sale as a complete discharge of the mortgage debt, thwarting a postforeclosure deficiency judgment, absent statutory notice of intent to pursue a deficiency.'" *Id.* at 256 (third alteration in original) (quoting *Framingham Sav. Bank v. Turk*, 664 N.E.2d 472, 474 (Mass. App. Ct. 1996)).  *See also Galvin*, 852 F.3d at 167 (predicting that the SJC would require strict compliance with Mass. Gen. Laws ch. 244, § 17B).

Defendants complied with Mass. Gen. Laws ch. 244, § 17B by causing notices of intent to foreclose to be mailed to Plaintiff not less than 21 days before the date of the foreclosure sales and warning Plaintiff that it was liable for the deficiencies (DASOF ¶¶ 14, 38; Pl. Resp. ¶¶ 14, 38).  On November 20, 2020, Defendants' attorneys executed an affidavit stating that the notices of intent to foreclose and pursue deficiency and the notice of sale for the Westfield Property were mailed to Plaintiff (DASOF ¶ 39; Pl. Resp. ¶ 39).  The foreclosure sale occurred more than twenty-one days later, on December 22, 2020 (DASOF ¶ 48; Pl. Resp. ¶ 48).  A similar affidavit was executed for the Springfield Property on November 23, 2020 (DASOF ¶ 15; Pl. Resp. ¶ 15). The foreclosure sale occurred more than twenty-one days thereafter, on January 21, 2021

(DASOF ¶ 20; Pl. Resp. ¶ 20).  Defendants satisfied the Section 17B prerequisites for seeking deficiency judgments.

"It has become elementary by repeated decisions that a mortgagee attempting to execute a power of sale contained in a mortgage must exercise good faith and reasonable diligence to protect the interests of the mortgagor or of the one holding title to the equity of redemption." *Krassin v. Moskowitz*, 175 N.E. 269, 269 (Mass. 1931); *see also Prop. Acquisition Grp., LLC v. Ivester*, 122 N.E.3d 10, 15-16 (Mass. App. Ct. 2019) (same).  Plaintiff has the burden of proving that Defendants "failed to exercise good faith and reasonable diligence to protect the interests of the mortgagor[]." *Prop. Acquisition Grp., LLC,* 122 N.E.3d at 16 (citing *West Roxbury Coop. Bank v. Bowser*, 87 N.E.2d 113, 115 (Mass. 1949)).  In its opposition to Defendants' summary judgment motion, Plaintiff has not challenged the commercial reasonableness of the foreclosure sales.  Accordingly, the court finds that there is no genuine dispute of material fact that Defendants exercised good faith and reasonable diligence in conducting the foreclosure sales and accepts their deficiency calculations.

As to the Westfield Property, Plaintiff owed principal, interest, taxes, insurance, and advances totaling $316,685.30, an amount reduced by the foreclosure price of $231,801.97, leaving a deficiency of $84,883.33 (DASOF ¶ 49; Pl. Resp. ¶ 49).  As to the Springfield Property, Plaintiff owed principal, interest, taxes, insurance, and advances totaling $266,811.10. While Ruby Realty agreed to purchase the property at foreclosure for $140,900.00, the sale has not closed (DASOF ¶¶ 23-25; Pl. Resp. ¶¶ 23-25).   Defendants nonetheless seek a deficiency judgment based on Ruby Realty's agreement to purchase and Plaintiff has not challenged the deficiency claim on the basis that the sale of the Springfield Property has not closed.  Based on the agreed-upon sale price, Plaintiff owes Christiana Trust $125,911.10 as a deficiency payment

on the Springfield Property.  The combined deficiency amounts total $210,794.43 (Dkt. No. 33 at 17-18).

Defendants seek to recover legal fees and costs associated with this action (Dkt. No. 33 at 17, 18).  The Springfield and Westfield Notes provide broadly that a defaulting borrower will be liable for legal fees and costs, including foreclosure costs and legal fees incurred in defending any claims brought by the borrower arising from the parties' rights and obligations under the loan documents (*e.g.*, Dkt. No. 35-1 at 8).  Aside from Plaintiff's general contentions that Defendants were not entitled to foreclose or failed to do so in compliance with the mortgage terms or state law, it has not argued that Defendants are not entitled to recover legal fees and costs.  When a party does not respond to an argument made against it by the opposing parties on summary judgment, the district court may deem that it has waived the opportunity to do so.  *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed[.]").  Accordingly, on submission of filings detailing Defendants' requests for fees and costs, to which Plaintiff will be entitled to file an opposition as to amounts claimed and whether the fees and costs are premised on the provisions in the Springfield and Westfield Notes, the court will award Defendants legal fees and costs.

D.      Possession of the Westfield Property (Counterclaim Count VIII)

Finally, Christiana Trust seeks a judgment entitling it to possession of the Westfield property.  "Summary process is a statutory cause of action that enables a person to recover possession of land that is acquired through a mortgage foreclosure sale." *Schumacher,* 5 N.E.3d at 888.  Massachusetts' summary process statute provides, in relevant part, that:

> if a mortgage of land has been foreclosed by a sale under a power therein
> contained or otherwise, . . . and the seller or any person holding under him refuses

to surrender possession thereof to the buyer, . . . the person entitled to the land or
tenements may recover possession thereof under this chapter.

Mass. Gen. Laws ch. 239, § 1.  "'The purpose of summary process is to enable the holder of the

legal title to gain possession of premises wrongfully withheld.'"  *Bank of N. Y. v. KC Bailey*, 951

N.E.2d 331, 335 (Mass. 2011) (quoting *Wayne Inv. Corp. v. Abbott,* 215 N.E.2d 795, 795 (Mass.

1966)).  "'Right to possession must be shown . . . .  Legal title is established in summary process

by proof that the title was acquired strictly according to the power of sale provided in the

mortgage . . . .'"  *Id.* (quoting *Wayne Inv. Corp.,* 215 N.E.2d at 795).  "In a summary process

action for possession after foreclosure by sale, [the foreclosing party] is required to make a prima

facie showing [1] that it obtained a deed to the property at issue and [2] that the deed and

affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded."

*Id.* at 336 (citing *Lewis,* 43 N.E. at 207; Mass. Gen. Laws ch. 244, § 15).  To establish the prima

facie showing, Christiana Trust was required to produce "'an *attested* copy of the recorded

foreclosure deed and affidavit of sale . . . .'"  *Klevisha,* 167 F. Supp. 3d at 258  (quoting

*Hendricks,* 977 N.E.2d at 555) (emphasis added); Mass. Gen Laws ch. 244, § 15(b) ("If the

affidavit [of sale] shows that the requirements of the power of sale and of the statute have in all

respects been complied with, the affidavit or *a certified copy* of the record thereof, shall be

admitted as evidence that the power of sale was duly executed.") (emphasis added).  A certified

or attested copy is one that is "duly certified by the person in charge thereof . . . ."  Mass. Gen.

Laws ch. 233, § 79A.

Christiana Trust has demonstrated compliance with the Massachusetts foreclosure

statutes.  On the other hand, the record does not include the requisite certified copies of the

foreclosure deed and the amended affidavit of sale required for possession in a summary process

action (Dkt. No. 35-5 at 4-6, 10-12).  *See Klevisha,* 167 F. Supp. 3d at 258; Mass. Gen. Laws ch.

244, § 15(b).  *Compare Koufos v. U.S. Bank, N.A.,* Civil Action No. 12-10743-DJC, 2015 WL

5257124, at *5 (D. Mass. Sept. 8, 2015) (defendants were entitled to possession of the property

where they made a prima facie showing by producing certified copies of the

foreclosure deed and affidavit.).  Accordingly, Defendants' motion for summary judgment as to

Count VIII is denied without prejudice.[12]

     IV.    CONCLUSION

     For the foregoing reasons, Plaintiff's cross motion for summary judgment (Dkt. No. 28) is

DENIED.  Defendants' motion for summary judgment (Dkt. No. 32) is GRANTED as to Counts

II, III, IV, and VII in the counterclaim, DENIED as to Count I (Slander of Title) and DENIED

without prejudice as to Count VIII (Possession of the Westfield property).  The Clerk's Office is

directed to schedule a status conference in the near future on a date convenient to the parties and

the court.

     It is so ordered.

Date:  March 29, 2023          /s/ Katherine A. Robertson   
                                   KATHERINE A. ROBERTSON
                                   United States Magistrate Judge

---

[12] Defendants' failure to address their counterclaims for unjust enrichment (Count V) and promissory estoppel (Count VI) constitutes a waiver of those claims.  *See Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived.").

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____X

**Southbridge RE, LLC,**
　　　　　　**Plaintiff,**

**v.**　　　　　　　　　　　　　　　**Civil Action No. 21-CV-30061-KAR**

**Kiavi Funding, Inc.; and**
**Christiana Trust, a Division of Wilmington**
**Savings Fund Society, FSB, not in its**
**individual capacity but as Trustee for**
**Victoria Capital Trust,**
　　　　　　**Defendants.**
_____X

## JUDGMENT

**Robertson, U.S.M.J.**

　　　　In accordance with the Memorandum and Order on Plaintiff's Cross Motion for Summary Judgment & Defendants' Motion for Summary Judgment dated March 29, 2023 ("Memorandum and Order"), ECF Dkt. No. 54, and the Stipulation of the Parties regarding the entry of Final Judgment;

It is hereby ORDERED, ADJUDGED AND DECREED THAT

1. Judgment shall enter in favor of the Defendants on Count I of the Complaint;

2. Counts I, V, VI of the Defendants' counterclaims are hereby dismissed;

3. Judgment shall enter in favor of the Defendants on Count II of their counterclaims for a Declaratory Judgment as to the validity of Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee for Victoria Capital Trust's ("Christiana Trust") January 21, 2021, foreclosure sale of the property located at 103 Prospect Street, Springfield, MA (the "Prospect Street Property");

Add. 36

4. Judgment shall enter in favor of the Defendants on Count III of their counterclaims for a Declaratory Judgment as to the validity of Christiana Trust's December 22, 2020, foreclosure sale of the property located at 25 Pleasant Street, Westfield, MA (the "Pleasant Street Property");

5. Judgment shall enter in favor of the Defendants on Count IV of their counterclaims for Breach of Contract arising out of the Promissory Note and Mortgage on the Prospect Street Property and the Promissory Note and Mortgage on the Pleasant Street Property;

6. The Defendant, Christiana Trust, shall be entitled to a Deficiency Judgment on Count VIII of its counterclaims for damages in the amount of $210,794.43 plus attorney's fees and costs in the amount of $54,572.51 for a total of $265,366.94; and

7. Judgment shall enter in favor of the Defendant, Christiana Trust, on Count VIII of its counterclaims for Possession of the Pleasant Street Property.

Dated:  August 2, 2023                          By the Court,


/s/ *Melissa M. Rivera*
Deputy Clerk

2023 WL 1451929
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Ruth Magdalena MALANOWSKI, Plaintiff,
v.
WELLS FARGO BANK N.A. TRUSTEE OPTION
ONE MORTGAGE CORPORATION TRUST 2005-1
ASSET-BACKED-CERTIFICATES, SERIES 2005-1,
Defendant.

Civil Action No. 21-11628-MGM
|
Signed February 1, 2023

**Synopsis**
**Background:** Borrower brought pro see petition alleging numerous claims, including that mortgage assignee violated Fair Debt Collection Practices Act (FDCPA), arising from purported wrongful foreclosure of borrower's property after she defaulted on her mortgage loan. Mortgage assignee moved for judgment on the pleadings.

**Holdings:** The District Court, Mark G. Mastroianni, J., held that:

[1] borrower's claims were barred by res judicata;

[2] borrower sufficiently proved its possession of note;

[3] mortgage assignee was not required to "redo" Massachusetts statutory notice requirements upon postponement of foreclosure sale;

[4] mortgage assignee's loan servicer and attorney did not lack authority to carry out foreclosure sale; and

[5] mortgage assignee did not violate FDCPA.

Motion allowed.

**Procedural Posture(s):** Motion for Judgment on the Pleadings.

West Headnotes (18)

[1]   **Res Judicata**—Summary judgment
      Summary judgment operates as a final judgment
      on the merits, for purposes of considering whether
      a claim is barred by res judicata.

[2]   **Evidence**—Public records and documents in
      general
      **Evidence**—Matters referred to or incorporated
      by pleadings
      **Federal Civil Procedure**—Matters considered
      **Federal Civil Procedure**—Matters deemed
      admitted
      On a motion for judgment on the pleadings, as in
      the case of a motion to dismiss for failure to state
      a claim, the court is permitted to take judicial
      notice of public records and consider documents
      referred to in the complaint or integral to the
      plaintiff's claims; when such documents
      contradict an allegation in the complaint, the
      document trumps the allegation. Fed. R. Civ. P.
      12(b)(6), 12(c).

[3]   **Federal Civil Procedure**—Determination of
      Motion
      A motion for judgment on the pleadings is treated
      much like a motion to dismiss for failure to state a
      claim, with the court viewing the facts contained
      in the pleadings in the light most favorable to the
      nonmovant and drawing all reasonable inferences
      therefrom. Fed. R. Civ. P. 12(b)(6), 12(c).

[4]   **Federal Civil Procedure**—Insufficiency of
      claim or defense
      A complaint must survive a motion for judgment
      on the pleadings if it alleges sufficient facts to
      state a claim to relief that is plausible on its face.
      Fed. R. Civ. P. 12(c).

[5]   **Federal Civil Procedure**—Insufficiency of
      claim or defense

Add. 38

A claim is plausible on its face, as required to survive a motion for judgment on the pleadings, if it allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Fed. R. Civ. P. 12(c).

[6]    **Federal Civil Procedure**—Judgment on the Pleadings

A motion for judgment on the pleadings, unlike a motion to dismiss for failure to state a claim, implicates the pleadings as a whole. Fed. R. Civ. P. 12(b)(6), 12(c).

[7]    **Res Judicata**—Res Judicata

The doctrine of "res judicata" makes a valid, final judgment conclusive on the parties and prevents relitigation of all matters that were or could have been adjudicated in the action.

[8]    **Federal Courts**—Conclusiveness; res judicata and collateral estoppel
       **Judgment**—Operation and effect in general

A federal court is generally bound under res judicata to give the same preclusive effect to a state court judgment as would be given to it by a local court within that state.

[9]    **Res Judicata**—Res Judicata

Under Massachusetts law, res judicata applies where the following three elements are satisfied: (1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause of action; and (3) prior final judgment on the merits.

[10]   **Judgment**—Nature of Judgment
       **Judgment**—Identity of Cause of Action or Relief Sought

Borrower's claim that mortgage assignee lacked standing to foreclose on borrower's property after she defaulted on her mortgage loan because the mortgage assignment was invalid was barred by res judicata, where the same parties in the action were the parties in a prior Massachusetts Land Court action, the causes of action were sufficiently identical as they both arose from the same set of

facts concerning the assignment of the mortgage, and Land Court action was resolved by summary judgment, which operated as a final judgment on the merits.

[11]   **Judgment**—Nature of Judgment
       **Judgment**—Determination of Issues Involved and Effect of Judgment

Borrower's claim that mortgage assignee failed to proffer evidence of remaining mortgage debt to contradict borrower's recorded affidavit purported to invalidate existing debt, in action arising from allegedly wrongful foreclosure of borrower's property after she defaulted on her mortgage loan, was barred by res judicata, where prior Massachusetts Land Court Department action involving the same parties and same set of facts, which was resolved via summary judgment, specifically declared in order that borrower's affidavit was null and void and of no legal effect, and that borrower did not "accept" Land Court Department order did not invalidate its rulings or alter its effect on the District Court, particularly where borrower failed to pursue an appeal.

[12]   **Mortgages and Deeds of Trust**—Holders of obligations secured and their agents; non-holders in possession

Mortgage assignee sufficiently proved its possession of note before foreclosure sale of borrower's property, where under Massachusetts law, mortgage assignee could establish that it held the note at the time of the foreclosure sale by filing an affidavit in the registry of deeds, mortgage assignee certified assignment of the note in both a recorded affidavit and a certificate of statutory compliance, and both documents were executed in compliance with Massachusetts law, thereby constituting sufficient proof under Massachusetts law that mortgage assignee had authority to foreclose. Mass. Gen. Laws Ann. ch. 106, § 3-205(b); Mass. Gen. Laws Ann. ch. 183, § 54B; Mass. Gen. Laws Ann. ch. 244, § 35C; 209 Mass. Code Regs. 18.21(2)(c).

[13]   **Mortgages and Deeds of Trust**—Notice

Mortgage assignee was not required to "redo" Massachusetts statutory notice requirements upon postponement of foreclosure sale, as alleged by borrower in pro se action challenging mortgage assignee's foreclosure sale of borrower's property, where mortgage assignee recorded affidavit of sale, which constituted prima facie evidence of compliance with Massachusetts statute prior to initial sale date, borrower did not proffer any non-conclusory factual allegation to plausibly allege a statutory violation, borrower admitted to having received notice of initial sale as well as postponement, and regardless, mortgage assignee provided public proclamation of postponement of sale. Mass. Gen. Laws Ann. ch. 244, § 14.

[14] **Mortgages and Deeds of Trust**⚷Notice

Postponement of a foreclosure sale does not require renewed compliance with the notice requirements of the Massachusetts statute governing foreclosure sales. Mass. Gen. Laws Ann. ch. 244, § 14.

[15] **Mortgages and Deeds of Trust**⚷Notice

Under Massachusetts law governing foreclosure sales, public proclamation is a permissible way to postpone a sale, though not statutorily mandated. Mass. Gen. Laws Ann. ch. 244, § 14.

[16] **Mortgages and Deeds of Trust**⚷Persons who may sell; authority and powers
**Principal and Agent**⚷Construction of letters or powers of attorney

Mortgage assignee's loan servicer and attorney did not lack authority to carry out foreclosure sale of borrower's property under limited powers of attorney (POA) granted by mortgage assignee, as borrower contended, where POA for loan servicer was executed before any of the relevant affidavits pertaining to the foreclosure were signed or recorded by loan servicer's agents and before foreclosure sale occurred, and attorney did not sign any documents relating to foreclosure sale.

[17] **Finance, Banking, and Credit**⚷Disputed debts; validation notices and responses thereto

Mortgage assignee did not violate Fair Debt Collection Practices Act (FDCPA) via its loan servicer's failure to respond to request for validation of her debt, as alleged by borrower in action arising from mortgage assignee's purportedly wrongful foreclosure sale of borrower's property after she defaulted on her mortgage; prior debt collector sent borrower letter containing all required information, thereby complying with validation notice requirement of FDCPA, borrower received validation notice nearly 11 years before foreclosure sale, and because untimely validation request did not trigger FDCPA requirement to verify debt, mortgage assignee and its loan servicer could not be held liable for alleged failure to do so. Consumer Credit Protection Act § 809, 15 U.S.C.A. § 1692g.

[18] **Finance, Banking, and Credit**⚷Disputed debts; validation notices and responses thereto

Fair Debt Collection Practices Act (FDCPA) does not require a renewed validation notice or re-trigger the 30-day period for requesting validation of the debt each time a new servicer communicates with the consumer. Consumer Credit Protection Act § 809, 15 U.S.C.A. § 1692g.

**Attorneys and Law Firms**

Ruth Magdalena Malanowski, Westfield, MA, Pro Se.

Hale Yazicioglu Lake, Marie M. Grandoit, Whitney M. Uicker, Hinshaw & Culbertson LLP, Boston, MA, for Defendant.

MEMORANDUM & ORDER REGARDING
DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS

(Dkt. No. 27)

Add. 40

MASTROIANNI, United States District Judge

**\*1** [1] This action arises from Defendant's February 2021 foreclosure sale of Plaintiff's property after she defaulted on her mortgage loan. Liberally construed, pro se Plaintiff's Amended Petition (Dkt. No. 1-3 at 10–21, plus attachments) contains five claims related to wrongful foreclosure: (1) Defendant lacked standing to foreclose because the mortgage assignment was invalid; (2) Defendant lacked standing to foreclose because it did not sufficiently prove possession of the Note; (3) Defendant has failed to proffer evidence of any remaining mortgage debt to contradict Plaintiff's recorded affidavit purporting to invalidate the existing debt; (4) there were several deficiencies with the foreclosure proceedings, including inadequate notice of the rescheduled sale and certain agents' lack of authority to act on Defendant's behalf; and (5) violation of § 1692g of the Fair Debt Collection Practices Act ("FDCPA") via Defendant's loan servicer's alleged failure to respond to a request for validation of her debt. Defendant now seeks judgment in its favor based on the pleadings. The court assumes the parties' familiarity with the factual background of this case. For the reasons set forth below, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 27) is ALLOWED.

## I. STANDARD OF REVIEW

[2] [3] [4] [5] [6] Having previously filed an answer, Defendants proceed on a motion for judgment on the pleadings under Rule 12(c), rather than the more typical motion to dismiss for failure to state a claim brought under Rule 12(b)(6). *Fed. R. Civ. P. 12.* " 'A motion for judgment on the pleadings [under Rule 12(c)] is treated much like a Rule 12(b)(6) motion to dismiss,' with the court viewing 'the facts contained in the pleadings in the light most favorable to the nonmovant and draw[ing] all reasonable inferences therefrom.' " *In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 549 (1st Cir. 2016) (alterations in original) (quoting *Pérez-Acevedo v. Rivero-Cubano,* 520 F.3d 26, 29 (1st Cir. 2008)). A complaint must survive a motion for judgment on the pleadings if it alleges sufficient facts "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is "plausible on its face" if it "allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). Finally, as in the case of a motion under Rule 12(b)(6), the court is permitted to take judicial notice of public records and consider documents referred to in the complaint or integral to the plaintiff's claims. *See O'Brien v. Wilmington Tr. Nat'l Ass'n as Trustee to CitiBank, N.A.*, 506 F. Supp. 3d 82, 90–91 (D. Mass. 2020); *Lu v. Menino*, 98 F. Supp. 3d 85, 93 (D. Mass. 2015); *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). When such documents contradict an allegation in the complaint, the document "trumps the allegation[ ]." *O'Brien*, 506 F. Supp. 3d at 90 (citation omitted).

## II. DISCUSSION

**\*2** [7] [8] [9] Plaintiff's first claim regarding the mortgage assignment is barred by res judicata. The doctrine of res judicata "makes a valid, final judgment conclusive on the parties ... and prevents relitigation of all matters that were or could have been adjudicated in the action." *Kobrin v. Bd. Of Registration in Med.*, 444 Mass. 837, 832 N.E.2d 628, 634 (2005) (citation omitted). "A federal court is generally bound under res judicata to give the same preclusive effect to a state court judgment as would be given to it by a local court within that state." *FPL Energy Maine Hydro LLC v. F.E.R.C.*, 551 F.3d 58, 63 (1st Cir. 2008). Under Massachusetts law, res judicata applies where the following three elements are satisfied: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *Kobrin*, 832 N.E.2d at 634 (citation omitted).

[10] The Land Court's March 10, 2020 Order (Dkt. No. 29-4; *see also* Dkt. No. 1-3 at 15, ¶ 29), granting Defendant's motion for summary judgment, satisfies all three elements. The parties in this action were the parties to the Land Court action. The causes of action were sufficiently identical as they both arose from the same set of facts and concern the assignment of the mortgage to Defendant. *See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 52 (1st Cir. 2008) (under Massachusetts law, causes of action or identical if they

Add. 41

"grow[ ] out of the same transaction, act, or agreement"); *see also* 🚩 *Wenzel v. Sand Canyon Corp.*, 841 F. Supp. 2d 463, 480 (D. Mass. 2012) ("[A] court may bar a claim under res judicata principles when title to property was at issue between the same parties (or those in privity with them) in a prior action, and is sought to be litigated in the current proceeding."), *abrogated on other grounds by* 🚩 *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282 (1st Cir. 2013). Finally, it is black-letter law that summary judgment operates as a final judgment on the merits. *See Bostwick v. 44 Chestnut Street*, No. 17-cv-12409, 2019 WL 6050969, at *5 (D. Mass. Nov. 15, 2019). Thus, Plaintiff's first claim regarding Defendant's status as holder of the Mortgage is precluded by res judicata. To the extent Plaintiff's other claims were or could have been raised in the Land Court action—including challenges to Defendant's possession of the Note, validity of the remaining mortgage debt, and PHH Mortgage Corporation's ("PHH") authority to send mortgage deficiency letters in 2019 on Defendant's behalf—they too are barred.

[11] To dispel any doubt, the court briefly addresses Plaintiff's remaining claims. The Land Court Order likewise disposes of Plaintiff's third claim. Plaintiff argues that Defendant failed to provide evidence contradicting her March 19, 2008 recorded affidavit, which purports to invalidate, discharge, and "settle" any remaining debt owed on her own mortgage. However, the Land Court Order specifically declared the March 19, 2008 affidavit null and void and of no legal effect. (Dkt. No. 29-4 at ¶ 2). That Plaintiff does not "accept" the Land Court Order does not invalidate its rulings or alter its effect on this court, particularly where Plaintiff failed to pursue an appeal.

[12] To the extent they are not barred by res judicata, Plaintiff's second and fourth claims are also without merit. Under Massachusetts law, a foreclosing mortgage assignee (like Defendant) may establish that it held the note at the time of a foreclosure sale by filing an affidavit pursuant to 🚩 Mass. G.L. c. 244, § 35C in the registry of deeds. *See O'Brien*, 506 F. Supp. 3d at 94–95 (discussing 🚩 *Eaton v. Fed. Nat'l Mortg. Ass'n*, 462 Mass. 569, 969 N.E.2d 1118, 1133 n.28 (2012)). Defendant certified in both a recorded 🚩 § 35C affidavit and a Certificate of Compliance with 209 C.M.R. § 18.21A(2)(c) dated November 10, 2020 that it held the Note. (Dkt. No. 29-7; Dkt. No. 1-3 at 184–88). As both documents were executed in compliance with Mass. G.L. c. 183, § 54B, they constitute sufficient proof under Massachusetts law that Defendant had

authority to foreclose. *See Jones v. Bank of N.Y. as Trustee for Certificate Holders CWABS, Inc. Asset-Backed Certificates*, 542 F. Supp. 3d 44, 54–55 (D. Mass. 2021) (collecting cases); *McAllister v. Countrywide Home Loans, Inc.*, No. 16-cv-10911, 2017 WL 1173925, at *13 (D. Mass. Mar. 29, 2017). Plaintiff's other challenges to Defendant's status as holder of the Note—regarding failure to show chain of ownership of the Note and indorsement of the Note in blank—are unsupported by Massachusetts law. *See O'Brien*, 506 F. Supp. 3d at 95 ("Defendant has no obligation to prove the chain of custody [of the Note]."); *LaRace v. Wells Fargo Bank, N.A.*, 99 Mass.App.Ct. 316, 166 N.E.3d 1025, 1037 (2021) (same); *id.* ("When indorsed in blank, [a note] becomes payable to bearer and may be negotiated by transfer of possession alone." (quoting Mass. G.L. c. 106, § 3-205(b))); 🚩 *Carroll v. Bank of N.Y. Mellon*, 91 Mass.App.Ct. 1116, 83 N.E.3d 198 (2017) (table) (same).

**\*3** [13] [14] [15] Nor has Plaintiff identified any other deficiencies with the foreclosure proceedings giving rise to a plausible claim. Plaintiff's contention that Defendant was required to "redo" the notice requirements of Mass. G.L. c. 244, § 14 upon postponement of the foreclosure sale is contrary to Massachusetts law. The recorded Affidavit of Sale (Dkt. No. 29-9) constitutes prima facie evidence of compliance with § 14 prior to the initial sale date and Plaintiff has not proffered any non-conclusory factual allegations to plausibly allege a § 14 violation. Indeed, although receipt is not relevant to evaluating compliance, Plaintiff admits having received notice of the initial sale as well as the postponement. (Dkt. No. 1-3 at 183, 190). Moreover, postponement of a foreclosure sale does not require renewed compliance with § 14 and public proclamation, as referred to in Defendant's Affidavit of Sale, is a permissible way to postpone a sale, though not statutorily mandated. *See Chaves v. U.S. Bank, N.A.*, 335 F. Supp. 3d 100, 106–11 (D. Mass. 2018); *Branch Ave. Capital, LLC v. U.S. Bank Nat'l Ass'n*, No. 12-cv-40140, 2013 WL 5242121, at *3 (D. Mass. Sept. 16, 2013); *Stephens-Martin v. Bank of N.Y. Mellon Tr. Co., N.A.*, No. 12 Misc. 465277, 2015 WL 732087, at *11–12 (Mass. Land Ct. Feb. 20, 2015) ("[T]here is no 'hard and fast' rule for noticing continuances of foreclosure sales" and no "hard and fast requirement for a public proclamation"; instead notice of a postponement is measured by standards of "good faith and commercial reasonableness[.]").

Add. 42

[16] Plaintiff's challenges to the Limited Powers of Attorney ("POA") regarding PHH and Attorney Lawson Williams are similarly unavailing as: (a) the June 2019 POA for PHH was executed before any of the relevant Affidavits pertaining to the foreclosure were signed or recorded by PHH's agents and before the February 2021 foreclosure sale occurred, and (b) Attorney Lawson Williams did not sign any documents relating to the foreclosure sale. Insofar as Plaintiff asserts Mr. Williams, who is a licensed attorney-at-law, could not represent Defendant in the Land Court Action absent a recorded POA, she misapprehends the law.

[17] Finally, Plaintiff's FDCPA claim is premised on PHH's alleged violation of 15 U.S.C. § 1692g, which requires a debt collector to provide certain information regarding the debt either in "the initial communication" or within five days of "the initial communication" sent to the consumer in connection with the collection of any debt. Although Defendant argues that Plaintiff failed to adequately plead her claim by failing to identify "the initial communication" that would have triggered § 1692g, the court broadly construes Plaintiff's Amended Petition and infers that Plaintiff intended to reference a letter dated March 19, 2019 from PHH regarding its status as Plaintiff's new mortgage loan servicer. (Dkt. No. 1-3 at 14, ¶ 26; id. at 151). Plaintiff asserts that PHH violated § 1692g by failing to respond to her request for validation of the debt by letter dated April 11, 2019. (Dkt. No. 1-3 at 148).

[18] Courts within the First Circuit, however, hold that § 1692g requires only one communication by the first debt collector to contain the validation notice described in § 1692g(a). By its text, the statute does not require a renewed validation notice or re-trigger the thirty-day period for requesting validation of the debt each time a new servicer communicates with the consumer. See ⚑ Moore v. Mortg. Elec. Reg. Sys., Inc., No. 10-cv-241, 2013 WL 1773647, at *5 (D.N.H. Apr. 25, 2013) (noting Congress's use of "the" indicates there can only be one "initial communication" with any given consumer: "Congress could have explicitly required both initial and successive debt collectors to provide the § 1692g(a) validation notice, and in fact made such distinction in § 1692e(11) when it distinguished between initial and subsequent communications to a debtor on a given debt." (quotation marks and citation omitted)); ⚑ id. at *5–6 ("Because [Plaintiffs] had already received a § 1692g(a) validation notice from [the first debt

collector] in the summer of 2009, [a subsequent loan servicer] was not required to send a new notice to [Plaintiffs] when it undertook its efforts to collect their debt. It follows from this conclusion that [the subsequent loan servicer] cannot have violated subsection (b) by failing to 'properly verify the debt' ... after receiving the[ir] request for debt verification" because verification is required only if the consumer requests verification within thirty days from receipt of the subsection (a) validation notice. Because Plaintiffs' validation request was sent more than four months after the first debt collector's validation notice was sent, the request did not trigger § 1692g(b) and the subsequent debt collector was not required to validate the debt in accordance with the provisions of § 1692g(b).); Waters v. J.C. Christensen & Assocs., Inc., No. 08-cv-11795, 2011 WL 1344452, at *11 (D. Mass. Mar. 4, 2011) ("[O]ne communication with proper validation notice is all that is required for each debtor when contacted by the first debt collector, no matter how long the line of debt collectors to follow.... Once the validation information is provided in the initial communication, and once the debtor is made aware of his rights at the time the collection process begins, it would serve no purpose to require that the same information be given again and again, each time the servicing function was passed from one creditor to another." (quotation marks and citation omitted)).

*4 Here, the attachments to Plaintiff's Amended Petition reveal that a prior debt collector, American Home Mortgage Servicing, sent Plaintiff a letter on May 14, 2010 that contained all required information and therefore fully complied with the validation notice requirement of § 1692g(a). (Dkt. No. 1-3 at 80–81). The attachments also confirm Plaintiff received the validation notice no later than May 28, 2010. (Id. at 76–79). Section 1692g(b) requires a debt collector to validate the debt and cease collection activity until verification is obtained only "[i]f the consumer notifies the debt collector in writing within the thirty-day period" following her receipt of the validation notice. According to the allegations of the Amended Petition, Plaintiff did not seek to have the debt validated until April 11, 2019—more than eight years after her receipt of the validation notice sent by American Home Mortgage Servicing. (Id. at 148). Because Plaintiff's untimely validation request did not trigger § 1692g(b)'s requirements to verify the debt, PHH (and by extension, Defendant) cannot be held liable for its alleged failure to do so.

Add. 43

III. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Petition does not survive Defendant's motion. The Motion for Judgment on the Pleadings (Dkt. No. 27) is ALLOWED. Judgment for Defendant shall issue by separate order.

It is So Ordered.

**All Citations**

--- F.Supp.3d ----, 2023 WL 1451929

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

## Footnotes

1      PHH is not a defendant in this action. Nevertheless, Plaintiff's claim concerns PHH's actions in its capacity as agent and loan servicer for Defendant.

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

98 Mass.App.Ct. 1111

Unpublished Disposition

NOTICE: THIS IS AN UNPUBLISHED OPINION.

NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

Appeals Court of Massachusetts.

WILMINGTON SAVINGS FUND SOCIETY, FSB [1]

v.

Elenice S. UMANA.

19-P-494
|
Entered: September 24, 2020

By the Court (Meade, Kinder & Hand, JJ. [2] )

MEMORANDUM AND ORDER
PURSUANT TO RULE 23.0

**\*1**  On July 12, 2018, a judge of the Southeast Division of the Housing Court Department granted partial summary judgment in favor of Wilmington Savings Fund Society, FSB (Wilmington), for possession of the residence of Elenice S. Umana, following a public foreclosure auction. The same judge subsequently held a hearing on the sole remaining issue, use and occupancy, and a final judgment ultimately entered. Umana appeals from the final judgment on numerous grounds, claiming that the judgment was both void for lack of standing and erroneous as matter of law. [3]  We affirm.

1. Standing. Umana claims that the judgment is void. Specifically, Umana claims that Wilmington lacked standing to bring the summary process action. We disagree. In this Commonwealth, "[t]he Housing Court may hear summary process actions brought by those who acquire ownership of property via foreclosure by sale." Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011). Pursuant to G. L. c. 239, § 1, a party entitled to land, following a foreclosure pursuant to the power of sale provided in the mortgage, is entitled to bring a summary process action to gain possession of the land.

Here, on October 21, 2016, the property was sold at a public foreclosure auction pursuant to the terms of the mortgage. At the foreclosure sale, the property was purchased by Wilmington, the mortgagee and the holder of the note. Wilmington subsequently recorded a foreclosure deed, as well as numerous other affidavits, [4]  in the Plymouth County registry of deeds as proof of ownership.

Given the aforementioned proof of a right of possession of Umana's residence on the part of Wilmington following the foreclosure sale, we are satisfied that the judgment is not void for lack of standing, nor is it void for lack of subject matter jurisdiction, given the Housing Court's ability to hear such summary process actions. See Bank of N.Y., 460 Mass. at 331.

2. Grant of partial summary judgment. We review a grant of summary judgment de novo "to determine whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as matter of law." Galenski v. Erving, 471 Mass. 305, 307 (2015). To prevail on a motion for summary judgment in a summary process action, the moving party has the burden of showing that there are no material facts in dispute with regard to its legal title to the property. See Bank of N.Y., 460 Mass. at 334. Generally, the plaintiff must show it obtained a deed to the property at issue and that both the deed and the affidavit of sale, which show compliance with the statutory foreclosure requirements, were recorded. See id. Umana claims that Wilmington failed to meet that burden. We disagree.

**\*2**  a. Failure to produce original note. First, Umana claims that summary judgment was improper because Wilmington failed to produce the original mortgage note. Under Massachusetts law, however, a foreclosing mortgagee need not produce the original note. See G. L. c. 244, § 14 (no explicit requirement for production of original note to foreclose pursuant to power of sale). Ultimately, at least with respect to unregistered land, a foreclosing mortgagee may establish that, at the time of the foreclosure sale, it held the

note or acted on behalf of the noteholder, by filing an affidavit with the registry of deeds. See Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 589 n.28 (2012).

Here, Wilmington provided sufficient evidence that it held the note at the time of the foreclosure sale. First, Wilmington provided certification pursuant to 209 Code Mass. Regs. § 18.21A(2) (2013) that it was the owner of both the mortgage and the note at the time of the notice of foreclosure sale.[5] Furthermore, Wilmington filed numerous affidavits with the Plymouth County registry of deeds, including an affidavit pursuant to G. L. c. 244, §§ 35B and 35C, as well as an affidavit of continuing noteholder status, both of which proclaimed that Wilmington held the note at the time of the foreclosure sale.

Therefore, contrary to Umana's assertions, Wilmington was under no duty to provide her with the original note, and we conclude that there was no genuine issue of material fact regarding whether Wilmington held the note at the time of the foreclosure sale.[6]

b. _FDIC acquisition of Umana's mortgage._ Umana further argues that summary judgment was improper because there is no record of assignment from Washington Mutual Bank, FA (WAMU), to JPMorgan Chase Bank, N.A. (Chase), in Wilmington's chain of title. However, under Federal law, no such record of assignment was required. See 12 U.S.C. § 1821(d)(2)(G)(i)(II). Under Federal law, the Federal Deposit Insurance Corporation (FDIC), as conservator or receiver, may transfer any asset or liability of an institution in default without any approval, assignment, or consent with respect to such transfer. See id.

Here, upon WAMU's default, the FDIC acquired WAMU's assets by operation of law. The FDIC, as receiver of WAMU, then entered into a purchase and assumption agreement with Chase whereby Chase acquired all loans and loan commitments of WAMU. Because the FDIC entered into the transaction as receiver of WAMU, no assignment by WAMU to Chase was required under Federal law to permit Chase to acquire the loans and the loan commitments of WAMU. See 12 U.S.C. § 1821(d)(2)(G)(i)(II). Therefore, we are satisfied that no defect exists in Wilmington's chain of title to warrant the reversal of the grant of partial summary judgment.

c. _Wilmington's power to foreclose._ Umana claims that summary judgment was improper where Wilmington's power of attorney, which appointed Harmon Law Offices, P.C. (Harmon Law Offices), as Wilmington's attorney-in-fact for the foreclosure sale, was not formally executed until approximately a month after the certificate of entry. Umana asserts that because the power of attorney had not yet been authorized, the foreclosure was void. See United States Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 646 (2011) ("Any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under these statutes is void" [citation omitted]).

**\*3** However, the fact that the power of attorney was formally executed approximately a month after the foreclosure sale does not render the foreclosure sale void, given that Wilmington ratified Harmon Law Office's previous actions. See Colony of Wellfleet, Inc. v. Harris, 71 Mass. App. Ct. 522, 528-529 (2008). It is well settled that a principal may be bound by an agent's unauthorized act if the principal expressly or impliedly ratifies the agent's acts. See id.

Here, contained within the language of the power of attorney, Wilmington expressly ratified "any and all previous actions taken by John McCarthy or any said attorney employed by Harmon Law Offices, PC," relating to the foreclosure of Umana's property. Therefore, while Harmon Law Offices arguably may not have had express authorization to act on Wilmington's behalf at the time of the foreclosure sale, the lack of such express authorization at that time is immaterial. Wilmington's subsequent actions undoubtedly ratified the conduct of Harmon Law Offices, and as a result, the foreclosure of Umana's property was not carried out by a party lacking the authority to do so.

d. _Affirmative defense of unconscionability._ Finally, Umana asserts that the partial grant of summary judgment was improper because her mortgage was an unconscionable predatory loan. However, without reaching the merits of Umana's defense of unconscionability, we conclude that such a defense has been waived.[7]

Affirmative defenses are waived if not raised in a party's first responsive pleading. See Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974). See also Aronovitz v. Fafard, 78 Mass. App. Ct. 1, 8 (2010). Here, Umana failed to raise the affirmative defense of unconscionability at any point prior to her numerous postjudgment motions for relief from judgment. Therefore, the defense has been waived.

Add. 47

<u>Judgment affirmed</u>.

**All Citations**

98 Mass.App.Ct. 1111, 155 N.E.3d 761 (Table), 2020 WL 5666541

---

## Footnotes

1    Doing business as Christiana Trust, trustee of the Pretium Mortgage Acquisition Trust.

2    The panelists are listed in order of seniority.

3    Umana raised other overly conclusory claims in her brief, without any citation to legal authority. We have thoroughly reviewed each and every claim asserted by Umana and have determined that they all lack merit.

4    Specifically, Wilmington recorded the following documents as proof of ownership of Umana's residence: (1) a foreclosure deed, (2) an affidavit of evidence of sale under G. L. c. 244, § 15, (3) an affidavit of continuing noteholder status throughout the foreclosure process, and (4) an affidavit of compliance with the requirements in the mortgage regarding acceleration and the power of sale.

5    A copy of the note was attached to the certification.

6    During discovery, Wilmington provided Umana with a copy of the original note. Furthermore, the record shows that Umana, while then represented by counsel, was given an opportunity to view the original note in court, and even declined a subsequent opportunity to further inspect the note at the office of opposing counsel.

7    Even if we were to examine the merits of Umana's affirmative defense, we would hold that her arguments do not warrant reversal. Umana offers very little factual and legal reasoning as to why her mortgage constitutes an unconscionable predatory loan, and such vague, conclusory arguments are insufficient to warrant reversal.

    See First Nat'l Bank of Boston v. Slade, 379 Mass. 243, 246 (1979) (neither vague allegations, nor conclusory statements are sufficient to show genuine issue of material fact warranting denial of summary judgment).

---

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Add. 48

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    3

Federal Nat. Mortg. Ass'n v. Carr, Not Reported in N.E. Rptr. (2012)

2012 Mass.App.Div. 223, 2012 WL 6021306

2012 Mass.App.Div. 223

Massachusetts Appellate Division, District
Court Department, Northern District.

FEDERAL NATIONAL MORTGAGE ASSOCIATION

v.

Thomas A. CARR and others. [1]

No. 12–ADMS–10024

|

Heard Oct. 12, 2012.

|

Opinion Certified Nov. 29, 2012.

**Synopsis**

**Background:** Following foreclosure proceeding, assignee of
foreclosure sale purchaser brought eviction action against
mortgagors. The District Court, Natick Division, Harbour, J.,
entered judgment in favor of assignee and denied mortgagors'
motion for relief from judgment. Mortgagors appealed.

**Holdings:** The District Court Department, Appellate
Division, Coven, J., held that:

[1] rule allowing for motion for relief from judgment based
on catch-all provision is available to parties in cases that have
been heard on merits in district court, and

[2] mortgagee could not cure invalid assignment of mortgage,
which was made when mortgagee did not own mortgage, by
use of an earlier effective date to label transfer.

Vacated and remanded.

**Procedural Posture(s):** On Appeal.

West Headnotes (2)

**[1]    Judgment** 🔑 Nature and scope of remedy

Rule allowing for motion for relief from
judgment based on catch-all provision is
available to parties in cases that have been heard
on merits in district court, even though such relief
was previously unavailable under former law
applying summary process rule in such instances.

Rules Civ.Proc., Rule 60(b)(6), 46 M.G.L.A.;
Summary Process Rule 11(a).

**[2]    Mortgages and Deeds of Trust** 🔑 Validity
and enforceability

Mortgagee could not cure invalid assignment of
mortgage, which was made when mortgagee did
not own mortgage, by use of an earlier effective
date to label transfer.

5 Cases that cite this headnote

In the Natick Division, Docket No. 1287SU0004, Harbour, J.

**Attorneys and Law Firms**

No brief filed, for Plaintiff.

Daniel B. Daley, Esq., Metro West Legal Services,
Framingham, MA, for Defendants.

Before COVEN, SINGH & PIERCE, JJ.

*OPINION*

COVEN, J.

**\*1** This summary process action arose from an eviction
following a foreclosure. The defendants have appealed from
the denial of their motion for relief from judgment pursuant
to Mass. R. Civ. P. 60(b). [2]

Thomas Carr and Michelle (Dourian) Carr ("Carrs")
purchased the property located at 28 Charles Street, Natick,
Massachusetts, as husband and wife (tenants by the entirety),
with a home loan from East–West Mortgage ("East–West")
in the amount of $150,000.00. On September 14, 2005,
the Carrs executed a mortgage to secure the note. Under
the mortgage, Mortgage Electronic Registration System, Inc.
("MERS") was the mortgagee acting as a nominee for East–
West. Thereafter, two assignments took place.

On April 29, 2008, East–West assigned the mortgage loan
to Regions Bank d/b/a Regions Mortgage, Inc. ("Regions
Bank"). This assignment was recorded at the Middlesex
County registry of deeds on May 5, 2008.

Federal Nat. Mortg. Ass'n v. Carr, Not Reported in N.E. Rptr. (2012)

2012 Mass.App.Div. 223, 2012 WL 6021306

Twelve days *prior* to April 29, 2008, on April 17, 2008, Regions Bank assigned its interest in the property to Chase Home Finance, LLC ("Chase"). This assignment was also recorded at the Middlesex County registry of deeds on May 5, 2008.

The assignment to Chase from Regions Bank, and the later assignment from East–West to Regions Bank, contained the "effective date" of October 4, 2007, a date that preceded the actual transfer of legal title from Regions Bank to Chase on April 29, 2008 by several months.

On October 28, 2010, Chase held a foreclosure sale of the property. Chase was the highest bidder at the foreclosure sale. Throughout the foreclosure process, Chase acted as the holder of the mortgage loan.[3] Thereafter, Chase unconditionally sold the property to Federal National Mortgage Association ("Fannie Mae"), who is the plaintiff in this eviction action.

Chase executed a foreclosure deed in which Chase transferred the property to Fannie Mae for the amount of $188,425.30. Chase recorded the foreclosure deed and assignment of bid on December 8, 2010. Fannie Mae served the Carrs with a notice to quit on December 14, 2011, and filed this summary process action against the Carrs and their minor daughter on January 23, 2012.

At the summary process hearing on February 16, 2012, Thomas Carr appeared pro se. Fannie Mae, represented by counsel, filed the following documents: mortgage, recorded assignments, foreclosure deed (with mortgagee's affidavit and assignment of bid), complaint to foreclose the mortgage, certificate of entry, and certificate of appointment. The trial judge entered judgment for possession in favor of Fannie Mae, but stayed execution until April 1, 2012 and awarded nothing on Fannie Mae's claim for use and occupancy. The trial judge ruled that the "chain of title was in order after review by the court."[4]

On March 30, 2012, the Carrs, by then represented by counsel, filed a motion for relief from judgment pursuant to Rule 60(b)(1) and (b)(6), and the parties agreed to have the motion heard on the same day. In their Rule 60(b) motion, the Carrs argued that there was a defect in the transfer of legal title based on the mortgage assignment from Regions Bank to Chase (dated April 17, 2008) because Regions Bank did not own the title to the mortgage at the time it was assigned to Chase. This, they argued, invalidated the foreclosure sale and Fannie Mae's superior right to possession because Chase could not have held the mortgage at the time of the foreclosure sale as required by the law. On March 30, 2012, after hearing, the trial judge denied the Carrs' Rule 60(b) motion, stating: "The motion is denied for two reasons [1] first relief is not available to the moving party under this rule [2] the Plaintiff FNMA was [and] is holder of record in the recorded documents. No issue was raised as to the original note or other documents which back up the recorded chain of title." The Carrs filed this appeal.

**\*2** **[1]** Relief from judgment in a District Court summary process case is governed by Uniform Summary Process Rule 11(a), which provides that for "cases that have been heard on the merits, relief under 60(b) shall not be available." However, the Commentary to Rule 11(a) states that the rationale for the limitation under Rule 11(a) is due to the right of an aggrieved party to a new trial on appeal, a component of the former two-trial system. Thus, despite the language of Rule 11(a), in cases that have been heard on the merits in District Court, relief under Mass. R. Civ. P. 60(b) is now available to the parties because of the change from a two-trial to a one-trial system.[5] As a result of this change from the old two-trial system to the present one-trial system, the Supreme Judicial Court concluded that "Rule 11(a) of the Uniform Summary Process Rules would not apply." *ROPT Ltd. Partnership v. Katin,* 431 Mass. 601,606(2000). The Court stated:

> Uniform Summary Process Rules and the Massachusetts Rules of Civil Procedure were written before the new statute and thus need to be read harmoniously with the new scheme. *Spence v. Reeder,* 382 Mass. 398, 421–422, 416 N.E.2d 914, (1981) (disregarding Rule 13 of the Uniform Summary Process Rule in light of statutes and procedural rules). See 🚩 *O'Brien v. Director of the Div. of Employment Sec.,* 393 Mass. 482, 487, 472 (1984) (interpret statute according to Legislature's intent). In particular, the rules that apply to District Court proceedings were written with the expectation that parties had a right to de novo review in the Superior

Federal Nat. Mortg. Ass'n v. Carr, Not Reported in N.E. Rptr. (2012)

2012 Mass.App.Div. 223, 2012 WL 6021306

Court pursuant to G.L. c. 231, § 97. However, St.1996, c. 358, § 8, fourteenth par ., now provides for appeal to the Appellate Division of the District Court Department for actions tried in the District Court. Logically, therefore, rule 11(a) cannot apply to District Court cases because they are no longer subject to de novo review.

*Id.* The trial judge thus erred in his decision that Rule 60(b) is not available to the appellants under Rule 11(a) of the Uniform Summary Process Rules.

"Rule 60 sets forth a comprehensive framework for obtaining relief from a final judgment or order, balancing the competing needs for finality and flexibility to be certain that justice is done in light of all the facts." *Sahin v. Sahin,* 435 Mass. 396, 399–400, 758 N.E.2d 132 (2001). Rule 60(b)(6) is limited to instances when vacating a judgment is justified by some reason other than those stated in subsections (1) through (5). *Chavoor v. Lewis,* 383 Mass. 801, 803, 422 N.E.2d 1353 (1981). Rule 60(b)(6) gives the court additional authority to grant relief from a judgment whenever justice requires it. *Sahin, supra* at 406, 758 N.E.2d 132. [6] In the present case, subsections (1) through (5) of Rule 60(b) are not applicable. Therefore, a motion under Rule 60(b)(6) is solely available.

A motion pursuant to Rule 60(b)(6) is addressed to the "discretion of the judge" and "will not be reversed on appeal save for abuse" of that discretion. *Parrell v. Keenan,* 289 Mass. 809, 815 (1983). A judge deciding a Rule 60(b)(6) motion may consider whether the party "has a meritorious claim or defense ... [and] whether extraordinary circumstances warrant relief." *Owens v. Mukendi,* 448 Mass. 66, 72, 858 N.E.2d 734 (2006), quoting *Parrell, supra.*

**\*3** In determining the request for relief under Rule 60(b)(6) in this case, the trial court was required to apply the clear standard articulated in *United States Bank Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 941 N.E.2d 40 (2011) that the use of effective dates will not alter the fact that the transfer of mortgage assignment is only effective on the transfer. Regions Bank cannot cure a cloud on Chase's legal title by the use of an earlier "effective date." See *id.* at 653–654, 941 N.E.2d

40. The order in which the assignments were recorded does not determine when the transfer of legal title to the mortgage became effective.

**[2]** The assignment to Chase was invalid because Regions Bank did not own the mortgage at the time of that transfer. Chase did not hold the mortgage when it carried out the foreclosure sale of the Carrs' home. Because the underlying foreclosure sale by Chase is void, Fannie Mae's claim to superior right of possession based on that sale must fail.

As noted, *Ibanez* clearly establishes that the use of effective dates will not alter the fact that the transfer of mortgage assignment is only effective on the transfer. The trial judge erred in his belief that Regions Bank had cured the cloud on Chase's legal title by the use of an earlier "effective date." See *id.* Clearing a cloud on title by a later assignment of a mortgage runs contrary to G.L. c. 183, § 21 and G.L. c. 244, § 14. If the parties do not have their assignments at the time of the publication of the notices and sales of the mortgages, they lack the authority to foreclose. See G.L. c. 183, § 21; G.L. c. 244, § 14.

The trial judge also erroneously concluded that the order in which the assignments were recorded would determine when the transfer of legal title to the mortgage became effective. An assignment of a mortgage is a transfer of legal title in Massachusetts only upon the transfer or execution date, not the recording date. At all times relevant in this action, recording was not a legal requirement, [7] but merely the "better practice." *Ibanez, supra* at 651, 941 N.E.2d 40. A transfer of legal title in Massachusetts becomes effective only upon the transfer or execution date. Recording does not change the requirement that the party must hold title in order to execute a proper transfer.

As the trial judge erroneously determined that relief was not available to the defendants under Mass. R. Civ. P. 60(b) in summary process actions, the denial of the Carrs' Rule 60(b) motion is vacated, and the matter is returned to the trial court for a hearing on the motion to vacate judgment.

So ordered.

### All Citations

Not Reported in N.E. Rptr., 2012 Mass.App.Div. 223, 2012 WL 6021306

Add. 51

Federal Nat. Mortg. Ass'n v. Carr, Not Reported in N.E. Rptr. (2012)

2012 Mass.App.Div. 223, 2012 WL 6021306

## Footnotes

1    Michelle Carr and Chloe Carr.

2    The plaintiff did not file a brief on this appeal.

3    In Massachusetts, only a current holder of the mortgage loan is able to exercise a statutory power of sale. See G.L. c. 183, § 21 (or a mortgagee's executors, administrators, successors, or assigns). A foreclosing mortgagee must have physical possession of the note or be acting as the authorized agent of the note holder to foreclose pursuant to the power of sale. ⚑ *Eaton v. Federal Nat'l Mtge. Ass'n,* 462 Mass. 569, 584–586, 969 N.E.2d 1118 (2012).

4    A summary process judge has jurisdiction to review the chain of title after a mortgage foreclosure sale. ⚑ *Bank of N.Y. v. Bailey,* 460 Mass. 327, 333, 951 N.E.2d 331 (2011). In Massachusetts, a foreclosure sale is entirely void unless the sale strictly adheres to the statutory requirements. ⚑ *United States Bank Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 646–647, 941 N.E.2d 40 (2011).

5    Prior to 1996, aggrieved parties in summary process actions had the right to a new trial in the Superior Court. Since then, summary process actions in the District Court have been subject to one trial in the District Court Department.

6    In the present case, defendants have provided no basis for relief under subsections (1) through (5) of Rule 60(b).

7    However, pursuant to St.2012, c. 194 and effective November 1, 2012, G.L. c. 244, § 14 was rewritten. The amended statute now provides, in relevant part: "For purposes of this section and section 21 of chapter 183, in the event a mortgagee holds a mortgage pursuant to an assignment, no notice [of sale] under this section shall be valid unless (i) at the time such notice is mailed, an assignment, or a chain of assignments evidencing the assignment of the mortgage to the foreclosing mortgagee has been duly recorded in the registry of deeds for the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale required in this section."

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Add. 52

   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6050356
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Francis J. SAMPSON, Jr., Plaintiff,

v.

U.S. BANK, NATIONAL
ASSOCIATION, et al., Defendants.

Civil Action No. 22-10447-NMG
|
Signed September 15, 2023

**Synopsis**

**Background:** Homeowner filed suit against current trustee of trust to which mortgage was assigned, loan servicer, and assignor of mortgage seeking declaration that defendants lacked authority to foreclose on the property, seeking damages, and asserting claims of wrongful foreclosure, slander of title, and violation of Massachusetts Consumer Protection Law. Defendants asserted counterclaims for breach of contract, deficiency judgment, and possession. Following removal, denial of homeowner's motion for preliminary injunction and motion for reconsideration, and grant of motion to substitute homeowner's children, as his successors in interest following homeowner's death, defendants moved for summary judgment on homeowner's claims and counterclaim for possession.

**Holdings:** The District Court, [Nathaniel M. Gorton](#), J., held that:

[1] current trustee was not required to include confirmatory assignment that did not transfer legal title in its foreclosure documents under Massachusetts law;

[2] current trustee had authority to proceed with foreclosure under Massachusetts law;

[3] issue of whether assignor had authority to assign subject mortgage was precluded as previously litigated;

[4] loan servicer's omission of confirmatory assignment did not violate Massachusetts Consumer Protection Law;

[5] current trustee was entitled to possession of property following its successful bid at foreclosure auction; and

[6] current trustee's counterclaim for possession exceeded $75,000 amount-in-controversy threshold for diversity jurisdiction.

Motion granted.

See also [115 F.Supp.3d 191](#).

**Procedural Posture(s):** Motion for Summary Judgment; Motion for Declaratory Judgment.

West Headnotes (11)

**[1]** **Summary Judgment** ⮞ Purpose

The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. [Fed. R. Civ. P. 56(a)](#).

**[2]** **Summary Judgment** ⮞ Necessity

A moving party is not required to submit an affidavit in support with its motion for summary judgment. [Fed. R. Civ. P. 56](#).

**[3]** **Mortgages and Deeds of Trust** ⮞ Title and rights transferred

**Mortgages and Deeds of Trust** ⮞ Recording of mortgage or assignment

Confirmatory assignment from assignor to current trustee did not transfer legal title to mortgage to current trustee, and thus, in describing chain of title to subject property, current trustee of trust to which mortgage was assigned was not required to include in its foreclosure documents the confirmatory assignment, so that current trustee sufficiently described chain of title in its foreclosure documents in accordance with Massachusetts law; assignor previously assigned mortgage to prior trustee, current trustee secured assignment of mortgage from prior trustee to current trustee, and assignment from prior trustee to current trustee was referenced in notice of sale and

Add. 53

related documents. Mass. Gen. Laws Ann. ch. 244, § 14; 209 Mass. Code Regs. 18.21A(2)(c).

[4]  **Mortgages and Deeds of Trust** 🔑 Recording of mortgage or assignment

Purpose of Massachusetts law requiring certification of chain of title of subject mortgage in foreclosure proceeding is to ensure that foreclosing party holds subject mortgage by virtue of unbroken chain of assignments. 209 Mass. Code Regs. 18.21A(2)(c).

[5]  **Mortgages and Deeds of Trust** 🔑 Assignees and other transferees

**Mortgages and Deeds of Trust** 🔑 Holders of obligations secured and their agents; non-holders in possession

Current trustee of trust to which mortgage was assigned, by securing assignment of mortgage from prior trustee, was assignee of mortgage and holder of note prior to publication of the notice of sale and foreclosure sale, and thus current trustee had authority to proceed with foreclosure under Massachusetts law; current trustee had copies of assignments of mortgage to trust, not endorsed in blank, and multiple affidavits affirming that trustee was assignee of mortgage, trustee was not required to establish its interest in the note through an affidavit as contemplated by statute, and there was no countervailing evidence suggesting trustee did not hold note. Mass. Gen. Laws Ann. ch. 106, § 3-205; Mass. Gen. Laws Ann. ch. 183, § 5B; Mass. Gen. Laws Ann. ch. 244, § 14.

[6]  **Libel and Slander** 🔑 Nature and elements in general

Under Massachusetts law, claim for slander of title requires proof that alleged perpetrator: has published false statement harmful to interest of another; intends, recognizes or should recognize that publication of false statement will result in harm to interests of other having pecuniary value; and knows that statement is false or recklessly disregards truth or falsity of statement.

[7]  **Res Judicata** 🔑 Mortgages and deeds of trust

Issue of whether assignor had authority to assign subject mortgage was already litigated in homeowner's prior wrongful-foreclosure suit, thus precluding issue raised by homeowner again in slander-of-title claim under Massachusetts law against assignor; in homeowner's first lawsuit, homeowner relied in part on theory that assignor did not acquire mortgages held by mortgagee when it purchased the mortgagee's assets from Federal Deposit Insurance Corporation (FDIC) after mortgagee was placed in receivership, district court determined assignor had authority to assign mortgage in order granting motion to dismiss homeowner's complaint, issue was fully briefed by both parties and essential to the judgment, and contrary holding would have cast doubt on trustee's authority to foreclose property.

[8]  **Res Judicata** 🔑 Collateral estoppel and issue preclusion in general

To determine the application of issue preclusion, four elements must be established: (1) that the issue to be precluded is the same as that disputed in a prior proceeding, (2) that the issue was actually litigated in the earlier proceeding, (3) that the issue was determined by a valid and binding final judgment or order, and (4) that the determination of the issue in the prior proceeding was essential to the final judgment or order.

[9]  **Mortgages and Deeds of Trust** 🔑 Intent to foreclose

Loan servicer's omission of assignor's confirmatory assignment, purporting to assign mortgage from assignor to current trustee, from certification of chain of title did not violate provision of Massachusetts Consumer Protection Law requiring mortgage servicer to provide certification of chain of title and ownership of note and mortgage with notice of foreclosure; assignor validly assigned mortgage to prior trustee, and subsequent assignment validly assigned mortgage from prior trustee to

Add. 54

current trustee, so that loan servicer fulfilled its obligations under Massachusetts law, and confirmatory assignment was not necessary to include because it did not properly assign the mortgage from assignor to current trustee. Mass. Gen. Laws Ann. ch. 244, § 14; 209 Mass. Code Regs. 18.24(A)(2)(c).

**[10]** **Mortgages and Deeds of Trust** 👉 Remedies and Proceedings

Current trustee of trust to which mortgage was assigned made a prima facie showing of its right to possession following foreclosure sale at which trustee was successful bidder, and since homeowner failed to proffer any evidence rebutting the validity of the foreclosure deed and affidavit of sale, trustee was entitled to possession of foreclosed property under Massachusetts law; record established trustee held foreclosure auction wherein it was successful bidder, and record contained recorded foreclosure deed and affidavit of sale. Mass. Gen. Laws Ann. ch. 244, § 15.

**[11]** **Federal Courts** 👉 Particular Cases, Claim or Value

Current trustee's counterclaim against homeowner for possession of foreclosed property exceeded $75,000 amount-in-controversy threshold for diversity jurisdiction; foreclosure deed demonstrated that current trustee held foreclosure auction and paid $780,000 to purchase the property at auction.

**Attorneys and Law Firms**

Glenn F. Russell, Jr., Fall River, MA, for Plaintiff.

Brian Linehan, Reneau J. Longoria, Doonan, Graves, Longoria, LLC, Beverly, MA, for Defendants.

**MEMORANDUM & ORDER**

GORTON, United States District Judge

**\*1** This action arises out of the July, 2022 foreclosure sale of a residential property owned by plaintiff Francis J. Sampson, Jr. ("Sampson" or "plaintiff") and located at 85 Heritage Lane, Duxbury, Massachusetts ("the Property"). Sampson filed suit seeking a declaration that defendants, U.S. Bank, N.A. as trustee for WAMU Pass Through Certificates, Series 2007-OA-4 ("U.S. Bank"), Select Portfolio Servicing, Inc. ("Select") and JPMorgan Chase Bank N.A. ("JPMorgan") lack authority to foreclose on the Property and obtain damages. In March, 2023, defendants filed a motion for summary judgment on all of plaintiff's claims and its counterclaim for possession. For the reasons that follow, the motion will be allowed.

**I. Background**

In March, 2007, Sampson purchased the Property. In conjunction with the purchase, he borrowed money and executed a promissory note ("the Note") to Washington Mutual Bank, F.A. ("WAMU"). Sampson granted WAMU a mortgage ("the Mortgage") on the property to secure the Note (together, "the mortgage loan").

WAMU went into receivership in 2008 and the Federal Deposit Insurance Corporation ("the FDIC") was appointed to manage its remaining assets. The FDIC sold those assets to JPMorgan which, in May, 2010, assigned the Mortgage to a trust ("the Trust") for which Bank of America, N.A. ("Bank of America"), served as trustee. U.S. Bank has since succeeded Bank of America as trustee of the Trust.

In or around 2010, Sampson fell behind on his mortgage payments. In 2014, the Trust notified Sampson that it intended to sell the Property pursuant to the statutory power of sale made available to mortgagees under M.G.L. c. 244.

Sampson then commenced litigation against the Trust in March, 2015. See Sampson v. U.S. Bank, Nat'l Ass'n, 115 F. Supp. 3d 191 (D. Mass. 2015) ("Sampson I"). In that action, Sampson sought, inter alia, a declaration that U.S. Bank did not have authority to foreclose on the Property under M.G.L. c. 244, § 14. In July, 2015, this Court entered a memorandum and order dismissing Sampson I. See Sampson I, 115 F. Supp. 3d at 191. The Court held that Sampson "offered nothing beyond conclusory allegations of law" in support of his contention that the facts

Add. 55

render[ed] less than plausible the claim that the Trust was not the valid mortgagee and thus did not have authority to foreclose on the mortgage loan.

Id. at 193.

Sampson appealed the dismissal to the First Circuit Court of Appeals ("the First Circuit") and the United States Supreme Court ("the Supreme Court"), without success. More than two years after the Supreme Court denied his petition for certiorari, Sampson moved for this Court to set aside the judgment in Sampson I. That motion was denied by margin endorsement in October, 2020.

On March 17, 2022, Sampson filed the instant action ("Sampson II") in Massachusetts Superior Court for Plymouth County, again seeking to forestall the foreclosure sale of his residence. Sampson's complaint is comprised of four counts for: 1) declaratory judgment that U.S. Bank cannot foreclose under M.G.L. c. 244, § 14, 2) wrongful foreclosure, against U.S. Bank and Select, 3) slander of title, against JPMorgan and 4) violation of M.G.L. c. 93A against Select. Defendants answered the complaint and asserted three counterclaims for: 1) breach of contract, 2) deficiency judgment, and 3) possession.

 **\*2**  Defendants removed the action to this Court in March, 2022, and, shortly thereafter, plaintiff filed a motion for a preliminary injunction. This Court convened a hearing on that motion, at which counsel for plaintiff failed to appear. In April, 2022, this Court denied the motion for a preliminary injunction holding that plaintiff's claims were unlikely to succeed on the merits. Soon thereafter, plaintiff filed a motion for reconsideration which this Court also denied.

In July, 2022, U.S. Bank conducted a non-judicial foreclosure sale of the Property and was the successful bidder. U.S. Bank purchased the Property for $780,000.

Sampson died in November, 2022. By his Last Will and Testament, the Property would be left to James F. Sampson, Gretchen Sampson and Jeffrey Sampson, his children. This Court later allowed a motion to substitute plaintiff for his

successors in interest. In December, 2022, U.S. Bank recorded the Foreclosure Deed, conveying title to the Property to itself.

In March, 2023, defendants filed a motion for summary judgment on plaintiff's claims and its counterclaim for possession.

## II. Motion for Summary Judgment

### A. Legal Standard

**[1]** The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. 2548.

### B. Application

**[2]** Defendants move for summary judgment on each of plaintiff's four claims as well as on its counterclaim for possession. As a preliminary matter, plaintiff asserts that,

under Fed. R. Civ. P. 56, this Court should reject defendants' exhibits because they did not include an Affidavit in Support with their Statement of Undisputed Facts. Plaintiff misstates the Rule 56 standard. A moving party is not required to submit an Affidavit in Support with its motion for summary judgment. See 🚩 Celotex Corp., 477 U.S. at 318, 106 S.Ct. 2548.

### 1. Claims predicated on Wrongful Foreclosure (Counts I and II)

Plaintiff asserts that defendants U.S. Bank and Select wrongfully foreclosed on the Property because 1) U.S. Bank failed to describe the complete chain of title in the Notice of Sale, as required by M.G.L. c. 244, § 14 and related regulations and 2) U.S. Bank lacked authority to foreclose on the Property. [1]

#### a. U.S. Bank properly described the chain of title

**\*3**  **[3]**  Plaintiff contends that U.S. Bank impermissibly failed to describe the complete chain of title because it omitted the 2013 assignment from JPMorgan to U.S. Bank ("the Confirmatory Assignment") from the Notice of Sale.

Defendants acknowledge the omission of the Confirmatory Assignment but argue that it is immaterial because the Confirmatory Assignment did not transfer legal title to the Mortgage.

**[4]**  In order to comply with Massachusetts law, an entity seeking to foreclose must, inter alia, certify the chain of title of the subject mortgage. See 209 C.M.R. § 18.21A(2) (c) (imposing obligation to "certif[y] the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon"), O'Brien v. Wilmington Trust N.A., 506 F. Supp. 3d 82, 100 (D. Mass. 2020). The purpose of certification is to ensure that the foreclosing party holds the subject mortgage by virtue of an "unbroken chain of assignments". O'Brien, 506 F. Supp. 3d at 100 (quoting U.S. Bank, N.A. v. Mistovich, 97 Mass.App.Ct. 1122, 147 N.E.3d 1107 (2020)).

Presented with substantially the same question, another session of this Court held that purported assignments made by an entity which was not the mortgage holder at the

time of assignments "were not part of the chain of title and were properly excluded" from the certificate required by § 18.21A(2)(c). Id. at 100 (citing Germano v. U.S. Bank, N.A., No. 17-SBQ-36138-12-001 (HPS), 2018 WL 986065 (Mass. Land Ct. 2018)).

This Court agrees. Defendants explain and provide documentary evidence that JPMorgan initially assigned the Mortgage to Bank of America, as trustee for the Trust, in 2010 ("BOE Assignment"). In 2013, after U.S. Bank succeeded Bank of America as trustee, JPMorgan executed the Confirmatory Assignment which purported to transfer the Mortgage to U.S. Bank. Because JPMorgan had, however, already assigned the Mortgage to Bank of America, it lacked the authority to execute an assignment of the Mortgage to U.S. Bank. As a result, U.S. Bank secured an assignment of the Mortgage from Bank of America in 2019 ("the 2019 Assignment"), reference to which defendants included in the Notice of Sale and related documents.

Defendants' unrebutted evidence demonstrates that at the time of the Confirmatory Assignment, JPMorgan was not the mortgage holder. Accordingly, U.S. Bank was not required to include the Confirmatory Assignment in the foreclosure documents and its omission does not violate the chain of title disclosure requirements of M.G.L. c. 244, § 14 and related regulations.

#### b. U.S. Bank had authority to foreclose the Property

**[5]**  Sampson next challenges the authority of U.S. Bank to carry out the foreclosure. To meet its burden on summary judgment, defendant U.S. Bank must demonstrate that there is no genuine dispute of material fact as to whether it had authority to carry out the foreclosure under M.G.L. c. 244, § 14. U.S. Bank had authority to proceed with foreclosure if it was the assignee of the Mortgage and holder of the Sampson Note prior to the publication of the Notice of Sale and the foreclosure sale. See 🚩 U.S Bank N.A. v. Ibanez, 458 Mass. 637, 941 N.E.2d 40, 51 (2011) (citing In re Schwartz, 366 B.R. 265, 269 (Bankr. D. Mass. 2007)).

U.S. Bank has demonstrated that it is the assignee of the Mortgage and holder of the Sampson Note through several pieces of documentary evidence, including inter alia 1) copies of the assignments of the Mortgage to U.S. Bank 2) the Sampson Note endorsed in blank and 3) multiple affidavits affirming that U.S. Bank is the assignee of the Mortgage.

Add. 57

**\*4** Sampson disputes that the copies of the assignments sufficiently establish that U.S. Bank is the assignee of the Mortgage. He contends that the admittedly deficient Confirmatory Assignment calls into question whether U.S. Bank holds the Mortgage, but even if U.S. Bank's claim to title was deficient prior to 2019, plaintiff does not articulate how any deficiency was not cured by the 2019 Assignment. Accordingly, U.S. Bank has met its burden of establishing that it is the assignee of the Mortgage.

U.S. Bank asserts that the Pre- and Post-Foreclosure Affidavits establish that it is the holder of the Sampson Note. Sampson rejoins that U.S. Bank must proffer affidavits made pursuant to M.G.L. c. 183, § 5B, citing Eaton v. Fed. Nat'l Mortg. Ass'n. 462 Mass. 569, 969 N.E.2d 1118, 1133 n.28 (2012).

While Eaton held that mortgage holders may establish their interest in the Note through an affidavit made pursuant to M.G.L. c. 183, § 5B, plaintiff cites no caselaw suggesting that affidavits made pursuant to that statute are the exclusive manner of proving that a party is the noteholder. Nor does plaintiff proffer any countervailing evidence to suggest that U.S. Bank does not hold the Sampson Note.

Furthermore, U.S. Bank proffers evidence that the Sampson Note is endorsed in blank and under Massachusetts law,

> [such] an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

M.G.L. c. 106, § 3-205. In Sampson I, this Court determined that U.S. Bank is in possession of the Note. 115 F. Supp. 3d at 193. Accordingly, U.S. Bank has met its burden of demonstrating that it holds the Sampson Note.

Plaintiff fails to proffer countervailing evidence that casts doubt on the fact that U.S. Bank is the assignee of the Mortgage and the holder of the Sampson Note. U.S. Bank has sufficiently established that it has authority to foreclose on the Property and, accordingly, it is entitled to summary judgment on Counts I and II. See Ibanez, 941 N.E.2d at 52.

### 2. Slander of Title (Claim III)

**[6]** Plaintiff alleges a claim for slander of title against defendant JPMorgan. In Massachusetts such a claim requires proof that the alleged perpetrator: 1) has published a false statement harmful to the interest of another 2) intends, recognizes or should recognize that publication of the false statement will result in harm to the "interests of the other having a pecuniary value" and 3) knows that statement is false or recklessly disregards the truth or falsity of the statement. Dulgarian v. Stone, 420 Mass. 843, 652 N.E.2d 603, 609 (1995) (citing Restatement (Second) of Torts § 623A (1977)).

**[7]** Plaintiff's slander of title claim is predicated on its allegation that JPMorgan did not have legal authority to make the BOA Assignment or Confirmatory Assignment. Defendants rejoin that this Court's opinion in Sampson I establishes that JPMorgan had authority to assign the Sampson Mortgage and that, accordingly, the issue cannot be relitigated.

**[8]** Defendants' argument is persuasive. To determine the application of issue preclusion, four elements must be established:

> (1) that the issue to be precluded is the same as that disputed in a prior proceeding, (2) that the issue was actually litigated in the earlier proceeding, (3) that the issue was determined by a valid and binding final judgment or order, and (4) that the determination of the issue in the prior proceeding was essential to the final judgment or order.

Enica v. Principi, 544 F.3d 328, 337 (1st Cir. 2008).

In Sampson I, plaintiff brought claims for wrongful foreclosure. 115 F. Supp. 3d at 191. The claims relied, in part, on the theory that JPMorgan did not acquire mortgages held by WAMU when it purchased the assets of that bank from the FDIC, and thus, JPMorgan lacked authority to assign the Sampson Mortgage. Id. at 194. This Court rejected plaintiff's theory as being without merit. Id.

Add. 58

**\*5** The prior holding that JPMorgan properly acquired the Sampson Mortgage when it purchased WAMU's assets from the FDIC meets all of the elements of issue preclusion. Plaintiff once again challenges JPMorgan's authority to assign the Mortgage. This Court previously held that JPMorgan had authority to assign the Mortgage in a final order granting defendants' motion to dismiss. The issue was fully briefed by both parties and essential to the judgment. A contrary holding would have meant that JPMorgan did not lawfully assign the Mortgage to Bank of America which, in turn, would have cast doubt on the authority of U.S. Bank to foreclose on the Property.

Plaintiff contends that he raises a novel issue because this Court did not consider the 2019 Assignment in Sampson I but he forgets that his current action for slander of title is against JPMorgan. The 2019 Assignment did not involve JPMorgan but, rather, was an assignment of the Mortgage from Bank of America to U.S. Bank. Accordingly, the 2019 Assignment is of no consequence to plaintiff's slander of title claim against JPMorgan.

Because this Court has already determined that JPMorgan had authority to assign the Sampson Mortgage, the issue is precluded and defendants' motion for summary judgment on the slander of title claim will be allowed.

### 3. Claim under the Massachusetts Consumer Protection Law (Count IV)

**[9]** Plaintiff brings a claim against Select for violation of the Massachusetts Consumer Protection Law (M.G.L. c. 93A). Under 209 CMR § 18.24(A)(2)(c) and M.G.L. c. 244, § 14, a mortgage servicer shall provide certification of the chain of title and ownership of the note and mortgage with the notice of foreclosure. Failure to comply is a violation of Chapter 93A.

Plaintiff alleges that Select improperly omitted the Confirmatory Assignment in its certification. Although Select does not deny that the Confirmatory Assignment was omitted, it asserts that the Confirmatory Assignment was not necessary to include because it did not properly assign the Mortgage from JPMorgan to U.S. Bank. Rather, the BOA Assignment assigned the Mortgage from JPMorgan to Bank of America and the 2019 Assignment validly transferred title from Bank of America to U.S. Bank.

The Confirmatory Assignment could not have "backdate[d] an assignment being made for the first time." Ibanez, 941 N.E.2d at 55. The BOA Assignment validly assigned the Mortgage from JPMorgan to Bank of America and the 2019 Assignment validly assigned the Mortgage from Bank of America to U.S. Bank. Accordingly, Select has fulfilled its obligations under 209 CMR § 18.24(A)(2)(c) and M.G.L. c. 244, § 14.

### 4. Counterclaim for Possession

**[10]** U.S. Bank seeks summary judgment on its counterclaim for possession of the Property. The record establishes that U.S. Bank held a foreclosure auction in July, 2022, wherein it was the successful bidder. U.S. Bank proffers uncontested evidence of both the recorded foreclosure deed and the affidavit of sale under M.G.L. c. 244, § 15. Accordingly, U.S. Bank has made a prima facie showing of its right to possession. See Fed. Nat'l Mortg. Ass'n v. Hendricks, 463 Mass. 635, 977 N.E.2d 552, 555 (2012).

**[11]** Plaintiff's assertion that this Court lacks subject matter jurisdiction because the possession claim falls short of the $75,000 amount-in-controversy threshold is without merit. The foreclosure deed demonstrates that U.S. Bank paid $780,000 to purchase the property at auction. Plaintiff fails to augment his remaining challenges to this Court's subject matter jurisdiction.

Plaintiff has failed to proffer any evidence rebutting the validity of the foreclosure deed and the affidavit of sale under M.G.L. c. 244, § 15. Accordingly, this Court will allow U.S. Bank's motion for summary judgment on its possession counterclaim.

### ORDER

**\*6** For the foregoing reasons, the motion of defendants U.S. Bank, Select Portfolio Servicing and JPMorgan for summary judgment (Docket No. 48) is **ALLOWED**.

**So ordered.**

**All Citations**

--- F.Supp.3d ----, 2023 WL 6050356

Add. 59

## Footnotes

1    Plaintiff makes allegations against Select only insofar as it published notice of the 2022 foreclosure auction at the behest of U.S. Bank.

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Add. 60

2018 WL 986065 (Mass.Land Ct.) (Trial Order)
Land Court of Massachusetts.
Department of the Trial Court
Suffolk County

Michael F. GERMANO, Plaintiffs,

v.

U.S. BANK NATIONAL ASSOCIATION as Trustee, Successor in Interest to Bank of America National Association, as Trustee, Successor by Merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-7AX; and Mortgage Electronic Registration Systems, Inc., Defendants.

No. 17 SBQ 36138-12-001 (HPS).
January 2, 2018.

**Order Denying Petitioners' Motion for Preliminary Injunction**

Speicher, Judge.

**\*1** Plaintiff Michael F. Germano filed this action on the afternoon of Friday, December 29, 2017 seeking to expunge three mortgage assignments from the certificate of title for his property, a condominium unit at 220 Commercial Street, Unit 1R, in Boston ("Property"), and also seeking a preliminary injunction against a foreclosure of the Property scheduled to take place on Wednesday, January 3, 2018, barely one business day following the filing of the complaint. Service was made on an agent of the defendant U.S. National Association ("U.S. Bank") at 12:19 P.M., barely two hours prior to the scheduled hearing on plaintiff's request for a preliminary injunction. Not surprisingly, no person appeared at the hearing on behalf of U.S. Bank.

As an initial matter, the court expresses its displeasure with the timing of the filing of the action and the request for injunctive relief. The plaintiff had notice of the intended foreclosure more than five weeks prior to the scheduled date of foreclosure, yet filed the action little more than one business day prior to the scheduled foreclosure, thereby artificially enhancing his claim of irreparable harm, and guaranteeing that the defendant, while technically served, would not have an appropriate opportunity to respond. This is "litigation by ambush," and the court would be justified in refusing to hear the matter where the defendant is thus deprived, by the plaintiff's tactic, of a practical opportunity to defend itself. Nevertheless, the court has considered the merits of the plaintiff's arguments, and for the reasons that follow, the request for preliminary injunctive relief is DENIED.

### STANDARD FOR ISSUANCE OF PRELIMINARY INJUNCTION

The familiar standard for consideration of a request for preliminary injunctive relief is as follows: "[W]hen asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 617 (1980).

Add. 61

### FACTS AND LIKELIHOOD OF SUCCESS ON THE MERITS

The plaintiff makes two basic claims: (1) that the chain of assignments relied upon by the foreclosing entity does not demonstrate ownership of the mortgage by the defendant; and (2) the defendant should be required to demonstrate, beyond the affidavit it has already recorded, that it is holds the note secured by the mortgage to be foreclosed.

**\*2** The original mortgagee is Mortgage Electronic Registration Systems, Inc. ("MERS"). On November 7, 2007, MERS assigned the mortgage to LaSalle Bank National Association as Trustee for MSM 2007-7AX. ("LaSalle") On August 30, 2011, MERS purported to again assign the mortgage, this time to Morgan Stanley Mortgage Capital Holdings, LLC. This assignment was described on the Certificate of Title for the Property as "ineffective assignment." Finally, on February 11, 2016, U.S. Bank National Association, Trustee, Successor in interest to Bank of America, National Association, as Trustee, Successor by Merger to LaSalle, assigned the mortgage to U.S. Bank National Association, Trustee, Successor in interest to Bank of America, National Association, as Trustee, Successor by Merger to LaSalle, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-7AX. ("Morgan Stanley")

By an affidavit registered on April 28, 2017, an officer of an entity identified as the servicer of the loan represented under the pains and penalties of perjury that Morgan Stanley is "the holder of the promissory note secured by the above mortgage." In his verified complaint, the plaintiff does not offer any facts or allegations, on personal knowledge or otherwise, to suggest that the representation in the affidavit is untrue. Rather, the plaintiff argues that the foreclosing entity should be required to prove a full chain of title, not only to the mortgage, but to the promissory note secured by the mortgage as well. This goes beyond what is required by *Eaton v. Federal Notional Mortgage Association*, 462 Mass. 569 (2012); and in any event, the plaintiff has not offered any facts to suggest that the foreclosing entity is not the mortgagee or the proper agent of the mortgagee, or to contradict the representation in the affidavit that it holds the note.

Further, the challenge to the chain of assignments is on its face without merit, as the first assignment and the third registered assignment demonstrate a clear chain of title to the present holder of the mortgage. The second assignment, properly labelled on the certificate of encumbrance as "ineffective," purported to assign ownership of a mortgage that MERS no longer held and was therefore a nullity. The plaintiff offers no facts to suggest that at the time of the third first assignment, the assignor did not have a valid interest to assign. Contrast, *Culhane v. Aurora Loan Servs.*, 708 F.3d 282, 292 (1st Cir. 2013).

Because the chain of title of the assignments is clear and unbroken, and because the plaintiff does not offer any facts to suggest that the defendants do not hold the mortgage and the note, the plaintiff has failed to establish the requisite likelihood of success on the merits.

### *IRREPARABLE HARM*

For the reasons stated above, it is not necessary for the court to reach the question of the balancing of irreparable harms.

Accordingly, it is

**ORDERED** that the plaintiff's motion for injunctive relief is DENIED.

So Ordered.

By the Court. (Speicher, J.)

Attest:

Add. 62

_____

Deborah J. Patterson

Recorder

Dated: January 2, 2018

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Add. 63

Massachusetts General Laws Annotated
    Part II. Real and Personal Property and Domestic Relations (Ch. 183-210)
        Title I. Title to Real Property (Ch. 183-189)
            Chapter 183. Alienation of Land (Refs & Annos)

M.G.L.A. 183 § 5B

§ 5B. Affidavits relating to title; recording

Effective: April 1, 2003

Currentness

Subject to section 15 of chapter 184, an affidavit made by a person claiming to have personal knowledge of the facts therein stated and containing a certificate by an attorney at law that the facts stated in the affidavit are relevant to the title to certain land and will be of benefit and assistance in clarifying the chain of title may be filed for record and shall be recorded in the registry of deeds where the land or any part thereof lies.

**Credits**
Added by St.1966, c. 574. Amended by St.2002, c. 496, § 1.

Notes of Decisions (9)

M.G.L.A. 183 § 5B, MA ST 183 § 5B
Current through Chapter 25 of the 2023 1st Annual Session. Some sections may be more current, see credits for details.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Add. 64

Massachusetts General Laws Annotated
  Part III. Courts, Judicial Officers and Proceedings in Civil Cases (Ch. 211-262)
    Title III. Remedies Relating to Real Property (Ch. 237-245)
      Chapter 244. Foreclosure and Redemption of Mortgages (Refs & Annos)

M.G.L.A. 244 § 14

§ 14. Foreclosure under power of sale; procedure; notice; form

Effective: November 1, 2012

Currentness

<[ Section impacted by 2020, 65, Secs. 5, 7 and 8 effective April 20, 2020 relating to suspension
of foreclosure in order to address disruptions caused by the outbreak of COVID-19.]>

The mortgagee or person having estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly
authorized by a writing under seal or the legal guardian or conservator of such mortgagee or person acting in the name of such
mortgagee or person, may, upon breach of condition and without action, perform all acts authorized or required by the power
of sale; provided, however, that no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such
sale, notice of the sale has been published once in each of 3 successive weeks, the first publication of which shall be not less
than 21 days before the day of sale, in a newspaper published in the city or town where the land lies or in a newspaper with
general circulation in the city or town where the land lies and notice of the sale has been sent by registered mail to the owner
or owners of record of the equity of redemption as of 30 days prior to the date of sale, said notice to be mailed by registered
mail at least 14 days prior to the date of sale to said owner or owners to the address set forth in section 61 of chapter 185, if the
land is then registered or, in the case of unregistered land, to the last address of the owner or owners of the equity of redemption
appearing on the records of the holder of the mortgage, if any, or if none, to the address of the owner or owners as given on the
deed or on the petition for probate by which the owner or owners acquired title, if any, or if in either case no owner appears,
then mailed by registered mail to the address to which the tax collector last sent the tax bill for the mortgaged premises to be
sold, or if no tax bill has been sent for the last preceding 3 years, then mailed by registered mail to the address of any of the
parcels of property in the name of said owner of record which are to be sold under the power of sale and unless a copy of said
notice of sale has been sent by registered mail to all persons of record as of 30 days prior to the date of sale holding an interest
in the property junior to the mortgage being foreclosed, said notice to be mailed at least 14 days prior to the date of sale to each
such person at the address of such person set forth in any document evidencing the interest or to the last address of such person
known to the mortgagee. Any person of record as of 30 days prior to the date of sale holding an interest in the property junior
to the mortgage being foreclosed may waive at any time, whether prior or subsequent to the date of sale, the right to receive
notice by mail to such person under this section and such waiver shall constitute compliance with such notice requirement for
all purposes. If no newspaper is published in such city or town, or if there is no newspaper with general circulation in the city or
town where the land lies, notice may be published in a newspaper published in the county where the land lies, and this provision
shall be implied in every power of sale mortgage in which it is not expressly set forth. A newspaper which by its title page
purports to be printed or published in such city, town or county, and having a circulation in that city, town or county, shall be
sufficient for the purposes of this section.

The following form of foreclosure notice may be used and may be altered as circumstances require; but nothing in this section
shall be construed to prevent the use of other forms.

(Form.)

Add. 65

MORTGAGEE'S SALE OF REAL ESTATE.

By virtue and in execution of the Power of Sale contained in a certain mortgage given by............ to............ dated............ and recorded with

.....

Deeds, Book............, page............, of which mortgage the undersigned is the present holder,.............

(If by assignment, or in any fiduciary capacity, give reference to the assignment or assignments recorded with .....Deeds, Book............, page............, of which mortgage the undersigned is the present holder,............).

for breach of the conditions of said mortgage and for the purpose of foreclosing the same will be sold at Public Auction at............o'clock,............ M. on the............ day of............ A.D. (insert year),............ (place)............ all and singular the premises described in said mortgage,

(In case of partial releases, state exceptions.)

To wit: "(Description as in the mortgage, including all references to title, restrictions, encumbrances, etc., as made in the mortgage.)"

Terms of sale: (State here the amount, if any, to be paid in cash by the purchaser at the time and place of the sale, and the time or times for payment of the balance or the whole as the case may be.)

Other terms to be announced at the sale.

(Signed) _____

Present holder of said mortgage._____

A notice of sale in the above form, published in accordance with the power in the mortgage and with this chapter, together with such other or further notice, if any, as is required by the mortgage, shall be a sufficient notice of the sale; and the premises shall be deemed to have been sold and the deed thereunder shall convey the premises, subject to and with the benefit of all restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in the deed; provided, however, that no purchaser at the sale shall be bound to complete the purchase if there are encumbrances, other than those named in the mortgage and included in the notice of sale, which are not stated at the sale and included in the auctioneer's contract with the purchaser.

For purposes of this section and section 21 of chapter 183, in the event a mortgagee holds a mortgage pursuant to an assignment, no notice under this section shall be valid unless (i) at the time such notice is mailed, an assignment, or a chain of assignments, evidencing the assignment of the mortgage to the foreclosing mortgagee has been duly recorded in the registry of deeds for the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale required in this section. The notice shall not be defective if any holder within the chain of assignments either changed its name or merged into another entity during the time it was the mortgage holder; provided, that recited within the body of the notice is the fact of any merger, consolidation, amendment, conversion or acquisition of assets causing the change in name or identity, the recital of which shall be conclusive in favor of any bona fide purchaser, mortgagee, lienholder or encumbrancer of value relying in good faith on such recital.

Add. 66

**Credits**

Amended by St.1975, c. 342; St.1977, c. 629; St.1980, c. 318, § 2; St.1981, c. 242; St.1981, c. 795, § 11; St.1991, c. 157, §§ 4, 5; St.1992, c. 285; St.1992, c. 287; St.1998, c. 463, § 181; St.2012, c. 194, § 1, eff. Nov. 1, 2012.

Notes of Decisions (334)

M.G.L.A. 244 § 14, MA ST 244 § 14

Current through Chapter 25 of the 2023 1st Annual Session. Some sections may be more current, see credits for details.

**End of Document**                                                                 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Add. 67

Massachusetts General Laws Annotated
  Part III. Courts, Judicial Officers and Proceedings in Civil Cases (Ch. 211-262)
    Title III. Remedies Relating to Real Property (Ch. 237-245)
      Chapter 244. Foreclosure and Redemption of Mortgages (Refs & Annos)

M.G.L.A. 244 § 17B

§ 17B. Notice of intention to foreclose; necessity; form; notice and affidavit

Currentness

No action for a deficiency shall be brought after June thirtieth, nineteen hundred and forty-six by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale by him taking place after January first, nineteen hundred and forty-six unless a notice in writing of the mortgagee's intention to foreclose the mortgage has been mailed, postage prepaid, by registered mail with return receipt requested, to the defendant sought to be charged with the deficiency at his last address then known to the mortgagee, together with a warning of liability for the deficiency, in substantially the form below, not less than twenty-one days before the date of the sale under the power in the mortgage, and an affidavit has been signed and sworn to, within thirty days after the foreclosure sale, of the mailing of such notice. A notice mailed as aforesaid shall be a sufficient notice, and such an affidavit made within the time specified shall be prima facie evidence in such action of the mailing of such notice. The notice and affidavit, respectively, shall be in substantially the following forms:

**_Notice of Intention to Foreclose and of Deficiency After Foreclosure of Mortgage._**

_To A.B._ Street

You are hereby notified, in accordance with the statute, of my intention, on or after , to foreclose by sale under power of sale for breach of condition, the mortgage held by me on property on Street in in the County of dated and recorded with deeds Book page to secure a note (or other obligation) signed by you, for the whole, or part, of which you may be liable to me in case of a deficiency in the proceeds of the foreclosure sale.

Yours very truly,
C.D. Holder of said mortgage.

**_Affidavit._**

I hereby certify on oath that on the day of (insert year) I mailed by registered mail, postage prepaid and return receipt requested, the notice, a copy of which appears below, directed to the persons or person at the addresses therein named which were the last addresses of such persons known to me at the time of mailing.

**(Here insert copy)**

Signed and sworn to before me this day of (insert year)

...............

Add. 68

**Credits**

Added by St.1945, c. 604, § 1. Amended by St.1998, c. 463, § 182.

Notes of Decisions (66)

M.G.L.A. 244 § 17B, MA ST 244 § 17B

Current through Chapter 25 of the 2023 1st Annual Session. Some sections may be more current, see credits for details.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Add. 69

🚩 KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Validity Called into Doubt by  Massachusetts v. Federal Housing Finance Agency,  D.Mass.,  Oct. 21, 2014

🚩 KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Massachusetts General Laws Annotated

Part III. Courts, Judicial Officers and Proceedings in Civil Cases (Ch. 211-262)

Title III. Remedies Relating to Real Property (Ch. 237-245)

Chapter 244. Foreclosure and Redemption of Mortgages (Refs & Annos)

M.G.L.A. 244 § 35C

§ 35C. Creditor actions in violation of chapter

Effective: November 1, 2012

Currentness

(a) As used in this section, the following words shall, unless the context clearly requires otherwise, have the following meanings:--

"Borrower", a mortgagor of a mortgage loan.

"Creditor", a person or entity that holds or controls, partially, wholly, indirectly, directly or in a nominee capacity, a mortgage loan securing a residential property, including, but not limited to, an originator, holder, investor, assignee, successor, trust, trustee, nominee holder, Mortgage Electronic Registration System or mortgage servicer, including the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation. The term creditor shall also include any servant, employee or agent of a creditor.

"Mortgage loan", a loan to a natural person made primarily for personal, family or household purposes secured wholly or partially by a mortgage on residential property.

"Residential property", real property located in the commonwealth on which there is a dwelling house with accommodations for 4 or fewer separate households and occupied, or to be occupied, in whole or in part, by the obligor on the mortgage debt; provided, however, that residential property shall be limited to the principal residence of a person; provided, further, that residential property shall not include an investment property or residence other than a primary residence; and provided, further, that residential property shall not include residential property taken in whole or in part as collateral for a commercial loan.

(b) A creditor shall not cause publication of notice of foreclosure, as required under section 14, when the creditor knows or should know that the mortgagee is neither the holder of the mortgage note nor the authorized agent of the note holder.

Prior to publishing a notice of a foreclosure sale, as required by section 14, the creditor, or if the creditor is not a natural person, an officer or duly authorized agent of the creditor, shall certify compliance with this subsection in an affidavit based upon a review of the creditor's business records. The creditor, or an officer or duly authorized agent of the creditor, shall record this affidavit with the registry of deeds for the county or district where the land lies. The affidavit certifying compliance with this subsection shall be conclusive evidence in favor of an arm's-length third party purchaser for value, at or subsequent to the resulting foreclosure sale, that the creditor has fully complied with this section and the mortgagee is entitled to proceed with

Add. 70

foreclosure of the subject mortgage under the power of sale contained in the mortgage and any 1 or more of the foreclosure procedures authorized in this chapter; provided that, the arm's-length third party purchaser for value relying on such affidavit shall not be liable for any failure of the foreclosing party to comply and title to the real property thereby acquired shall not be set aside on account of such failure. The filing of such affidavit shall not relieve the affiant, or other person on whose behalf the affidavit is executed, from liability for failure to comply with this section, including by reason of any statement in the affidavit. For purposes of this subsection, the term "arm's-length, third party purchaser for value" shall include such purchaser's heirs, successors and assigns.

(c) A creditor violates this chapter if the creditor imposes upon a third party the cost of correcting, curing or confirming documentation relating to the sale, transfer or assignment of a mortgage loan, including, but not limited to, costs related to curative actions taken because a foreclosure was commenced without the creditor's possession of a valid, written, signed and dated assignment evidencing the assignment of the mortgage, in violation of section 14. A third party may recover all of the third party's costs including reasonable attorneys' fees for having to correct, cure or confirm documentation.

(d) A creditor violates this chapter if the creditor makes statements to a state or federal court related to foreclosure or compliance with this chapter, orally or in writing, that it knows or should know are false, including, but not limited to, statements about the offering of a loan modification, the borrower's history of payments, the validity of the assignment of the mortgage loan, that the creditor is the record holder of the mortgage loan or the creditor's compliance with any other requirements of this chapter.

(e) A creditor violates this chapter if the creditor imposes a fee upon a borrower for goods not rendered or services not performed in connection with a foreclosure.

(f) No person shall give and no person shall accept any portion, split or percentage of any charge made or received for the rendering of a service in connection with a transaction involving a foreclosure upon a mortgage loan other than for services actually performed.

(g) The division of banks may adopt, amend or repeal rules and regulations for the administration and enforcement of this section.

(h) In all circumstances in which an offer to purchase either a mortgage loan or residential property is made by an entity with a tax-exempt filing status under section 501(c)(3) of the Internal Revenue Code, or an entity controlled by an entity with such tax exempt filing status, no creditor shall require as a condition of sale or transfer to any such entity any affidavit, statement, agreement or addendum limiting ownership or occupancy of the residential property by the borrower and, if obtained, such affidavit, statement, agreement or addendum shall not provide a basis to avoid a sale or transfer nor shall it be enforceable against such acquiring entity or any real estate broker, borrower or settlement agent named in such affidavit, statement or addendum.

**Credits**
Added by St.2012, c. 194, § 2, eff. Nov. 1, 2012.

Notes of Decisions (9)

M.G.L.A. 244 § 35C, MA ST 244 § 35C
Current through Chapter 25 of the 2023 1st Annual Session. Some sections may be more current, see credits for details.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Add. 72

Code of Massachusetts Regulations
Title 209: Division of Banks and Loan Agencies
Chapter 18.00: Conduct of the Business of Debt Collectors, Student Loan Servicers, and Third Party Loan Servicers (Refs & Annos)

209 CMR 18.24

Formerly cited as MA ADC 18.21A

18.24: Mortgage Loan Servicing Practices

Currentness

(1) A third party loan servicer may not use unfair or unconscionable means in servicing any mortgage loan. Without limiting the general application of the foregoing, the following conduct is a violation of 209 CMR 18.24:

(a) Failing to comply with the provisions of M.G.L. c. 183, § 54D regarding providing loan payoff information to a consumer.

(b) Collecting private mortgage insurance beyond the date for which private mortgage insurance is no longer required.

(c) Failing to comply with the provisions of M.G.L. c. 244, §§ 35A, 35B or 35C regarding the right to cure a mortgage loan default and other requirements.

(d) Knowingly or recklessly facilitating the illegal foreclosure of real property collateral.

(e) Failing to comply with the provisions of 12 CFR 1024.38(b)(2) or other applicable provision of 12 CFR part 1024, regarding the evaluation of borrowers for loss mitigation options.

(f) Failing to comply with the provisions of 12 CFR 1024.41(b)(2) or other applicable provision of 12 CFR part 1024, regarding providing borrowers with written acknowledgment of receipt of loan modification and required follow up.

(g) Failing to comply with the provisions of 12 CFR 1024.41(g) or other applicable provision of 12 CFR part 1024, regarding the process of concluding the modification process prior to initiating a foreclosure.

(h) Failing to comply with the provisions of 12 CFR 1024.40 or other applicable provision of 12 CFR part 1024, regarding providing borrowers with contact information for a designated individual.

(i) Nothing in 209 CMR 18.21A shall be construed to prevent a third party loan servicer from offering or accepting alternative loss mitigation options, including other modification programs offered by the third party loan servicer, a short sale, a deed-in-*lieu* of foreclosure or forbearance, if the borrower requests such an alternative, is not eligible for or does

Add. 73

not qualify for a loan modification under a government sponsored mortgage loan modification program or proprietary modification program, or rejects the third party loan servicer's loss mitigation proposal.

(j) 209 CMR 18.24(2) contains requirements that are in addition to those contained in M.G.L. c. 244, § 35B, and 209 CMR 56.00: *Foreclosure Prevention Options* regarding "Certain Mortgage Loans" as that term is defined in 209 CMR 56.02: *Definitions*.

(2) Information and documentation provided by third party loan servicers in the context of foreclosure proceedings. To the extent a servicer is authorized to act on behalf of a mortgagee,

(a) A third party loan servicer shall ensure that all foreclosure affidavits or sworn statements are based on personal knowledge.

(b) A third party loan servicer shall ensure that foreclosure affidavits or sworn statements shall set forth a detailed description of the basis of affiant's claimed personal knowledge of information contained in the affidavit or sworn statement, including sources of all information recited and a statement as to why the sources are accurate and reliable.

(c) A third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the right to foreclose including, but not limited to, certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon. The third party loan servicer shall provide such certification to the borrower with the notice of foreclosure provided pursuant to M.G.L. c. 244, § 14, and shall also include a copy of the note with all required endorsements.

(d) A third party loan servicer shall comply with all applicable state and federal laws governing the rights of tenants living in foreclosed residential properties.

**Credits**
History: 1448 Mass. Reg. 45, amended (emergency) eff. Jul. 1, 2021; 1452 Mass. Reg. 65, amended eff. Sept. 17, 2021.

The Massachusetts Administrative Code titles are current through Register No. 1507, dated October 27, 2023. Some sections may be more current; see credits for details.

Mass. Regs. Code tit. 209, § 18.24, 209 MA ADC 18.24

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.